STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPERIOR COURT

__x_ *Providence County*
    Licht Judicial Complex
    250 Benefit Street
    Providence, Rhode Island 02903

_____ *Kent County*
    Kent County Judicial Complex
    222 Quaker Lane
    Warwick, Rhode Island 02886

_____ *Newport County*
    Murray Judicial Complex
    45 Washington Square
    Newport, Rhode Island 02840

_____ *Washington County*
    McGrath Judicial Complex
    4800 Tower Hill Road
    Wakefield, Rhode Island 02879

CIVIL ACTION, FILE No. _PC-10-5753_

ELOISA COSAJAY
                      **Plaintiff**
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ALIAS, CM REO TRUST,
ALIAS, AND SAXON MORTGAGE
SERVICES, INC.        **Defendant**

}

*Summons*

*To the above-named Defendant:*   CM REO Trust, Alias

       The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon .....John B. Ennis, Esq............................................. Plaintiff's attorney, whose address is ......1200 Reservoir Avenue, Cranston, Rhode Island 02920........ ................................................................................................................................................................................... an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

       If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

       As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

.................................................................................................................................., **CLERK**

Dated: _October 4, 2010_ ..................................................

(Seal of the Superior Court)

# State of Rhode Island and Providence Plantations

...................................,SC

## PROOF OF SERVICE

I hereby certify that on the ............................... day of ................................... I served a copy of this

summons and a copy of the complaint received therewith upon ....................................................................

..........................................................................................................................................................

in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,.......................................

.........................................................., with a person of suitable age and discretion then

residing therein.      (Address)

By leaving a copy of the summons and complaint at his/her usual place of abode, .............................

.........................................................., with a person of suitable age and discretion then

residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to

receive service of process, namely .................................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given

as follows:

..........................................................................................................................................................

..........................................................................................................................................................

..........................................................................................................................................................

Sheriff's Fees

Travel ......................... $...........................

Service ......................... $...........................

$...........................

....................................................................

Deputy Sheriff

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

ATTORNEY FOR PLAINTIFF

VS

SUPERIOR COURT

SUMMONS

FILE NO. ...........................

CIVIL ACTION

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
## SUPERIOR COURT
☒ PROVIDENCE/BRISTOL   ☐ KENT   ☐ WASHINGTON   ☐ NEWPORT

*Eloisa Casajay*
(PLAINTIFF)

CA. *PC-10-5753*

*Mortgage* ᵛˢ *Electronic Registration, Inc.*
(DEFENDANT)

## ORDER

The Plaintiff's prayer for a Temporary Restraining Order in the above cited cause was heard on this _____ *1st* _____ day of _____ *October* _____ A.D., *2010* at which time:

1. Plaintiff's prayer for a Temporary Restraining Order is **DENIED**

2. Plaintiff's prayer(s) for a preliminary injunction contained in the Complaint is scheduled for hearing on the _____ *12 th* _____ day of _____ *October, 2010,* at _____ *9:30* _____ A.M./~~P.M.~~

3. Other: _____

_____

True Copy Attest

*H. J. Kurich, Jr.*

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

**A COPY OF THIS ORDER AND A COPY OF THE COMPLAINT SHALL BE SERVED UPON SAID DEFENDANT(S) FORTHWITH.**

Issued at _____ *4* _____ ~~A.M.~~/P.M. this _____ *1st* _____ day of _____ *October 2010*

ENTER:                              BY ORDER:

_____          _____
JUSTICE                          *Deputy* CLERK

STATE OF RHODE ISLAND  SUPERIOR COURT
PROVIDENCE, SC.

