UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELOISA COSAJAY,

Plaintiff,

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CM REO TRUST, AND SAXON MORTGAGE SERVICES, INC.

Defendants.

CIVIL ACTION NO. CA10-442S

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

The Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS"), CM REO Trust ("CM REO"), and Saxon Mortgage Services, Inc. ("Saxon"), (collectively referred to as "Defendants") submit this memorandum of law in support of their motion to dismiss the complaint of the Plaintiff Elisa Cosajay ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(1). This Court should dismiss this action because the Plaintiff does not have standing to dispute the Defendants' power to foreclose by challenging the validity of the assignments of her mortgage from the loan originator to its present holder because the Plaintiff was not a party to any of these agreements. In further support of this motion, the Defendants state the following:

## II. STATEMENT OF ALLEGATIONS

This is a declaratory judgment action in which the Plaintiff seeks a determination of this Court "that the alleged assignments of [her] mortgage…[are] declared invalid and nullities and that the Court decide that the mortgage and note are not held by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage." (Plaintiff's Complaint, Doc. No. 1-1 ("Complaint"), ¶8) Based upon this requested relief, the Plaintiff has

asked the court to prohibit the Defendants from foreclosing on property owned by the Plaintiff and located at 220 Sterling Avenue, Providence, Rhode Island (the "Property").

On April 24, 2007, the Plaintiff obtained a loan from Lime Financial Services, Ltd. ("Lime") in the amount of $220,000 and in exchange for a promissory note.[1] (Complaint, ¶9) The note was secured by a mortgage the Plaintiff executed in favor of Lime, as lender, and MERS, as Lime's nominee, successor and assign, and as the mortgagee under the mortgage agreement. (Id.; see also Mortgage, Exhibit D to the Complaint, p. 18) The mortgage's security consisted of the Property. (Id. at ¶1, Ex. D to the Complaint, p. 18)

The Plaintiff's note and mortgage were the subject of three separate assignments. (Complaint, ¶11) On March 12, 2008, MERS, as nominee for Lime, assigned the mortgage to Deutsche Bank National Trust Company, as Trustee and Custodian for IXIS Real Estate Capital, Inc. ("Deutsche Bank"). (Id.; Ex. A to the Complaint) On September 14, 2008, Deutsche Bank assigned the mortgage to Saxon. (Id.; Ex. B to the Complaint) On March 5, 2009, Saxon assigned the mortgage to CM REO. (Id.; Ex. C to the Complaint) Each of these assignments were recorded in the Property's chain of title at the Recorder of Deeds for the City of Providence, State of Rhode Island. (Exs. A, B, and C to the Complaint). Saxon, on behalf of CM REO and through its local counsel, Nicholas Barrett & Associates, initiated foreclosure proceedings in October of 2010 after the Plaintiff failed to make monthly mortgage payments and defaulted on her loan. (Complaint, ¶10) The Plaintiff filed this action to enjoin the foreclosure proceeding by alleging that the assignments of her mortgage are invalid. (See Complaint generally)

---

[1] The Defendants only admit the truth of these allegations for purposes of the Motion to Dismiss, and reserve the right to controvert them if the case is not dismissed.

The Plaintiff disputes the assignments of her loan based upon the agreement establishing the trust to which her mortgage was transferred. (Complaint, ¶¶11, 15) The Plaintiff alleges that MERS, as Lime's nominee, did not have the authority to assign the Plaintiff's mortgage on March 12, 2008. (Id. at ¶11) In support of this allegation, the Plaintiff speculates that "[i]f this loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid." (Id.) Any assignment that "would have been made on or March 12, 2008 was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company Americas as Trustee and Custodian for IXIS Real Estate Capital Inc." (Id.) The Plaintiff then claims that this trust does not exist but that another IXIS Trust closed on April 30, 2007 so that the March 12, 2008 assignment and transfer of her loan, and any subsequent transfer, was invalid. (Id.) Finally, the Plaintiff alleges that "[a]fter the execution of the Trust agreement, if the Plaintiff's loan was included in the PSA, the only party with any authority or capacity to assign the mortgage deed or to transfer the mortgage note to the Trust was the Depositor." (Complaint, ¶15)