ELOISA COSAJAY   :

  VS.      :  C.A. NO.:  PC10-5753

MORTGAGE ELECTRONIC  :
REGISTRATION SYSTEMS, INC., :
ALIAS, CM REO TRUST, ALIAS :
AND SAXON MORTGAGE  :
SERVICES, INC.    :

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF PURSUANT TO THEPROVISIONS OF §9-30-1, et. seq. of THE GENERAL LAWS OF THE STATE OF RHODE ISLAND

Plaintiff, Eloisa Cosajay, being duly sworn, and upon information and belief, complain of Defendants as follows:

### COUNT I

1. Plaintiff, Eloisa Cosajay, is a resident of the State of Rhode Island with an address of 220 Sterling Avenue, Providence, Rhode Island. Plaintiff own said real estate located at 220 Sterling Avenue, Providence, Rhode Island.

2. Defendant, Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware Corporation.  It is not licensed to do business in the State of Rhode Island.

3. Defendant, CM REO Trust, ("CM REO') claims that it is a purported Delaware Trust.

4. Defendant, Saxon Mortgage Services, Inc. ("Saxon") claims to be a loan servicer.

5.     The amount in controversy is sufficient to invoke the jurisdiction of the Superior Court.

6.     The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

7.     All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

8.     This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

   a.     The provisions of R.I.G.L. §8-2-14 and R.I.G.L. §8-2-13, grant the Superior Court jurisdiction over questions of law and equity. The Plaintiff are asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiff at 220 Sterling Avenue, Providence, Rhode Island.

   b.     The provisions of the Declaratory Judgment Act, R.I.G.L. 9-30-1 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments, powers of attorneys, and deed. Plaintiff ask that the alleged assignments of mortgage, be declared invalid and nullities and that the Court decide that the mortgage and note are not held by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

9.     On April 24, 2007, the Plaintiff executed a promissory note in favor of Lime Financial Services, Ltd., ("Lime") in the amount of $220,000.00. On April 24, 2007 Plaintiff executed a mortgage naming MERS as nominee for Lime Financial Services, Ltd.

10.     Defendant, Saxon, allegedly on behalf of CM REO Trust, by its attorney, Nicholas Barrett & Associates has scheduled an illegal foreclosure sale on the Plaintiff's property for October 6, 2010. This foreclosure is

illegal because CM REO Trust does not hold the note or the mortgage. As a result it cannot foreclose on the property.

11.     The alleged Assignments and transfer of the Note and Mortgage on or about March 12, 2008, September 4, 2008 and March 5, 2009 from MERS to the Trust is attached as **Exhibit A, B and C**. This assignments and transfer were invalid and consist of fraudulent and manufactured documents allegedly signed by persons without any authority to sign them. MERS as nominee for Lime Financial Services did not have authority to assign this mortgage on March 12, 2008 for various reasons. If this loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid. Thus MERS no longer held the mortgage on March 12, 2008 and never held the note on any date because MERS does not hold notes. Any assignment which would have been made on or March 12, 2008 was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company Americas as Trustee and Custodian for IXIS Real Estate Capital Inc. Such entity does not exist. However the last "IXIS" Trust was Natixis Real Estate Capital Trust 2007-HE2, which was issued on April 1, 2007. The closing date for this Trust was April 30, 2007. Thus no assignment to that Trust was possible on March 12, 2008. The Assignment of Mortgage dated March 12, 2008 was to a non-existent entity. As a result the subsequent assignments were also void. As a result, the mortgage and note could not have been transferred or assigned by MERS on March 12, 2008.

12.     Plaintiff never received any default letter from the holder of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage. **(Exhibit D)** Rhode Island mandates that prior to commencing a foreclosure by a default letter and power of sale, a party actually hold the note and the mortgage by way of transfer and/or assignment. As a result, the entire foreclosure pro less is invalid.