The Plaintiff also claims that the foreclosure proceedings are invalid based upon allegations that the assignments of her mortgage are legally defective. (Complaint, ¶13) The Plaintiff alleges that each individual who executed the three assignments did not have authority to execute on behalf of the assigning entity. (Id. at ¶13(a)-(h)) The Plaintiff also questions the validity of the assignments as a result of a variance in the signatures of the individuals executing the documents. (Id. at ¶13(i)-(l)) Based upon these allegations, the Plaintiff claims that the assignments are void, unauthorized, that the Defendants lack standing to foreclose, that they are

not the real party in interest, and that they were not the proper party to foreclose or enforce the original mortgage or note. (Id. at ¶13)

## III. STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of this Court. F.R.Civ.P. 12(b)(1); see also Valentin v. Hospital Bella Vista, 254 F.3d 358, 362-363 (1st Cir. 2001). Rule 12(b)(1) is the appropriate procedure for seeking dismissal of a complaint when the defendant challenges the plaintiff's standing to sue. Casey v. Lifespan Corp., 62 F.Supp.2d 471, 474 (D.R.I. 1999); see also Edelkind v. Fairmont Funding, Ltd., 539 F.Supp.2d 449, 453 (D. Mass. 2008). In determining whether the court has subject matter jurisdiction, "the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion." Casey v. Lifespan Corp., 62 F.Supp.2d at 474. The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Narragansett Electric Co. v. Constellation Energy Commodities Group, Inc., 526 F.Supp.2d 260, 268 (D.R.I. 2007).

When deciding a motion to dismiss under Rule 12(b)(1), this Court's review is not restricted to an examination of the pleadings. Id.; see also Case v. Lifespan Corp., 62 F.Supp.2d at 474. A court may consider "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Narragansett Electric Company, 526 F.Supp.2d at 268 quoting Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). A court may also consider documents for which a complaint states facts that expressly linked the complaint to the document as well as documents which are integral to or explicitly relied upon in the complaint, even though not attached to the complaint. Id.

## IV. LEGAL ARGUMENT

The Plaintiff does not have standing to dispute the Defendant's power to foreclose by challenging the validity of assignments, because she was not a party to these agreements. Article III, Section 2, of the Constitution limits the jurisdiction of federal courts to cases and controversies for which a plaintiff has standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-560 (1992). The Plaintiff bears the burden of establishing that she has standing to sue. Id. at 561. The question of standing is whether a litigant is entitled to have the court decide the merits of the dispute, and this inquiry involves both constitutional limitations on jurisdiction and prudential limitations on the federal courts' exercise of its jurisdiction. Warth v. Seldin, 422 U.S. 490, 498 (1975).

In deciding whether a plaintiff has standing to sue, the federal courts place a "general prohibition on a litigant raising another person's legal rights." Osediacz v. City of Cranston, 414 F.3d 136, 140 (1st Cir. 2005) quoting Allen v. Wright, 486 U.S. 737, 751 (1984). The Supreme Court has analyzed this limitation on the federal court's exercise of jurisdiction by explaining that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement…a plaintiff generally must assert *his own legal rights and interests*, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. at 499 (emphasis added). Accordingly, where a plaintiff files an action which asserts the rights established by contract, the plaintiff has standing to sue only if he or she is a party to the contract or an intended third-party beneficiary of the contract. Edelkind v. Fairmont Funding, Ltd., 539 F.Supp.2d at 453; Casey v. Lifespan Corp., 62 F.Supp.2d at 475-476.

In this case, the Plaintiff has not challenged the Defendants' authority to foreclose under the terms of the April 24, 2007 mortgage agreement she signed in exchange for a loan of $220,000 from Lime. Furthermore, the Plaintiff does not dispute, or seek to enforce, the terms of

her mortgage agreement in any allegation or claim pleaded in this action. Instead, the Plaintiff seeks to enjoin the Defendants from foreclosing on her property by challenging the validity of the assignments of her mortgage. (Complaint, ¶¶11 and 13) However, there is no dispute that the Plaintiff is neither a party to, nor intended third-party beneficiary of, the assignment agreements that she seeks to invalidate through these proceedings. The Plaintiff also disputes the Defendants' power to foreclose by alleging that the assignments of her mortgage were invalid under the terms of the trust into which the Plaintiff's mortgage was transferred. (Complaint, ¶¶11, 15) Once again, however, there is no dispute that the Plaintiff is neither a party to, nor intended third-party beneficiary of, The Pooling and Servicing Agreement ("PSA") governing the trust that she seeks to enforce through these proceedings. As a matter of law, the Plaintiff does not have standing to challenge the validity of the assignments of her mortgage in order to enjoin foreclosure because she is not a party to any of these assignments or the PSA.