13.     In addition, the purported mortgage assignments are legally defective for the following reasons:

    a. Alfonzo Greene is not and has never been an employee or validly authorized Vice President of Mortgage Electronic Registration Systems, Inc. (MERS) or American Brokers

3

Conduit. He has been an employee of Lenders Processing Servicing, Inc. formerly known as Fidelity Foreclosure Solutions.

b. Crystal Moore is not and has never been an employee or validly authorized Assistant Vice President of Saxon Mortgage Services, Inc. or Deutsche Bank. She has been an employee of Nationwide Title Clearing, located in Florida.

c. Bethany Hood is not and has never been an employee or validly authorized Assistant Vice President of Saxon Mortgage Services, Inc. or any other entity. She is an employee of Default Loan Solutions, of St. Paul, Minnesota formerly known as Fidelity Foreclosure Solutions, which is a division of Lenders Processing Servicing, Inc., located in Jacksonville, Florida.

d. Any alleged corporate resolution, naming Alfonzo Greene as an Assistant Secretary/Assistant Vice President of Mortgage Electronic Registration Systems, Inc. was not made pursuant to a corporate resolution from Lime, the originating MERS Member lender and was not authorized pursuant to purported MERS regulations, (**Exhibit D-1**), alleged to be in effect at the time of the execution of the alleged assignment.

e. The original mortgage on this property was held by MERS as Nominee for Lime, which held the note. Thus MERS, which never held the note, did not have the authority or ability to assign it with the mortgage.

f. Any alleged appointment of Alfonzo Greene as MERS authorizing officers were void because such was not done in conformity with the bylaws of MERS, attached as **Exhibit E**.

g. The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc. have never authorized the secretary of MERS to appoint any certifying authorizing officer.

h. Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. As a result, Alfonzo Greene was not an officer of MERS and did not have the proper

4

authorization to sign assignments.

i.  On information and belief, the purported signature of Alfonzo
    Greene on the March 12, 2008 document purporting to be an
    assignment is not an authentic signature. The name of Alfonzo
    Greene is merely affixed to fraudulent documents, many of
    which purport to be mortgage assignments to manufacture
    standing on behalf of entities seeking to foreclose, which
    demonstrates the fraudulent nature of this practice.  He is an
    employee of Default Loan Solutions, of St. Paul, Minnesota
    formerly known as Fidelity National Foreclosure Solutions,
    which is a division of Lenders Processing Servicing, Inc.,
    located in Jacksonville, Florida.  He is not an employee or
    officer of Saxon.

j.  On information and belief, the purported signature of Crystal
    Moore on the September 4, 2008 document purporting to be an
    assignment are not an authentic signatures, **Exhibit F**, attached
    hereto contains alternate signatures of a person who purports to
    be Crystal Moore.  These "signatures" vary from the signature
    of "this Crystal Moore" referenced in these purported
    assignments. The name of Crystal Moore merely signs
    fraudulent documents, many of which purported to be mortgage
    assignments to manufacture standing on behalf of entities
    seeking to foreclose.  Examples of Crystal Moore's purported
    status for other entities is attached as **Exhibit G**, which
    demonstrates the fraudulent nature of this practice.

k.  On information and belief, the purported signature of Bethany
    Hood on the March 5, 2009 document purporting to be an
    assignment is not an authentic signature. **Exhibit H**, attached
    hereto contains alternate signatures of a person who purports to
    be Bethany Hood.  These "signatures" vary from the signature
    of "this Bethany Hood" referenced in this purported
    assignment.  The name of Bethany Hood merely signs
    fraudulent documents, many of which purported to be mortgage
    assignments to manufacture standing on behalf of entities
    seeking to foreclose.  Examples of Bethany Hood's purported
    status for other entities is attached as **Exhibit I**, which
    demonstrates the fraudulent nature of this practice.  A copy of

an issue of the Summit, the publication of Fidelity National Foreclosure Solutions listing Bethany Hood as a mail room supervisor is attached as **Exhibit J**.

     I.   The State of Florida and the Office of the United States Attorney are investigating DOCX and Lender Processing Servicing, Inc. of Jacksonville, Florida for document fraud and fake assignment preparation.  DOCX is a subsidiary of Lender Processing Services, Inc. located in Alpharetta, Georgia.  These investigations are referred in **Exhibit K**.  Lenders Processing Servicing, Inc. has a facility in Minnesota, where the names of Alfonzo Greene and Bethany Hood were fraudulently affixed to fraudulent assignments.