In Bridge v. Aames Capital Corp., et al., 2010 WL 3834059 (N.D. Ohio, September 29, 2010)(a copy of this decision is attached as Exhibit A to the Affidavit of Samuel C. Bodurtha submitted in support of the Defendants' Motion to Dismiss ("Bodurtha Affidavit")), the United States District Court (Ohio) dismissed a plaintiff's action for declaratory relief and to quiet title finding that the plaintiff did not have standing to challenge the assignment of her residential mortgage. In December of 2001, Lisa Bridge ("Bridge") obtained a loan from Aames Capital Corporation ("Aames") to refinance the debt she owed on her residential property, in exchange for a security interest in the property. 2010 WL 3834059, *1. In April of 2002, Aames notified Bridge that her mortgage had been sold to Deutsche Bank Trust Company f/k/a Bankers Trust Company of California, N.A., as Trustee for Aames Mortgage Trust 2002-1 Mortgage Pass Through Certificates, Series 2002-1 ("Deutsche Bank"). Id. After Bridge defaulted on her loan

and Deutsche Bank initiated foreclosure proceedings, she filed suit in November of 2009 challenging the validity of the assignment from Aames to Deutsche Bank as a means of disputing Deutsche Bank's power to foreclose. Id. In response, Deutsche Bank moved to dismiss on the grounds that Bridge did not have standing to challenge the assignment of her mortgage. Id.

Deutsche Bank's motion to dismiss argued that Bridge lacked standing because she was not a party to the transfer of her mortgage from Aames to Deutsche and because her contractual obligations were not affected in any way by the assignment. Bridge v. Aames Capital Corp., et al., 2010 WL 3834059, *4. The Court agreed with Deutsche Bank and dismissed Bridge's complaint for lack of standing because she was not a party to the assignment of mortgage between Aames and Deutsche Bank, because neither Aames nor Deutsche Bank disputed the validity of the assignment, and because Bridge had not, and would not, suffer any new injury, or face any obligation, different from what was owed when Aames held the note. Id. at *5. The court found that "[w]hether the holder is Aames or Deutsche Bank makes no difference with respect to the obligations owed by Plaintiff under the mortgage contract." Id. at *4. Furthermore, "[w]hether Plaintiff is challenging the 'transfer' of the Mortgage or challenging 'various transactions engaged in' related to the Mortgage, her role in the exchange between Aames and Deutsche Bank and how it affects her contractual obligations remains the same—uninvolved and unaffected." Id.

Likewise, in Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 2010 WL 1956867 (E.D.Mich. May 13, 2010)(a copy of this decision is attached as Exhibit B to the Bodurtha Affidavit), the United States District Court (Michigan) found that the borrower, Livonia Property Holdings, LLC ("Livonia"), lacked standing to enjoin its lender, 12840-12976 Farmington Road Holdings, LLC ("Farmington"), from foreclosing on a defaulted

loan based on the alleged invalidity of two separate assignments, because Livonia was not a party to the assignments. Livonia had obtained a commercial loan from Lehman Brothers ("Lehman"), which loan was secured by a mortgage on four industrial properties. 2010 WL 1956867, *1. Lehman sold the loan to Lehman Brothers Holdings, Inc. ("LBHI"), which then transferred the loan to the Structured Asset Securities Corporation ("SASC"), which deposited the loan into the LB-UBS Commercial Mortgage Trust 2005-C1, Commercial Mortgage Pass-Through Certificates, Series 2005-C1 (the "UBS trust"). Id. LaSalle National Bank ("LaSalle") served as trustee to the UBS trust. Id. In connection with these transfers, Lehman executed only one assignment, which memorialized its conveyance of the Livonia loan into the UBS trust. Id. No interim assignments (i.e. from Lehman to LBHI and from LBHI to SASC) were executed. Id. (emphasis added)