As a result of these void and unauthorized documents purporting to be assignments, the Defendants lacked any standing, are not the real party in interest and were not a proper party to foreclose or enforce the original mortgage or note.

14.     Any REMIC  securitized trust, by the terms of its Trust agreement and pursuant to its ability to accept qualified mortgages as defined by 26 USC Section 860(G), relating to Real Estate Mortgage Investment Conduits ("REMIC"), does not have the power or authority to receive mortgages or notes more than ninety days after the closing date specified in the Trust agreement, which at the latest could have been April 30, 2007.  The terms of all REMIC Trust agreements do not authorize such acquisition and the status of the Trust as a REMIC do not allow such to accept such mortgages or notes at more than 90 days beyond the closing date.

15.     After the execution of the Trust agreement, if the Plaintiff's loan was included in the PSA, the only party with any authority or capacity to assign the mortgage deed or to transfer the mortgage note to a Trust was the Depositor.

## COUNT II

16.     Paragraphs 1-15 of Count I are incorporated by reference.

17.     The Defendants lacked standing to foreclose, to assign the mortgage,

to transfer the note or otherwise enforce the note or the mortgage. Thus any attempted foreclosure is illegal. **Exhibit L** represents a MERS min number search for Plaintiff's loan number. This indicates that Credit Suisse First Boston, LLC is the investor of that loan number on the MERS database, with the loan still active on MERS.

## COUNT III

18.    Paragraphs 1-17 are incorporated by reference.

19.    The Defendants have the burden of proof of establishing possession and ownership of the note and the mortgage in addition to proving that the mortgage and note were transferred pursuant to law and the terms of the Trust agreement.

20.    The Defendants have not proven possession of the note or the mortgage or valid transfers and assignments of each.

21.    As a result, the Defendants lack standing to enforce the note or the mortgage.

## COUNT IV

22.    Paragraphs 1-21 are incorporated by reference.

23.    The Plaintiff requires a Mandatory Injunction, Preliminary Injunction and Temporary Restraining Order against all defendants to cease any attempts to commence an illegal foreclosure action of CM REO Trust and Saxon.

24. Saxon, CM REO Trust and MERS have no interest in the property, the mortgage or note and, thus, have no standing to foreclose upon the mortgage of the Plaintiff or to enforce the note or to assign the mortgage or transfer the note.

25.    Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants. She will be forced out of her home by a stranger to the title of the mortgage and by a party not holding either the note or the mortgage.

26.   The Plaintiff has no other remedy at law but to seek the relief requested herein.  Equity favors the Plaintiff as she has no adequate remedy at law.

## COUNT V

27.   Paragraphs 1-26 are incorporated by reference.

28   On information and belief, if the loan had been included in a REMIC Trust,   Saxon has acted to collect funds for itself rather than on behalf of any Trust and had previously advanced the Trust funds for payments on the promissory notes allegedly contained in the loan pool.  Thus there is no default in relation to payments allegedly due to any Trust, if the Plaintiff's loan is in the Trust's loan pool, as it has been paid up to date by the loan servicer.

29.   If the Plaintiff' loan and mortgage are contained in an IXIS Trust, it has been paid in full by either Credit Default Swaps, mortgage insurance or payments by loan servicers or other third party payments.  There is no subrogation for these payments. As a result, any claim being made by Saxon is to seek payment on claims on behalf of CM REO Trust, which it does not have any authority to collect or enforce.

## COUNT VI

30.   Paragraphs 1-29 are incorporated by reference.

31.   On information and belief, the IXIS Trust agreement provided for mortgage insurance and credit default swaps and payments of principal and interest advances by the loan servicer and other third party payments, whereby, the Plaintiff' obligations pursuant to their promissory note have already been paid in full by mortgage insurance provider and credit default swaps and loan servicer and other similar entities.  As a result no default existed as to the actual holder of the note and or the mortgage, which would authorize the note to be accelerated or which would authorize foreclosure of the mortgage.