Livonia defaulted on its loan in January of 2010, and LaSalle accelerated the loan to maturity, and assigned the loan to Farmington on February 17, 2010. Livonia Property Holdings, 2010 WL 1956867, *1. Following the assignment, Farmington commenced foreclosure proceedings. Id. Livonia sought to enjoin the foreclosure by disputing the validity of the assignments. Id. Livonia disputed the first assignment because there was no assignee on the face of the document, because: (1) "the person who executed the Assignment for Lehman Brothers lacked present intent to convey the documents to the Trust because the ink stamp defining the assignee was likely affixed after the assignment was executed," (2) "the assignor lacked present intent to convey" and (3) no interim assignments from Lehman to LBHI and from LBHI to SASC were executed. Id. at *3 Livonia disputed the second assignment by arguing that there was no indication that the person executing the assignment had property authority to do so. Id.

The Court denied Livonia's request to enjoin the foreclosure finding that Livonia lacked standing to dispute the validity of the assignments in order to enjoin foreclosure. Livonia Property Holdings, 2010 WL 1956867, *7-*10, *23. The court found that the validity of the assignments from Lehman to LaSalle and then to Farmington did not effect whether Livonia owed its obligation to repay the loan, but only to whom Livonia was obligated. Id. at *8. The court concluded that Livonia could not step into the shoes of an assignor to assert the assignor's contractual rights. Id. In addition, the court stated:

> Although a debtor may assert certain defenses that render an assignment absolutely invalid (such as nonassignability of the right assigned), he generally may not assert any ground which may render the assignment voidable 'because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice.'

Id. (Internal citations and footnote omitted)

The court provided, as an example, that "[a] debtor cannot raise alleged acts of fraud, or question the motive or purpose underlying the assignment." Id. "As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so." Id. at *9.

The decisions issued in Bridge and Livonia follow a well-established principle that a plaintiff does not have standing to challenge, or enforce, the terms of an agreement to which that plaintiff is not a party. See, e.g., Rogan v. Bank One, 457 F.3d 561, 567 (6th Cir. 2006)(where the Sixth Circuit found that both the bankruptcy debtor and the trustee in bankruptcy lacked standing to challenge of an original creditor's assignment of its interest to another bank because they were not parties to the assignment); Liu v. T&H Mack, Inc., 191 F.3d 790, 797 (7th Cir. 1999)(where the Seventh Circuit found that a party to an underlying contract lacks standing to attack any problems with the reassignment of that contract); Ifert v. Miller, 138 B.R. 159, 166

(Bankr. E.D. Pa. 1992)(where the Bankruptcy Court, applying Texas law, found that because a debtor was not party to the assignment, the debtor had no right to challenge the assignment); Richard A. Lord, 29 Williston on Contracts §74:50 (4th Ed.)("[T]he debtor has no legal defense based on invalidity of the assignment…for it cannot be assumed that the assignee is desirous of avoiding the assignment").

The Rhode Island courts also uphold this basic principle. Brough v. Foley, 525 A.2d 919 (R.I. 1987). For example, in Brough, the Rhode Island Supreme Court affirmed dismissal of a complaint filed to challenge the sale of real estate on the grounds that the plaintiff did not have standing to sue. 525 A.2d at 922. Several purchasers entered into an agreement to acquire property from the Estate of Jeannette S. Nathans. Brough, 525 A.2d at 920-921. The sale, however, was subject to a right of first refusal that Nathans had granted to Eldacare, Inc., while she was alive, which right Eldacare assigned to Linda Foley ("Foley") after Nathans died. Id. at 920. The purchase and sale agreement provided that the sale of the property was subject to the right of first refusal held by Eldacare and its assigns. Id. at 921. Following execution of the purchase and sale agreement, Foley exercised her right of first refusal and entered into her own purchase and sale agreement with Nathans' estate. Id. The purchasers filed an action to enforce their purchase of the property in which they alleged that both the right of first refusal and assignment agreements were invalid. Id. The Superior Court found that the plaintiffs did not have standing to sue.