## COUNT VII

32.   Paragraphs 1-31 are incorporated by reference.

33.    On information and belief, Defendants do not possess an original endorsed note.  As a result any note remains in the name of Lime Financial.

34.    Pursuant to Rhode Island law, the Defendant cannot foreclose due to the disconnect between the note and the mortgage.

**WHEREFORE**, Plaintiff prays that this Court:

    A.    Issue a Declaratory Judgment determining that the note and mortgage is not vested in CM REO, Saxon or MERS.

    B.    Issue a Declaratory Judgment determining that pursuant to the terms of the Pooling and Servicing Agreement and 26 USC 860(G),  there can be no direct assignment of the mortgage or transfer of the note from MERS as nominee for Lime directly to any Trust.

    C.    Issue a Declaratory Judgment that any assignments from MERS as nominee for Lime to any Trust are invalid and void as a matter of law.

    D.    Issue a Declaratory Judgment that neither MERS, Saxon  nor CM REO Trust own or hold a secured claim in regard to the property owned by the Plaintiff, located at 220 Sterling Avenue, Providence, Rhode Island.

    E.    Issue a Declaratory Judgment that neither MERS, Saxon nor CM REO Trust own or hold the promissory note executed by Plaintiff to Lime.

    F.    Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

    G.    Issue a Declaratory Judgment that the scheme of Saxon in hiring Lender Processing Servicing, Inc. constitutes and is designed to avoid the requirements for valid foreclosures of mortgages.

H.   Order Saxon it paid to return any mortgage payments made the Plaintiff since the securitization of the loan.

I.   Issue a Declaratory Judgment that the Plaintiff is entitled to recoupment as to any proceeds paid to the Defendants to reduce any obligation allegedly due by Plaintiff.

J.   Temporarily, preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions or collection action against the Plaintiff.

K.   Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further eviction actions or collection action against the Plaintiff.

L.   Issue an Order to Quiet the Title of the Plaintiff and order that the mortgage executed to MERS as nominee for Lime is void and order same discharged.

M.   Temporarily Preliminarily and Permanently Restrain and Enjoin MERS, Saxon and CM REO Trust from executing any further assignments of the original mortgage.

N.   Issue a Declaratory Judgment that the loan executed by the Plaintiff to Lime was not a qualified mortgage pursuant to the Pooling and Servicing Agreement and 26 USC 860(G) and that any IXIS Trust was not capable of accepting said loan or mortgage at any time more than 90 days after April 30, 2007 at the latest.

O.   Issue a Declaratory Judgment that the assignment to Deutsche Bank as Trustee for IXIS Capital Trust was void for lack of an existing assignment.

P.   Issue a Declaratory Judgment that the assignment of the mortgage  referenced in this Complaint were not made by corporate officers with requisite corporate authority pursuant to law.

Q.     That they be awarded compensatory and punitive Damages,
       attorney fees and costs against all defendants
       jointly and severally for wrongful foreclosure.

Q.     Award such other relief as this Court deems just and proper.


_____
ELOISA COSAJAY


STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

       Subscribed and sworn to before me this 1st day of October      ,

2010.


_____
NOTARY PUBLIC


ELOISA COSAJAY
By her Attorney


_____
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230 — office
(401) 946-5006 — fax

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence

11

Case 1:08-bk-13309

EXHIBIT A

9 10:44:14   Desc

Loan # 20000322370
When Recorded Mail to:
Nicholas Barrett
999 South Broadway
East Providence, RI 02914

Book: 9037  Page: 195

_____(space above this line for recording Date)_____

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Deutsche Bank Trust Company Americas formerly known as Banker's Trust Company, as Trustee and Custodian for IXIS Real Estate Capital Inc. of 1761 East Saint Andrew Place, Santa Ana, CA 92705, its Successors and Assigns, all beneficial interest under that certain Mortgage dated April 24, 2007 executed by Eloisa Cosajay, Mortgagors, and recorded on April 30, 2007 in the Records of Land Evidence of the City of Providence, State of Rhode Island, in Book 8652 at Page 52, describing land therein as:

Commonly known as:       220 Sterling Avenue, Providence, RI 02909
                         Assessors Plat: 104 Lot: 35

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said mortgage.

MERS, Inc. as nominee for Lime Financial Services, LTD

BY: _____
Name: _____

Title: _____

State of _MN_
County of _Dakota_

On _3-12_, 2008, before me, personally appeared _Alonzo Greene_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public
Name _____
Notary Public in for said State
My Commission expires: _____

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2008

RECEIVED:
(this area for official seal)
Providence
Received for Record
Mar 17, 2008  at  10:03:12A
Document Num:  00006242
John A Murphy
Recorder of Deeds

EXHIBIT B

8/09 10:44:14   Desc

150

Loan #: 2000322370

MER Doc No: 00021881
Book: 9206   Page: 146

INV 5006831b

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, DEUTSCHE BANK TRUST COMPANY AMERICAS FORMERLY KNOWN AS BANKER'S TRUST COMPANY, AS TRUSTEE AND CUSTODIAN FOR IXIS REAL ESTATE CAPITAL INC BY SAXON MORTGAGE SERVICES, INC. F/K/A MERITECH MORTGAGE SERVICES, INC. THEIR ATTORNEY-IN-FACT, WHOSE ADDRESS IS 4708 MERCANTILE DRIVE NORTH , FORT WORTH, TX 76137, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to SAXON MORTGAGE SERVICES, INC., WHOSE ADDRESS IS 4708 MERCANTILE DRIVE , FORT WORTH, TX 76137, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE). Said mortgage made by ELOISA  COSAJAY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") and recorded in the Land Evidence Records of (CITY/COUNTY) PROVIDENCE / PROVIDENCE Rhode Island, in Volume 8652 page 52

Encumbering property sometimes known as: 220 STERLING AVE
PROVIDENCE, RI 02909           *as Nominee for Ikme Financial
                              Services, Ltd.

IN WITNESS WHEREOF,
DEUTSCHE BANK TRUST COMPANY AMERICAS FORMERLY KNOWN AS BANKER'S TRUST COMPANY, AS TRUSTEE AND CUSTODIAN FOR IXIS REAL ESTATE CAPITAL INC BY SAXON MORTGAGE SERVICES, INC. F/K/A MERITECH MORTGAGE SERVICES, INC. THEIR ATTORNEY-IN-FACT have set their hand THIS 04TH DAY OF SEPTEMBER IN THE YEAR 2008

By:
CRYSTAL R. MOORE ASST. VICE PRESIDENT

Signed and delivered in the presence of:

VILMA CASTRO             witness

STATE OF FLORIDA, COUNTY OF Pinellas
On THIS 04TH DAY OF SEPTEMBER IN THE YEAR 2008 then personally appeared CRYSTAL R. MOORE, the ASST. VICE PRESIDENT of DEUTSCHE BANK TRUST COMPANY AMERICAS FORMERLY KNOWN AS BANKER'S TRUST COMPANY, AS TRUSTEE AND CUSTODIAN FOR IXIS REAL ESTATE CAPITAL INC BY SAXON MORTGAGE SERVICES, INC. F/K/A MERITECH MORTGAGE SERVICES, INC. THEIR ATTORNEY-IN-FACT to me known and known by me to be the party who executed the foregoing instrument, and they acknowledge the same to be their free act and deed.

BRYAN J. BL
Notary Public

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691695
Expires July 01, 2011
Bonded Through National Notary Assn.

Document Prepared By:
Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When recorded return to:

SMSMD 8888187 CPE1917357 MIN 100206411111785936 MERS PHONE 1-888-679-MERS

*8888187*

RECEIVED:

Providence
Received for Record
Sep 11, 2008   at 10:48:45A
Document Num:   00021881
John A Murphy
Recorder of Deeds

Case 1:08-bk-1:                      **EXHIBIT C**                    18/09 10:44:14   Desc

Loan # 20000322370                        DON DOT DOUT --- 7
When Recorded Mail to:                **Book: 9359   Page:   51**
Nicholas Barrett
999 South Broadway
East Providence, RI 02914

_____(space above this line for recording Date)_____

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to CM REO Trust,
c/o Saxon Mortgage Services, Inc., 4708 Mercantile Drive North, Forth Worth, TX 76137, its
Successors and Assigns, all beneficial interest under that certain Mortgage dated April 24, 2007
executed by Eloisa Cosajay, Mortgagor, and recorded on April 30, 2007 in the Records of Land
Evidence of the Town/City of Providence, State of Rhode Island, in Book 8652 at Page 52, describing
land therein as:

Commonly known as:        220 Sterling Ave, Providence, RI  02909
                          Assessors Plat:  104 Lot:  35

Together with the note or notes therein described or referred to, the money due and to become due
thereon with interest and all rights accrued or to accrue under said mortgage.

                              Saxon Mortgage Services, Inc.

                              BY: _____
                              Name: ~~Bethany Hood~~ _____

        **Minnesota**        Title: _AVP_____
State of _____
County of __Dakota__

On _March 5_, 200_9_, before me, personally appeared ___Bethany Hood_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the
instrument.

Witness my hand and official seal.

                              _____
                              Notary Public
                              Name __Ashley Olson_____
(this area for official seal)   Notary Public in for said State _MN_
                              My Commission expires: _1-31-14_


Ashley Elizabeth Olson
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

RECEIVED:

Providence
Received for Record
Mar 10,2009  at  10:19:26A
Document Num:   00005759
John A Murphy
Recorder of Deeds

Doc No: 00180416
Book: 8652   Page:   52

After Recording Return To:
LIME FINANCIAL
5885 SW MEADOWS ROAD, STE
600
LAKE OSWEGO, OR 97035

Prepared By:
KATIE WILLIS
LIME FINANCIAL
5885 SW MEADOWS ROAD, STE
600
LAKE OSWEGO, OR 97035
(503) 905-5000

_____

[Space Above This Line For Recording Data]

## MORTGAGE

COSAJAY
Loan #: 50068316
MIN: 100206411111785936
PIN #: PLAT 104 LOT 35

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 24, 2007 together with all Riders to this document.

(B) "Borrower" is ELOISA COSAJAY, AS SOLE OWNER. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is LIME FINANCIAL SERVICES, LTD.. Lender is a CORPORATION organized and existing under the laws of OREGON. Lender's address is 5885 SW MEADOWS ROAD, STE 600, LAKE OSWEGO, OR 97035.

(E) "Note" means the promissory note signed by Borrower and dated APRIL 24, 2007. The Note states that Borrower owes Lender TWO HUNDRED TWENTY THOUSAND AND 00/100 Dollars (U.S. $220,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2037.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
↩   348.24                          (Page 1 of 13 pages)                    Form 3040 1/01 (rev. 11/02)

*E·C*

Doc No: 00180416
Book: 8652   Page:   53

50068316

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☒ 1-4 Family Rider
☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation; or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. ss2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY (Type of Recording Jurisdiction) of PROVIDENCE (Name of Recording Jurisdiction):
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
which currently has the address of 220 STERLING AVE., PROVIDENCE, RI 02909 ("Property Address").

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
↩   348.24                    *(Page 2 of 13 pages)*                    Form 3040 1/01 (rev. 11/02)

E - C

Doc No: 00180416
Book: 8652  Page:    54

50068316

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⊜ 348.24                          *(Page 3 of 13 pages)*                    Form 3040 1/01 (rev. 11/02)

E · C

Doc No: 00180416
Book: 8652   Page:   55

50068316

sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
&ED   348.24                  *(Page 4 of 13 pages)*                    Form 3040 1/01 (rev. 11/02)

*E - C*

Doc No: 00180416
Book: 8652  Page:  56

50068316

notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
&D        348.24                    *(Page 5 of 13 pages)*                    Form 3040 1/01 (rev. 11/02)

E C

Doc No: 00180416
Book: 8652  Page:  57

50068316

may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.24                          *(Page 6 of 13 pages)*                          Form 3040 1/01 (rev. 11/02)

*E C*

Doc No: 00180416
Book: 8652   Page:   58

50068316

is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to

E · C

Doc No: 00180416
Book: 8652   Page:   59

50068316

these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums

E · C

Doc No: 00180416
Book: 8652   Page:   60

50068316

secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower

*E·C*

Doc No: 00180416
Book: 8652   Page:   61

50068316

will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's

E - C

Doc No: 00180416
Book: 8652   Page:   62

50068316

interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⟨⟩   348.24                                    *(Page 11 of 13 pages)*                          Form 3040 1/01 (rev. 11/02)

E · C

Doc No: 00180416
Book: 8652   Page:   63

50068316

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument for the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
    348 24                    (Page 12 of 13 pages)                    Form 3040 1/01 (rev. 11/02)

E · C

Doc No: 00180416
Book: 8652   Page:   64

50068316

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____
- BORROWER - ELOISA COSAJAY

---

[Space Below This Line For Acknowledgment]

STATE OF *RI*

COUNTY OF *Providence*

In *Cranston* in said County on the *24th* day of *April 2007*, personally appeared *Eloisa Cosajay*

---

Each and all to me known, and known by me to be the party(ies) executing the foregoing instrument, and he/she/they acknowledged said instrument, by him/her/them executed to be his/her/their free act and deed.

_____
Notary Public

_____
(Printed Name)                    David A. LaFazia
                                  NOTARY PUBLIC
My Commission Expires:            My Commission Expires:

*11/8/2010*

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
      348.24                    *(Page 13 of 13 pages)*                    Form 3040 1/01 (rev. 11/02)

Doc No: 00180416
Book: 8652   Page:   65

# 1-4 FAMILY RIDER
## (Assignment of Rents)

COSAJAY
Loan #: 50068316
MIN: 100206411111785936

THIS 1-4 FAMILY RIDER is made this **24TH** day of **APRIL, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **LIME FINANCIAL SERVICES, LTD.** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **220 STERLING AVE., PROVIDENCE, RI 02909** [Property Address].

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and

MULTISTATE 1-4 FAMILY RIDER -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
   32                              *(1 of 3 pages)*                        Form 3170 1/01

E - C

Doc No: 00180416
Book: 8652 Page: 66

5006:716

requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and

MULTISTATE 1-4 FAMILY RIDER — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(2 of 3 pages)

Form 3170 1/01

32

E - C

Doc No: 00180416
Book: 8652  Page:  67

S0068316

Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

- BORROWER - ELOISA COBAJAY

MULTISTATE 1-4 FAMILY RIDER — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
32                          (3 of 3 pages)                          Form 3170 1/01

Doc No: 00180416
Book: 8652   Page:   68

## Exhibit A

That certain lot or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Sterling Avenue, in the City of Providence, County of Providence, State of Rhode Island, laid out and designated as Lot No. 17 Section C on that certain plat entitled, "Plat of the Plain Farm West Providence, by Cushing and Farnum, 1953", which plat is recorded with the Records of Land Evidence for said City of Providence on Plat Card 853.

Meaning and otherwise intending to describe that certain lot or parcel of land described in that certain deed dated March 23, 1990 and recorded March 30, 1990 at 3:19 pm in city of Providence Land Evidence Book 2213 at Page 136.

For title reference see deed dated December 17, 2002 and recorded December 17, 2002 in book 5484 at Page 323.

RECEIVED:

Providence
Received for Record
Apr 30, 2007  at  02:22:21P
Document Num:  00180416
Prevame Troncy
Recorder of Deeds

Property Address:    220 Sterling Avenue
Providence, RI 02909
AP 104/L 35

E · C