On appeal, the Rhode Island Supreme Court affirmed the Superior Court's decision finding that the purchasers' rights to the property were limited to the terms of the purchase and sale agreement. Brough, 525 A.2d at 921. The purchase and sale agreement did not afford the plaintiffs the right to question the validity of the right of first refusal or its assignment. Id. at

922. The court stated: "[t]he plaintiffs were, in substance, strangers to those transactions and were given no rights under the contract to challenge the transactions." Id.

A more recent decision from Justice Silverstein of the Rhode Island Superior Court affirmed the holding in Brough v. Foley. DePetrillo v. Belo Holdings, Inc., et al., 2009 WL 3794902 (R.I. Super, November 6, 2009)(A copy of this decision is attached as Exhibit C to the Bodurtha Affidavit. In DePetrillo, the Superior Court dismissed a case where the plaintiff filed an action for declaratory and injunctive relief claiming that his purchase of property had been improperly terminated through a right of first refusal. Id. at *1. Justice Silverstein found that the plaintiff did not have standing because his sole rights were described in a purchase and sale agreement, the "Plaintiff was a stranger to the Lease Agreement…and its pertinent right of first refusal and therefore ha[d] no rights to litigate its validity." Id. at *2-*3.

The Complaint filed in this action seeks a declaratory judgment invalidating the assignments of the Plaintiff's mortgage and restraining the defendants from foreclosing on her mortgage based solely upon the allegation that these assignments are invalid. (Complaint, ¶8) The assignments of mortgage and PSA provide indisputable evidence that the Plaintiff is not a party to the assignments or the PSA. She is, in the words of Justice Weisberger of the Rhode Island Supreme Court and Justice Silverstein of the Rhode Island Superior Court, a "stranger" to these agreements. Brough v. Foley, 525 A.2d at 922; DePetrillo v. Belo Holdings, 2009 WL 3794902, *3-*4.

As a matter of law, well-established in this and numerous other jurisdictions discussed above, the Plaintiff has no right to litigate the validity of these assignments. The Plaintiff also has no legal right to challenge the assignments based upon the terms of the PSA establishing the trust, into which her loan was assigned, because she is not a party to this agreement. The

Plaintiff's rights, in respect to the loan at issue in this litigation, are described in, and limited to, the terms of the mortgage agreement.[2] Therefore, this Court must dismiss the Plaintiff's complaint for lack of standing to sue because the Plaintiff's request for declaratory relief rests upon the legal rights and interests of third parties and agreements to which she has no legal interest.

## V. CONCLUSION

The Plaintiff's rights and duties have remain unchanged under the loan documents that she executed, including her obligation to make monthly mortgage payments. The only change effected by the loan's transfer into the trust and the assignments of her mortgage, is to whom the Plaintiff owes these duties, and more specifically to whom this Plaintiff must make mortgage payments. The Plaintiff's Complaint is an attempt to step into the shoes of the parties to the trust and to the assignments of mortgage. In other words, the Plaintiff's action is an attempt to acquire legal rights from the trust and assignments of mortgage in order to defend her failure to make mortgage payments and to oppose Saxon's foreclosure action. However, the Plaintiff does not have standing to seek the relief requested in her complaint. Accordingly, the Defendants Mortgage Electronic Registration Systems, Inc., CM REO Trust, and Saxon Mortgage Services, Inc. respectfully request that this Court grant their motion to dismiss this case.

---

[2] Conveniently, the Plaintiff has omitted from the thirty-four paragraphs of the Complaint the undisputed facts that she failed to make monthly payments on her mortgage, and that despite this challenge to the Defendants' power to foreclose and sell their property this Plaintiff defaulted on her note and mortgage and is subject to foreclosure under the terms of the mortgage agreement, to which she is a party.

Respectfully submitted,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CM REO TRUST, AND SAXON MORTGAGE SERVICES, INC.

By Their Attorneys,

*/s/ Samuel C. Bodurtha*

Samuel C. Bodurtha, #7075
HINSHAW & CULBERTSON LLP
155 South Main Street
Providence, RI 02903
401-751-0842
401-273-8543 (facsimile)

**CERTIFICATE OF SERVICE**

I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 30, 2010.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha