UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELOISA COSAJAY                         :

    VS.                                :          CA NO.: 10-442S

MORTGAGE ELECTRONIC                    :
REGISTRATION SYSTEM,                   :
INC., CM REO TRUST, AND                :
SAXON MORTGAGE                         :
SERVICES, INC.                         :

MEMORANDUM OF LAW

The purpose of this memorandum is to rebut the position taken by the

Defendants in their motion to dismiss, the she cannot challenge a fraudulent

documents which are manufactured to facilitate foreclosure fraud.  Plaintiff

suggests that this position is not supported by settled Rhode Island and

Federal Law, and also chafes against the equitable principles that Rhode

Island Courts and all Courts have traditionally applied when analyzing a

litigant's request for equitable relief.  In addition the Defendants' position

flies against all aspects of public policy, particularly in view of the

foreclosure crisis in American life, where there are regular reports of

robosigners and fraudulent documents being prepared daily in order to

support foreclosure by parties, which create documents to establish standing

to foreclosure on properties to which they do not hold the mortgage or note.

Federal Courts, when reviewing a Rule 12(b)(6) Motion, have consistently held that it must take all allegations pled in the Plaintiff's Complaint as true. The Plaintiff has set forth a many of facts that if taken as true, satisfy the dictates of Federal Rule 12(b)(6). In particular, the Plaintiff has offered uncontradicted evidence, provided to her by Saxon Mortgage in a prior Bankruptcy proceeding that transferred the original promissory note has never been indorsed by the original holder. Even in light of the Supreme Court's holdings in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), this complaint, when viewed by the Court, with all factual assertions being taken as true, "plausibly suggest an entitlement to relief." Ashcroft at 1950.

Further, dismissal of a complaint is disfavored and should only be granted in extraordinary cases. "A court ruling on a motion to dismiss construes the complaint in the light most favorable to the Plaintiff, taking all well-pleaded allegations as true and giving Plaintiff the benefit of all reasonable inferences. See Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In this matter, the facts and causes of action have been

pleaded with specificity and not as mere conclusions and for that reason, this Motion to Dismiss any of the counts should be denied.

<u>FACTUAL ALLEGATIONS</u>

This matter is before the Court on the Motion of the Defendants to dismiss the Plaintiff's complaint purportedly pursuant to FRCP 12(b)(1) for lack of Federal Court Jurisdiction.  Plaintiff had filed a multi-count complaint in the Rhode Island Superior Court seeking a Temporary Restraining Order, Preliminary and Permanent Injunction and a Declaratory Judgment alleging, inter alia, pursuant to Rhode Island Law, the following:

1.      Neither the mortgage nor the note has ever been held by Deutsche Bank as Trustee for Ixis Real Estate Capital, Inc.  There is no such entity, which is a trust, which ever existed. Thus the alleged assignment dated March 12, 2008 referenced in the complaint as Exhibit A, in the complaint, was a nullity because it purported to convey the mortgage and note to a nullity.

2.      This first alleged assignment of mortgage and note, allegedly from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Lime Financial Services, Ltd. ("Lime Financial"),  was a fraudulently manufactured document with affixed the name of  a person, Alfonzo Greene who lacked any authority to sign the assignment.  Plaintiff also alleged that this signature was a fraudulent signature of a person other than Alfonzo Greene, who was an employee of Default Loan Solutions, a company which merely created and signed fraudulent documents to create the image of standing for the alleged mortgage holder. This company was formerly known as Fidelity Foreclosure Solutions, which is a division of Lenders Processing Servicing, Inc., located in Jacksonville, Florida. As a result there was no actual assignment from MERS as nominee for Lime Financial to any entity.

3.      The second alleged mortgage assignment, referenced as Exhibit B in the complaint, dated September 4, 2008, purported to reassign this same mortgage from the non-existent Trust to Saxon Mortgage Services, Inc.  This document had the name of Crystal Moore and Vilma Castro as alleged signatories an Bryan J. Bly as a notary public.  Plaintiff alleged that the signature of Crystal Moore was a fraudulent signature and that she lacked any authority to sign on behalf of the alleged non-existent trust.  Plaintiff submitted various versions of Crystal Moore's signature variations.  Thus the document was not an actual assignment as it lacked a valid assignor and was in any case not signed by a person with any authority.  Plaintiff questions how a non-existent entity can authorize someone to sign a document on it behalf.

4.      The third alleged mortgage assignment dated March 5, 2009 purportedly assigned the mortgage and the note from Saxon Mortgage Services to CM REO Trust.  The name on this document was that of Bethany Hood.  Plaintiff alleged that this person lacked capacity to sign on behalf of Saxon Mortgage Services, Inc. She is an employee of Default Loan Solutions, of St. Paul, Minnesota formerly known as Fidelity Foreclosure Solutions, which is a division of Lenders Processing Servicing, Inc., located in Jacksonville, Florida.  Plaintiff also alleged that this document contained the signature of someone other than Bethany Hood.  In support thereof, the Plaintiff produced various examples of Bethany Hood signatures.  Since the first two assignments were invalid, the third assignment was also invalid.

5.      The alleged signer of the first assignment was not a validly authorized MERS officer and he lacked authority to sign this document.

6.      MERS never held the mortgage note and is incapable of transferring or assigning notes by the four assignments.

7.      The promissory note was originally held by Lime Financial. There is no indorsement of the note to a third party.  As a result, only Lime Financial can foreclose.

8.      The alleged defendant Trust has not proven ownership of the note and the mortgage, along with valid transfers and assignments of each.

9.      None of the defendants have standing to foreclose on the property of the plaintiffs as a result of the lack of ownership of both the note and the mortgage.

10.     MERS lacked authority or capacity to assign a mortgage or note on behalf of Lime Financial on March 12, 2008.

11.     The March 12, 2008 document, which was alleged signed by a person purporting to be "VP of MERS" whatever that means, was also ineffective and invalid because the assignee was a non-existent entity.

12.     Plaintiffs allege that the MERS database, which was accessed by Plaintiff and attached as Exhibit L in the complaint, indicates that the investor for the Plaintiff's loan number is Credit Suisse First Boston, LLC. On September 10, 2010 as indicated in Exhibit L. said loan was listed as active on the MERS system.  However as indicated by Exhibit L-1, attached to this memorandum, the loan now is listed as inactive on the MERS system.

Plaintiff filed this case on October 1, 2010 in the Providence Superior Court.

Subsequently Defendants removed this case to this Court.

## ARGUMENT

Pursuant to the Federal Rules of Civil Procedure, all allegations pled in the Plaintiffs' Complaint must be accepted  as true when this Court analyzes a Motion to Dismiss pursuant to Rule 12 (b)(6).  However this case involves a Rule 12(b)(1) Motion which  does not test the sufficiency of the Complaint.  The Defendants challenge Federal Court jurisdiction for this case, when they in fact sought removal from the Rhode Island Superior Court.  An analysis of each count of the complaint mandates that the Motion to Dismiss filed by the Defendants should be denied in light of the

allegations of the complaint.

Defendants have alleged FRCP 12 (b)(1) as the basis for their Motion to Dismiss. This Rule does not operate as a disposition of the litigation on its merits, but merely determines whether or not the case belongs in the Federal Court. <u>In Re: Passa v. Dererian</u> 308 F. Supp 2d (D. RI., 2004), this Court, reviewed a 12 (b)(1), Motion involving the Station Night Club Fire. The Court held:

> The jurisdictional question before the Court is couched in the procedural vehicle of a motion to dismiss, or, where appropriate, to remand to state court for lack of subject matter jurisdiction, brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "[t]he party invoking federal court jurisdiction bears the burden of proving its existence." Pejepscot Indus. Park, Inc. v. Maine Cent. Railroad Co., 215 F.3d 195, 200 (1st Cir.2000). In order to adjudicate a Rule 12(b)(1) motion, the Court must first look to the nature of the movant's challenge. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir.2001). If the challenge goes to the sufficiency of the jurisdictional allegations in a complaint (questioning not the facts themselves, but rather whether they establish a basis for federal jurisdiction), the court must credit the pleaded factual allegations as true and draw all reasonable inferences from them in the nonmoving party's favor. Id. When the challenge goes to the accuracy of the jurisdictional facts asserted by the plaintiff, it is the Court's obligation to engage in fact-finding to "address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Id. Here, the Opponents of federal jurisdiction do not question the accuracy of the facts plead by Proponents in support of jurisdiction, but, rather, challenge whether these facts are sufficient to merit original federal jurisdiction under the MMTJA, 28 U.S.C. § 1369. As a result, the Court accepts the Proponents' factual allegations as true, and focuses on whether these facts, as alleged, establish a basis for federal jurisdiction under § 1369.

The gist of the Defendants' argument, made pursuant to FRCP 12 (b)(1) is that Plaintiff cannot seek relief from an illegal foreclosure by claiming that fraudulent documents were recorded in the Providence Recorder of Deeds or that the attempted foreclosure process involved fraudulent conduct by the Defendants, who Plaintiff alleges lack standing to foreclose on her. Plaintiff claims that there are fraudulent signatures on the assignments. In addition the Plaintiff alleges that the signatories lacked authority to sign any of the assignments of mortgage. She also contends that the first document referenced as an assignment was made to a non-existent entity, with the second document referenced as an assignment having a non-existent grantor. As a result, the Plaintiff alleges that the Defendant, CM REO Trust, does not hold the mortgage.

In Bridge v. Aames Captial Corp. (1:09-cv-2947, N.D., Ohio, 2010), cited by the Defendants, the Court specifically (1) rejected the defendants' claim that the matter should be dismissed pursuant to rule 12 (b). Thus the only reason that defendants seek to "use" FRCP 12(b)(1) is to avoid having this matter converted to a Rule 56 motion, which gives the Plaintiff an opportunity to conduct discovery and to challenge the naked and unsubstantiated assertions of the Defendants. In this case defendants suggest that the parties to the assignments all concur with the assignments, even it

they are invalid.  However, there is no suggestion that Lime Financial is

being represented by the Defendants' attorney or is in concurrence with this

statement of counsel in the memorandum.  Thus this is a factual issue which

must be considered only in the context of finding after a trial.  Contrary to

defendants' allegations on page 5 of their memorandum, Plaintiff has

challenged the Defendants authority to foreclose because she alleges that

they do not hold the mortgage and they thus cannot foreclose.  The evidence

which Plaintiff propounds on behalf of her claim is that the assignment are

invalid due to fraud and a non-existent entity being 'assigned' a mortgage.

Plaintiff did not allege that the mortgage was transferred into a trust.  Rather

she alleges that the mortgage was not transferred into a trust which sought to

foreclose.  She alleges that there is no named trust, which contained a PSA

which ever acquired the Plaintiff's mortgage or note and alleges that Saxon

Mortgage is not a loan servicer, authorized to foreclose.  Defendants can

point to no PSA, which includes the Plaintiff's mortgage or note.  The 12

(b)(1) argument is merely an end run and an  attempt by the defendants to

avoid discovery and scrutiny of their fraudulent activities without an

evidentiary hearing.

  Rhode Island foreclosure law, specifically 34-11-22, allows a

party, **which is the assignee of the original mortgagee,** to publish the

foreclosure notice after default is declared by the lender. This is also reflected in the mortgage, which is a contract between the Plaintiff and the mortgagee, Lime Financial and its assigns.  Thus only the validly authorized assignee of Lime Financial is entitled to foreclose on the property.  In Rhode Island a mortgagor can seek injunctive and declaratory relief to allege that the party seeking to foreclose does not in fact hold the mortgage and the note.  Thus <u>Bridge</u> should either be disinguished as not in conformity with Rhode Island law, by the lack of any allegations of fraud or by virtue of it being bad public policy, promulgating and encouraging foreclosure fraud. In addition <u>Bridge</u> can be distinguished as it was based on Ohio Law, which is a lien theory state as is Michigan.  Rhode Island is a title theory state.

<u>Brough v. Foley</u> **,** 525 A.2d 919 (R.I. 1987), cited by Defendants,  can be readily distinguished.  In <u>Brough</u>, the case involved a Motion for Summary Judgment, when the plaintiffs had a sales agreement with the decedent's estate dated July 22, 1985, subject to a right of first refusal to a third party or its nominee, dated February 17, 1971 with an assignment dated August 24, 1983.  The executor of the decedent's estate offered the property to the Plaintiff subject to the right of first refusal of the original party, Eldercare or its nominee.  At no time was there a challenge that the decedent had not executed the right of first refusal nor that the original holder of the

right of first refusal had in fact executed an assignment.  The right of first refusal was invoked and the plaintiff commenced litigation for specific performance.   There was no dispute about fraud or validity of the assignments.  Since the plaintiff's sales agreement was subject to and preceded by the assignment, she lacked standing to dispute a legal agreement executed before she entered  into her agreement.

DiPetrillo v. Belo (Superior Court, RI, November 6, 2009) can also be distinguished from this case.  On April 1, 1985 Belo's predecessor entered into a lease agreement with the predecessor of Citadel Broadcasting, which gave the predecessor a right of first refusal to purchase a transmission tower and transmitter site.  In March, 2009, DiPetrillo and Belo entered into an agreement for sale of the property subject to the right of first refusal. DiPetrillo was aware of the right of first refusal, and requested that Citadel waive its rights to purchase.  However Citadel did not wave its rights and in fact exercised them.  Plaintiff filed suit to try to seek declaratory and injunctive relief.  Since its purchase and sale agreement was subject to the right of first refusal, it lacked standing to dispute the  previously executed documents.  His lack of standing was due to the fact that he suffered no injury as his property rights  were subject to that which he tried to challenge.  There was no allegation of fraud or manufactured documents

in <u>Belo</u>.

<u>Ifert v. Miller</u>,  138 B.R. 160 C Bankr, ED, PA, 1992) cited by Defendants is also inapplicable.  It did not involve fraud against the party alleging fraud.  Rather it disputed a contract which had effect on it and thus it lacked standing because  it was not injured  by the alleged fraud or assignment.  It received its equipment and merely had to pay a third party pursuant to an assignment of the contract, of which it had been aware, prior to purchasing two cranes.

<u>Liu v. T & H Machine, Inc.</u> 191 F 3d 790 (3) Civ., 1996) also did not involve allegation of fraud against the Plaintiff.  The Defendant owed Plaintiff pursuant to a transaction.  The Plaintiff assigned this right, which were then reassigned back to him. Defendant did not allege that the documents reassigning the right to the proceeds were fraudulent and he was not injured by the reassignment.

<u>Rogan  v. Bank One</u> 457 F. 3rd 561 (6th Cir., 2006) merely dealt with an assignment of mortgage which was recorded after the bankruptcy was filed.  There was no allegation that it was fraudulently executed.  The Court found that Kentucky law did not require recording to be a valid assignment.

Defendants seek to ignore the body of established law regarding the need to prove standing by an alleged mortgagee based upon, *Livonia*

*Property Holdings, LLD v. 12480 Farmington Road Holdings, LLC*, 12840-12976, 2010 WL 1956867.  Defendant completely misstate what that Court's ruling stands for and what it even addressed.  Defendants contend that the facts of this case is similar to *Livonia,* while the cases are quite distinguishable.

*Livonia Property Holdings, LLC*, supra*,* involved a commercial loan and not a residential loan.  Thus, a loss of property by an individual to an entity without any valid claim involves a loss of due process rights protected by Article I, 2 of R.I. State Constitution, and the 14th amendment Due Process Clause and the Fifth Amendment of the United States Constitution as applied to the States. When a mortgagor loses her or his property without due process of law to a stranger to the title, he or she loses a constitutionally protected property right and thus strict scrutiny applies to the judicial review of the foreclosure process. That level of review does not apply to commercial foreclosures.

In *Livonia,* the original notes and endorsements were apparently produced, and the failure to record interim mortgage assignments were waived. There was no allegation about fraud on the part of the signer of the assignment. In *Livonia*, the Court decided the case on the basis of failure to meet particular restraining order standards peculiar to that factual setting.

*Livonia* at 15 and 16.  It thus  should be disregarded as unique to the facts of Michigan Law.  *Livonia* was not a consumer case, and involved a $16,000,000.00 Commercial Shopping Center Loan.  The Mortgagor had signed a pre-foreclosure agreement in which its acknowledged that the Trust held the note and waived all its defenses.  A copy of the agreement is attached to this Memorandum as Exhibit M-4.  It interpreted a Michigan statute requiring a record chain of title.  Michigan is a lien theory state, and did allow unrecorded assignments in blank, which are not legal in Rhode Island, a title theory state.  Thus *Livonia* was contrary to the holding of the Massachusetts Land Court in U.S. Bank v. Ibanez  Commonwealth of Massachusetts, The Trial Court, Land Court Department Hampden, SC, 08 MISC 384283, which has recently been upheld by the Supreme Judicial Court of Massachusetts.

The first alleged assignment dated March 12, 2008 was to a non-existent entity.  It was purportedly signed by Alfonzo Greene.  Plaintiff alleges that the signature was fraudulent and in any fact the signatory lacked authority to sign and that the entity to which the first alleged assignment of mortgage was granted to an improperly named entity which did not exist.

These signatories worked for Default Loan Servicing (former Fidelity National Default Solutions), a division of Lenders' Processing System.

This company had another subsidiary named DOCX, LLC which has closed its office where similar documents were prepared.  The Florida Attorney General has issued subpoenas to both DOCX and LPS, copies of which are attached in the complaint as Exhibit B.   This subpoena sought to obtain information for DOCX, LLC regarding fraudulent assignments and various other robosigners of DOCX.  Thus Plaintiff allegations which were made before the subpoenas were issued are well founded.

The allegations also dispute the validity of the assignments signed by Alfonzo Green, alleging that his "signature" was affixed to another document in this case without any authority from Defendant MERS. Plaintiff alleges that he signs documents manufactured by Default Loan Solutions in order to create the illusion of ownership of the mortgage.  This fraudulent conduct will certainly harm the Plaintiff if Defendants are allowed to foreclose without having obtained the mortgage.

The type of fabrication utilized by the Defendants is reflected in Exhibit C of the complaint from the DOCX, LLC website, which solicited purchase of documents.  One of the documents sold by DOCX is item 1A03 referred to as "Create missing intervening assignment" for $35.00.  For $12.85, plus shipping and handling, DOCX could also create a note allonge or create a lost note affidavit.  Plaintiff in her complaint, alleges that  the

assignments were fraudulently created by a division of LPS, the result being that no Defendant held her mortgage. Plaintiff must be allowed to challenge such blatantly fraudulent conduct.

Defendants have disputed Plaintiff's rights to allege that Defendants seek to foreclose based upon fraudulent documents and defects in the securitization process. They ironically claim that Plaintiffs lack standing to challenge an illegal foreclosure, when they themselves lacked standing to foreclose. The case was filed as alleging a violation of Rhode Island Law questioning the authority of a stranger to the title to foreclose. Specifically Rhode Island Law requires a party to have a valid assignment of mortgage before it can proceed on a foreclosure. In Eisenberg v. Gallagher, 32 R.I. 389 (R.I.,1911), the Rhode Island Supreme Court invalidated a foreclosure because the party commencing the foreclosure did not own the mortgage at the time it commenced the foreclosure process. This case is still good law and prohibits the Defendants from proceeding with a foreclosure. In Eisenberg, an agent of the original holder of a mortgage commenced a foreclosure action before the assignee actually held the mortgage. This did not provide the sufficient twenty days to advertise the mortgage pursuant to the power of sale. The Court ruled that since the assignment was made after the foreclosure process was commenced, the sale was invalid.

Thus under Rhode Island Law, it is clear that a homeowner can challenge a foreclosure based on lack of ownership of the mortgage or the note.  Since all the allegations were made in the complaint are deemed to be true, the argument that Plaintiffs cannot challenge an illegal and fraudulent assignment is without merit.  The attempt of the Defendants to suggest that the Plaintiff is seeking to be third party beneficiaries of the PSA also is without merit.  The Plaintiff contends that the Defendant does not hold the mortgage and note, and pursuant to Rhode Island Law, it cannot foreclose.  Defendants must show that the party seeking to foreclose exists, legally has been transferred the note and mortgage and that Saxon has authority to foreclose on its behalf.  Defendants seek to "reduce the counts to their essence" by mischaracterizing the counts as seeking to enforce the PSA and other agreements.  The plaintiff has alleged, with supporting documentation, that the MERS bylaws allow the appointment of a MERS officer only through a resolution of its Board of Directors and that Alfonzo Greene is not so authorized.  The Plaintiff also alleges that the MERS Rules and Regulations in effect in September, 2008 required all MERS officers to be employees of MERS members, which had registered loans on the MERS system. Thus Plaintiff alleged the lack of authority based on the fact that in September, 2008, Alfonzo Greene worked for Fidelity Default Loan

Solutions.

The argument advanced by Defendants' attorney has already been rejected by the Rhode Island Superior Court on November 23, 2010. In the case of Bordas v. Mortgage Electronic Registration Systems, Inc. et al, case no.: 2009-5596, the attached memorandum of law (Exhibit L-2) was filed by the same firm representing these Defendants, the same argument advanced in this case was argued by the defendants in Bordas, citing *Livonia* and Bridge. Faced with this argument, Justice Rubine of the Superior Court on November 23, 2010 denied the RCP 12(b)(6) Motion to Dismiss. The Bordas case involved an allegation of a fraudulent assignment signed by the same fraudulent robosigner, Bethany Hood, with two different signatures on behalf of MERS as Nominee for First NLC Financial Services, LLC (which filed bankruptcy in 2007). This was allegedly signed on September 10, 2008 wherein as this case, Saxon tried to assign a mortgage to a non-existent entity entitled Deutsche Bank National Trust Company as Trustee for IXIS 2006-HE3. As in this case, Saxon employed the services of the robosigner firm, Default Loan Solutions to affix the name and purported signature of Bethany Hood, (a fellow employee of Alfonzo Greene) again on May 28, 2009 on another fraudulent assignment, this time on behalf of Deutsche Bank National Trust Company as Trustee for IXIS 2006-HE3 (the non-

existent entity) to Deutsche Bank National Trust Company, as Trustee for IXIS Real Estate Capital Trust 2006-HE3, an actual entity.

The Defendants' attorney in Bordas was asked by Judge Rubine if the Court would be able to do anything about a document that was obviously counterfeit. The answer made by Attorney Schechner, one of the attorneys in the firm representing the defendants in this case, was that the Court could not concern itself with such an issue because the parties to the assignment had ratified it and plaintiff lacked standing to address fraudulent documents. Plaintiff will obtain a copy of the transcript of the Superior Court hearing to demonstrate to this Court that the current posture of Rhode Island law, via the decision or Judge Rubine, the MERS Calendar Judge, is that Rhode Island does not allow such an outrageous argument to be advanced.

The Massachusetts Supreme Court recently dealt with the issue of improper assignments and standing in the case of US Bank National Association v. Ibanez, No. SJC-10694 (January 7, 2011). In Ibanez, the Court reviewed two complaints filed in the Massachusetts Land Court asking the Judge to declare that the plaintiffs held clear title after two foreclosures. On July 5, 2007, US Bank as trustee of a securitized trust foreclosed and purchased the property of Ibanez and Wells Fargo Bank, N.A. as trustee of a securitized trust foreclosed and purchased the property

of LaRace.  Neither homeowner originally answered the complaint.  The

plaintiffs moved for entry of default judgment in the Massachusetts Land

Court and addressed the following two issues:

    a.  Was the sale properly advertised in the newspaper?

    b.  Whether the plaintiffs were legally entitled to foreclose on the
        properties were neither executed nor recorded in the registry of deeds
        until after the foreclosure sales?

On March 26, 2009, judgment was entered against the plaintiffs.  The

Court held that the sales were invalid because at the time of the statutory

notice of the sales, the mortgage holders had not yet been assigned the

mortgages and had no interest in the mortgages at that time.  The Plaintiffs

then moved to vacate the judgments.  They were given time to provide

documents which indicated, that at the time of the foreclosure, the mortgages

had been assigned to them.  After reviewing the documents, Trial Court

denied the motion to vacate and the appeal to the Massachusetts Supreme

Judicial Court followed.

The Court reviewed the facts of each case.  In Ibanez, it noted that the

original mortgage given was to Rose Mortgage, Inc, which several days after

the closing, executed an assignment of the mortgage in blank, which did not

specify the name of the assignee.  Thereafter, the name of the assignee,

Option One Mortgage Corporation, was added to the document and recorded

on June 27, 2006.  However on January 23, 2006, Option One had also executed an assignment of the mortgage in blank. US Bank asserted that Option One assigned the mortgage to Lehman Brothers Bank, FSB, which then assigned it to Lehman Brothers Holding, Inc, which then assigned it to Structured Asset Securities Corporation, which then assigned it into a trust, where it was pooled and converted into mortgage back securities to be sold to investors, a process known as securitization.  US Bank claimed that the assignment to the Trust occurred pursuant to a December 1, 2006 trust agreement, which was not in the record.  Instead US Bank provided a 273 page unsigned offer of mortgage-backed securities to potential investors, called a private placement memorandum (PPM), which did not contain a loan schedule.  On September 2, 2008, one year after the sale and more than five months after the recording of the sale, American Home Mortgage Servicing, Inc. as alleged successor in interest to Option One executed a written assignment of the mortgage to the trust.

The LaRace Mortgage to Option One, was dated May 19, 2005.  On May 26, 2005, Option One executed an assignment in blank of this mortgage.  Wells Fargo claimed that Option One later assigned the LaRace Mortgage to Bank of America in a July 28, 2005 Flow Sale and Servicing Agreement.  BOA then assigned it to Asset Backed Funding Corporation in

an October 1, 2005 mortgage loan purchase agreement, after which it was

pooled with other mortgages and assigned to Wells Fargo as a trustee for

another securitized trust.  Wells Fargo did not provide the Court with a copy

of the Flow Sale and Servicing Agreement so there was no document

reflecting an assignment from Option One to BOA. It only provided an

unsigned copy of the mortgage loan purchase agreement, which did not

contain a list of the assigned mortgage loans.  It also provided the Court a

copy of the unsigned Pooling and Servicing Agreement for the Trust, with

no loan number, name, servicing number or address relating to the

Defendants' loan.  On May 7, 2008, an assignment was executed from

Option One to Wells Fargo as Trustee, with a purported effective date of

April 18, 2007, the date of the sale.

Plaintiffs brought an action under GL c. 240Sec. 6 seeking a

declaration that the defendant mortgagors' titles had been extinguished.

This section of the Massachusetts General Laws is similar to that a similar

provision in the Rhode Island General Laws to clear title:

> Section 6. If, in a civil action in the supreme judicial or the superior
> court, or in the land court, to quiet or establish the title to land situated
> in the commonwealth or to remove a cloud from the title thereto, it is
> sought to determine the claims or rights of persons unascertained, not
> in being, unknown or out of the commonwealth, or who cannot be
> actually served with process and made personally amenable to the
> judgment of the court, such persons may be made defendants and, if

they are unascertained, not in being or unknown, may be described generally, as the heirs or legal representatives of AB, or such persons as shall become heirs, devisees or appointees of CD, a living person, or persons claiming under AB. It shall be unnecessary for the maintenance of such action that the defendants shall have a claim or the possibility of a claim resting upon an instrument the cancellation or surrender of which would afford the relief desired; but it shall be sufficient that they claim or may claim by purchase, descent or otherwise, some right, title, interest or estate in the land which is the subject of the action and that their claim depends upon the construction of a written instrument or cannot be met by the plaintiffs without the production of evidence. Two or more persons claiming to own separate and distinct parcels of land in the same county by titles derived from a common source, or two or more persons having separate and distinct interests in the same parcel, may join as plaintiffs in any action brought under this section.

The Court noted that in Massachusetts there was limited judicial

involvement in the foreclosure process stating:

Even where there is a dispute as to whether the mortgagor was in default or **whether the party claiming to be the mortgage holder is the true mortgage holder** (emphasis added), the foreclosure goes forward unless the  mortgagor files an action and obtains a court order enjoining the foreclosure.  Ibanez at page 10.

Thus Ibanez recognized the right of a mortgagor to dispute ownership of the

mortgage.

The Court recognizing the substantial power that the statutory scheme

affords to a mortgage holder affords to a mortgage holder to foreclose

without immediate judicial oversight, stated that "one who sells under a

power (of sale) must follow strictly its terms.  If he fails to do so there is no

valid execution of the power, and the sale is wholly void." Ibanez at p. 10.

The Court went on to indicate that one of the terms of the power of sale, that must be strictly adhered to,  is the restriction on who is entitled to foreclose and that  any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void.  <u>Ibanez</u> at p. 10-11.   It then indicated that only the present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property, the failure to identify the holder of the mortgage in the notice of sale may render the notice defective and the foreclosure sale void. <u>Ibanez</u> at p. 11. The Court then decided that to obtain clear title the plaintiffs were required to prove their authority to foreclose under the power of sale and could do so only if they were the assignees of the mortgages at the time of the notice of the sale. <u>Ibanez</u> at p. 12.

The Plaintiffs countered that the securitization documents established valid assignments.  The Court then evaluated the documents provided to determine whether the securitization documents met the requirements of a **valid assignment (emphasis added).** <u>Ibanez</u> at p. 12.  The Court held that in Massachusetts an assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor (as in Rhode Island). The homeowner only retains equitable title in the home and the legal title

remains in the mortgagee.  However the Trust agreement described in the PPM was only an agreement to be executed in the future and provided no proof of an actual assignment and did not contain the actual loan schedules. Finally as to the Ibanez mortgage, even if there were an executed trust agreement with the required schedule, US Bank had failed to furnish any evidence that Structured Asset Securities Corporation had ever held the mortgage.  Thus Option One was the mortgage holder at the time of the foreclosure and US Bank lacked authority to foreclose at the time of the sale. As to LaRace, Wells Fargo claimed that it received the mortgage in the PSA, which however did not contain a loan schedule.  Thus Option One again remained as the mortgage holder at the time of the foreclosure.

The court concluded by referring to several aspects of the process of securitization.  It noted that when a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool, with a schedule of  the mortgage loans that clearly and specifically assigns the mortgage at issue as among those assigned may suffice to establish that the assignment was made by a party that itself held the mortgage, provided that there must be proof that the assignment was mad by a party that itself held the mortgage.   It also rejected any validity for assignments in blank, noting that a conveyance of real property, such as a mortgage, that does not name

the assignee conveys nothing and is void.  Ibanez at p 15.  The Court also

rejected the argument that the note carries with it the mortgage.  It also

rejected the so-called confirmatory assignments using language such as

effective date of a prior time.

> "Because an assignment of a mortgage is a transfer of legal title, it
> becomes effective with respect to the power of sale only on the
> transfer, and where there is no prior valid assignment, a subsequent
> assignment by the mortgage holder to the note holder is not a
> confirmatory assignment because there is no earlier written
> assignment to confirm.  Ibanez at p. 15.

In Ibanez, the foreclosures were held to be invalid based on an

analysis of how lack of valid assignments effect the powers of sale contained

in the mortgage.  Plaintiff has devoted a significant amount of time in

analyzing this opinion because it was just issued on January 7, 2011 and it

operates as a completely opposite position from the Livonia case cited by the

Defendants.  Livonia specifically rejected the Trial Court opinion in the

2009 Ibanez decision, noting that Michigan was a lien theory unlike

Massachusetts, a title theory state.  Like Massachusetts, Rhode Island is a

title theory state, which requires mortgages as conveyance interests in real

estate assignments to be in a particular statutory form.  Here the first

document recorded purported to be an assignment to a non-existent entity.

The second document recorded (once someone at Saxon Mortgage realized

that there was a problem with the fraudulent assignment, just as in <u>Bordas</u>)

was from the non-existent entity to an actual entity, Saxon Mortgage.  And

the third document was a purported assignment of mortgage from Saxon

Mortgage to CM REO Trust to liquidate a mortgage, which Saxon did

not validly own.  All of these documents bore the names and signatures of

robosigners, which have been alleged to be manufactured and not signed by

the persons who purported to sign them and were in fact done so by

outsourced companies, whose job is to prepare false documents to mislead

Courts and to establish standing for a dishonest entity, which seeks to

commit a fraud upon the legal system.

      <u>In re Schwartz</u>, 366 B.R.265 (Bankr. D. Mass. 2007), cited by <u>Ibanez,</u>

concerned a Motion for Relief to pursue an eviction. Movant asserted that

the property had been foreclosed upon prior to the date of the bankruptcy

petition. The pro se debtor asserted that the Movant was required to show

that it had authority to conduct the sale. Movant, and "the party which

appears to be the current mortgagee…" provided documents for the court to

review, but did not ask for an evidentiary hearing. Judge Rosenthal sifted

through the documents and found that the Movant and the current mortgagee

had failed to prove that the foreclosure was properly conducted. Specifically,

Judge Rosenthal found that there was no evidence of a proper assignment of

the mortgage prior to foreclosure. However, at footnote 5, Id. at 268, the Court also found that there is no evidence that the note itself was assigned and no evidence as to who the current holder.

*In Re: Foreclosure Cases*, 521 F.Supp. 2d (S.D. Ohio 2007), a Federal Judge in Ohio, relying almost exclusively on standing, determined that a foreclosing party must show standing. "[I]n a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time that the complaint was filed." Id. at 653**.** Judge Rose instructed the parties involved that the willful failure of the movants to comply with the general orders of the Court would in the future result in immediate dismissal of foreclosure actions**.**

In *Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio) January 8, 2008. Judge Abel followed the lead of Judge Rose in deciding  *In RE: Foreclosure Cases,*  and found that although Deutsche Bank had filed some evidence in support of its motion for default judgment indicating that MERS was the mortgage holder,  there was not sufficient evidence to support the claim that Deutsche Bank was the owner and holder of the note as of that date. Following *In re Foreclosure Cases*, 2007 WL 456586, the Court held that summary judgment would be denied "until such time as Deutsche Bank was able to offer evidence showing, by a

preponderance of evidence, that it owned the note and mortgage when the complaint was filed.**"** 2008 WL 111227 at 2. Deutsche Bank was given twenty-one days to comply. Id.

In *HSBC Bank USA, N.A. v. Valentin*, 21 Misc. 3D 1124(A), 2008 WL 4764816 (N.Y. Sup.) November 3, 2008, the New York Court found that, even though given an opportunity to, HSBC did not show the ownership of debt and mortgage. The complaint was dismissed with prejudice and the "notice of pendency" against the property was canceled.

In the Bankruptcy case of *In Re: Wilhelm*, Case No. 08-20577-TLM Bankr Idaho, 2009), the Court reviewed a Relief From Stay Motion and declined to grant the relief sought by the moving party. The Court stated: ("Generally, a party without the legal right under applicable substantive law to enforce the obligation at issue . . . lacks prudential standing.") *Wilhelm* at p. 11.

The Court went to consider the fact that the party seeking to foreclose must be a holder of the note and the mortgage and that the burden was on that party to prove that it had such rights. The Court also noted that:

> Movants have not established MERS's authority to transfer the notes at issue. . . . Movants cannot rely on the MERS assignments to establish an interest in the notes.  <u>Wilhelm</u> at p. 23.

In *Wilhelm*, the Court first looked to local law regarding the ability of

a party to enforce a Note and mortgage:

> To be the "holder" of an instrument one must possess the note and the note must be payable to the person in possession of the note, or to bearer.

This UCC provision, which is also encoded in Rhode Island, was noted by the Court as follows:

> Importantly, however, if a person "proves the transaction" by which it acquired the note, but fails to show possession, he or she cannot enforce the note.

This case also involves MERS attempts to transfer notes, which it never held, similar to the case at bar.

The United States District Court for the Southern District of New York recently considered an analogous case in <u>Sykes v. Mel Harris and Associates</u> Civ 1-09-civ-8486-DC (December 29, 2010). <u>Sykes</u> was a class action case against a debt collector which purchased obligations from creditors and its attorney and process server. The Plaintiffs alleged that the Defendant purchased debt to collect portfolios for pennies on the dollar and attempted to collect full face value. However limited documentation concerning of the debts meant that many debt buyers had limited proof of the validity of these debts. Plaintiffs alleged that Defendants conspired in a scheme to obtain fraudulent default judgments. The Defendant had a "designated custodian of the records" "sign affidavits of merit" for each

default.  Thus the Court properly considered the Plaintiffs claims that the Defendants sought to collect a debt they did not own despite alleged assignments, similar to Plaintiff's allegations to this case.

Thus neither the holding nor dicta by the <u>Livonia</u> Court, impact Rhode Island Declaratory Judgment actions brought by  Rhode Island residential mortgagors in the  Providence County Superior Court.  This Court applies Rhode Island state law with regard to the definition of property rights, which are defined by the statutes located within Title 34 of  the Rhode Island General Laws.  These specific statutory examples are not similar to the operative Michigan statute.  Rhode Island conveyance statutes are substantially different from Michigan's conveyance statutes.

The statutory requirements for conveyances are set forth in R.I.G.L.§ 34-11-1[1]. Those R.I. provisions requires that any conveyance  and declarations of trust concerning the conveyance be made in (1) writing, (2)

---

[1] <u>R.I.G.L.§34-11-1</u> **Conveyances required to be in writing and recorded**.

    Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust, for any term longer than one year, and all declarations of trusts concerning the conveyance, shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded. A lease for the term of one year or less shall be valid although made by parol. Leases for terms of more than one year may be recorded with a memorandum of lease in writing rather than the original lease; provided, however, that the memorandum shall contain the names of the parties to be charged, a description of the real estate, the duration of the lease, including renewal options and purchase options.

duly signed, (3) acknowledged, (4) delivered in accordance with R.I.G.L.§34-11-4[2], and (5) recorded.

The provisions of R.I.G.L. § 34-11-24 define the impact of filing a form assignment of a mortgage.  The statutory parameters of the powers of sale are set forth in the provisions of R.I.G.L. § 34-11-21.; R.I. G.L. §34-11-22 sets forth the definition of the right to sale by power of sale with a statutory form mortgage. Procedures by mortgagees to sell by advertising are set forth in R.I.G.L.§ 34-27-4. Procedures for mortgagees to provide discharges and receipts are set forth in R.I.G.L.§ 34-27-3. Procedures for mortgagees to bid at a foreclosure sale are set forth in R.I.G.L.§ 34-27-2; Mortgagees may foreclose the equity of redemption through judicial foreclosure procedures authorized by R.I.G.L.§ 34-27-1.  Rhode Island mortgagees must provide releases pursuant to the provisions of

R.I.G.L.§ 34-26-8 (4); Mortgagees must pay  property taxes in the situation set forth in R.I.G.L.§ 34-27-6. Rhode Island mortgagees must pay interest on escrow accounts pursuant to R.I.G.L.19-9-2.   Rhode Island

---

[2] R.I.G.L.§34-11-4 **Delivery of conveyance sufficient to pass title.**  Any form of conveyance in writing, duly signed and delivered by the grantor, or the attorney of the grantor duly authorized, shall be operative to convey to the grantee all the possession, estate, title and interest, claim, demand or right of entry or action, of the grantor, absolutely in and to the land conveyed, unless otherwise expressly limited in estate, condition, use or trust, and if otherwise expressly limited, shall convey such property for the time or estate or on the condition, use or trust as declared, without any other act or ceremony; and if also duly acknowledged and recorded, shall be operative as against third parties.

mortgagees have to pay a penalty for not discharging mortgage deeds pursuant to R.I.G.L.§ 34-26-5.

Michigan is a *lien* theory State and Rhode Island is a *title* theory State. In Rhode Island, a mortgage deed transfers title subject to a conditional defeasance if there is consideration. Lien theory and title theory statutes in different states vary.

Under Michigan mortgage law, a mortgage is not an estate in land, but is a lien on real property intended to secure performance or payment of an obligation. *Prime Financial Services v. Vinton* 279 Mich.App. 245, 761 N.W. 2d 694, 703. (Mich.App.2008). This is completely contrary to Rhode Island Law which clearly establishes that a Mortgage is an estate in land. The *Livonia* Court recognized this fact and refraining from using the *Ibanez,* logic to decide the case. This Court is urged to do the same this with the instant case. Michigan law simply does not apply to this case.

Given the fact that Rhode Island and Michigan Law are in no way the same relative to mortgage law, using Michigan's law to determine a uniquely Rhode Island question of law would be inappropriate in all circumstances. In fact, *Livonia* should not be considered in any way because it offers no guidance at all in answering the questions before this Court. In Rhode Island, a title theory state, a mortgagor does have the right to challenge the

validity of an assignment of a mortgage assignment because a mortgage is an estate in land and the mortgagee and the mortgagor are parties to that transaction.  Application of the holding in *Livonia Property* to the facts of this case would lead to an absurd result under Rhode Island Law.

The case of <u>In re: Jorge Canellas</u>, (Bankr. M.D.  FL. 2010) Case No. 6:09-bk-12240-ABB involved the issue of standing to foreclose in the context of Motion for Relief from Stay.  <u>Canellas</u>, adopting the holding set forth in <u>In re: Jacobson</u>, 402 B.R. 559, 366 (Bankr. W.D. Wash. 2009) stated unequivocally that "Only the holder of the Note and Mortgage, or its authorized agent, has standing to bring this motion. "   This was a Florida Court sitting in a lien theory state, adopting the view of a Washington Bankruptcy Court, sitting in a title theory state.  See also, <u>In re: Minbatiwalla</u>, 424 B.R. 104 (Bankr. S.D. NY, 2010) in which the Court ruled that the party seeking relief from stay to foreclose had to possess both the promissory note and mortgage.   Both of these cases support the claim of these plaintiffs as pleaded in their complaint and are far more persuasive than the holdings in *Livonia* and <u>Bridge</u>.

The scope of the public policy concerns and the relief sought by Plaintiffs in this case can be demonstrated by the recent testimony by Professor Adam Levitin of Georgetown University Law Center on November 18, 2010 before the United States Congress at the House Financial Committee, Subcomittee on Housing and Community Opportunity (Exhibit L-3).  In that testimony he addressed the proplems which are facing these Plaintiffs and homeowners in America today.  In describing the

problem, he noted:

> The chain of title problems are highly technical, but they pose a
> potential systemic risk to the US economy. If mortgages were not
> properly transferred in the securitization process, then mortgage-
> backed securities would in fact not be backed by any mortgages
> whatsoever.  Testimony at p. 1

He then went on to describe some examples of the problems and

faulty documents readily apparent in regard to mortgage securitization

today:

> In the case of a mortgage foreclosure, only the mortgagee has such an
> interest and thus standing. Many of the issues relating to foreclosure
> fraud by mortgage servicers, ranging from more minor procedural
> defects up to outright counterfeiting relate to the need to show
> standing. Thus problems like false affidavits of indebtedness, false
> lost note affidavits, and false lost summons affidavits, as well as
> backdated mortgage assignments, and wholly counterfeited notes,
> mortgages, and assignments all relate to the evidentiary need to show
> that the entity bringing the foreclosure action has standing to
> foreclose.  Testimony at p. 5.

He then criticized the position taken by the Defendants in this case:

> A common response from banks about the problems in the
> securitization and foreclosure process is that it doesn't matter as the
> borrower still owes on the loan and has defaulted. This "No Harm, No
> Foul" argument is that homeowners being foreclosed on are all a
> bunch of deadbeats, so who really cares about due process? As
> JPMorgan Chase's CEO Jamie Dimon put it  "for the most part by the
> time you get to the end of the process we're not evicting people who
> Mr. Dimon's logic condones vigilante foreclosures: so long as the
> debtor is delinquent, it does not matter who evicts him or how. (And it
> doesn't matter if there are some innocents who lose their homes in
> wrongful foreclosures as long as "for the most part" the borrowers are
> in default.) But that is not how the legal system works. A homeowner
> who defaults on a mortgage doesn't have a right to stay in the home if

the proper mortgagee forecloses, but any old stranger cannot take the law into his own hands and kick a family out of its home. That right is reserved solely for the proven mortgagee. Irrespective of whether a debt is owed, there are rules about who can collect that debt and how. The rules of real estate transfers and foreclosures have some of the oldest pedigrees of any laws. They are the product of centuries of common law wisdom, balancing equities between borrowers and lenders, ensuring procedural fairness and protecting against fraud. The most basic rule of real estate law is that only the mortgagee may foreclosure. Evidence and process in foreclosures are not mere technicalities nor are they just symbols of rule of law. They are a paid-for part of the bargain between banks and homeowners. Mortgages in states with judicial foreclosures cost more than mortgages in states without judicial oversight of the foreclosure process.101 This means that homeowners in judicial foreclosure states are buying procedural protection along with their homes, and the banks are being compensated for it with higher interest rates. Banks and homeowners bargained for legal process, and rule of law, which is the bedrock upon which markets are built function, demands that the deal be honored.  Ultimately the "No Harm, No Foul," argument is a claim that rule of law should yield to banks' convenience. To argue that problems in the foreclosure process are irrelevant because the homeowner owes *someone* a debt is to declare that the banks are above the law.

With the background provided by the Congressional Testimony, the radical position advocated by the Defendants in their Motion should be noted:  **Regardless of allegations of fraud, lack of authenticity or authority in the execution of three alleged mortgage assignments, Defendants can foreclose on Plaintiffs' property and there is nothing that this Court or any Court can do about it.** This position is specious and against public policy and established case law.  Voluminous cases in both the Bankruptcy Courts., Federal Courts and State Courts have held that

parties seeking to foreclose lack standing due to fraudulent and faulty assignments and other documents.  A few more recent ones are brought to this Court's attention. In the case of In Re: Koontz, (Bankr, ND. IN, 2010), the United States Bankruptcy Court for the North District of Indiana  held that the alleged assignee of the original mortgage holder was not entitled to Summary Judgment in an adversary proceeding allegations that it  lacked standing to file a claim against the Debtor.  The assignee allegedly received an unrecorded assignment in blank, which did not list an assignee.  After Debtor presented their concerns to the Court about this assignment, the party seeking to file the alleged assignee had a new assignment prepared for the litigation.  The Debtor noted its concerns about the new assignment to the Court alleging lack of capacity of the signer and alleged that there were genuine issues about the actual holder of the Note and whether documents were fabricated in order to circumvent the statutorily required documentation required by the proof of claim process.  Koontz at p. 7.  The Court noted:

> The court finds that the debtor successfully overcame the rebuttable presumption of validity. She demonstrated that the documents attached to the Proofs of Claim No. 22 did not, by themselves, establish the necessary chain of title. The Note and Mortgage were the underlying documents on which the claim was based, but they identified Trustcorp as the payee and mortgagee, not EverHome. No documents connected Trustcorp to EverHome. EverHome attempted to show that it now holds the rights originally given to Trustcorp by

attaching an Assignment of Mortgage to the amended Proof of Claim. **However, the debtor identified the bogus MERS employee signing the documents and thus demonstrated the Assignment's invalidity and fabrication**. (emphasis added).The documents submitted as attachments to both Proofs of Claim did not show a valid assignment of rights under the Note and Mortgage from MERS to EverHome. Therefore the claim, unsupported by documents adequate to establish the assignment of rights on which it is based, does not enjoy prima facie validity. Koontz at p. 12.

The Court particularly evaluated the fraudulent nature of the alleged

mortgage assignment:

The plaintiff, in her Response to Motion for Summary Judgment, claimed that the chain of title documentation still was unclear. She pointed out that the Assignment of Mortgage was attached to the amended Proof of Claim as proof that EverHome had a claim to the debtor's mortgage. The Assignment allegedly transferred the debtor's Mortgage from MERS, as nominee for Trustcorp, to EverHome effective July 15, 2009, which was after Trustcorp was transferred to 1st Source Bank. **Also, the signature of Bethany Hood, as Vice President of MERS, was fraudulent.** ( Emphasis added). MERS, in its Answer to the plaintiff's Complaint, "admit[ted] that Bethany Hood is not an employee of MERS." R. 23 at 4; R. 11 at p. 30. The debtor claimed that the document was fabricated, and MERS has offered no other explanation; nor has it submitted properly authenticated documentation of an assignment. It appears to this court that a fraudulent recorded Assignment of Mortgage might still be found today in the St. Joseph County Recorder's Office, despite MERS's knowledge of the false signature. Indeed, MERS has completely sidestepped the fact that this Assignment was signed by someone representing herself to be a Vice President of MERS, and it has declined to explain why this false document was attached to the amended Proof of Claim. Koontz at pp. 15-16.

This Bethany Hood was the same Bethany Hood whose name appears

on one fraudulent assignment in this case as well as in the Bordas case.

The Court obviously evaluated the alleged fraudulent nature of the

assignment and found said allegations to be well founded and as a result denied the Motion for Summary Judgment filed by the MERS and the other claimed assignee and set the matter down for trial and ordered the Defendants to pay the Debtors' attorney fees for bringing the Adversary Proceeding and the Objection to the claim.

Another very recent Bankruptcy case is <u>In Re: Kemp</u> (BK, NJ, November 16, 2010). In <u>Kemp</u>, the Court after a hearing denied the claimant's claim and held that same was not secured primarily due to the fact that there was no proof that the claimant had ever been transferred the note pursuant to the terms of the Pooling and Servicing Agreement of Trust asserting the claim. More significantly for purposes of this discussion, the note in question was never indorsed in blank or delivered to the Bank of New York, as required by a Pooling and Servicing Agreement. <u>Kemp</u> at p.6. The Court ignored an "allonge" created for the purposes of the litigation, signed several weeks before the trial. The Court noted that:

> The allonge was not initially affixed to the original note and possession of the note never actually changed. The Pooling and Servicing Agreement required an indorsement and transfer to the Trustee, but this was not accomplished prior to the proof of claim. <u>Kemp</u>, at p. 9.

The Court also noted that in one submission, the defendant had filed a lost note submission, alleging in its pleadings, that the note had been lost and then asked that the lost note certification be disregarded. <u>Kemp</u>, at. p. 8.

As a result of this evidence, the Court considered the lack of

compliance with the Pooling and Servicing Agreement as a relevant fact finding tool and found that under the New Jersey Uniform Commercial Code, the claimant was not entitled to file a claim in the Bankruptcy proceedings because it was not entitled to enforce the note.

On October 27, 2010, the Bankruptcy Court for the Southern District of New York denied a Motion for Relief from Stay in the case of <u>In Re: Tandala Mims AKA Tandala Williams</u> (Bankr. S.D. NY 2010).  The Court found that there was no proof that the Movant had owned the note.  The Court specifically noted:

> C.   THE   COURT   HAS   ADDITIONAL   RESERVATIONS REGARDING   THE   VALIDITY   OF   THE   MORTGAGE ASSIGNMENT. <u>Williams</u> at p. 5

> The Court stated:

> In support of its Motion, Wells Fargo annexed a copy of the Mortgage as Exhibit A to the Motion. While there is nothing that undermines the facial validity of the Mortgage, there are issues surrounding the Assignment from MERS, as nominee for Lend America, to Wells Fargo. The September 13, 2010 Assignment suggests that it may have been executed simply for purposes of enabling Wells Fargo to file a lift-stay motion. An assignment in anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted. Second, MERS, as nominee for Lend America, and presumably its Assistant Vice President, John Kennerly, whose signature is on the assignment, have an address in Ocala, Florida. Kennerly's signature on the Assignment was, however, Page 9 notarized in South Carolina, the address shown on the Assignment for Wells Fargo. Did Kennerly personally appear before the notary as represented? If not, is the Assignment valid? When asked about these issues during the October 20, 2010 hearing, Wells Fargo's counsel was unable to answer any questions about the supporting documents. <u>Williams</u> at p.5.

Thus the Court in <u>Williams</u> evaluated the sufficiency of the assignment and refused hearsay documentation rather then rubber stamping the submission of a fraudulent document.

In Rhode Island a mortgage is defined as a conveyance of land. The typical mortgage transaction is accomplished by the mortgagor executing to the mortgagee a promissory note and a mortgage. The person or entity to whom the obligation or debt is owed is the mortgagee. A mortgage is a conveyance of real property given as security for the payment of a debt and is merely collateral security for the payment of that debt. In Rhode Island, a holder of a mortgage may foreclose pursuant to power of sale or statutory foreclosure. The Statutory foreclosure provision of the General Laws is:

> **§ 34-27-1  Complaint to foreclose. –** Any person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or personal, may prefer a complaint to foreclose it, which complaint may be heard, tried, and determined according to the usages in chancery and the principles of equity.

A complaint must be filed in the Superior Court by a person entitled to foreclose. Defendants' position in this case would lead to the absurd result that if these defendants filed a statutory foreclosure, then plaintiffs would be unable to deny any of the allegations of the complaint. As a result, all foreclosures would not be subject to challenge as to the allegations that an assignee held the mortgage.

In order to foreclose a party claiming to be the mortgagee must possess standing as both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced. Where, as here, standing is put into issue by the Plaintiffs, the Defendants must prove its standing in order to be entitled to relief. Foreclosure of a mortgage may not be brought by one who has no title to it.

<u>CONCLUSION</u>

This case involves obvious foreclosure fraud. Saxon Mortgage, the alleged loan servicer outsources documents to Default Loan Solutions, a subsidiary company of LPS which is under federal investigation for creating phony documents to create standing. All three supposed assignments are fraudulent and are designed to confuse and mislead the legal system. Crystal Moore was deposed in Florida and admitted that she signs the documents, passes them on to a witness who then gives the stack of documents to Bryan Bly, who notarizes documents, without the person who signed attesting that she signed them. It is an assembly line process, which is the reason all fifty of the State Attorney Generals are investigating such conduct. Defendants are asking this Court to give its imprimatur on fraud and to decide that Plaintiff lacks standing to challenge such fraud. This power of sale in the mortgage allowed only the valid holder of the note and the mortgage to

foreclose.  This Plaintiff was party to the mortgage and the law of the State of Rhode Island demands that only the valid holder or valid assignee of the mortgage be allowed to foreclose on the property.  Ibanez and other cases cited by the plaintiff stand for the proposition that only the real party in interest can take action against another. Defendants' argument, if adopted will destroy the fabric of American jurisprudence by allowing fraud to go unchecked and undefended, regardless of the evidence which plaintiff possesses to defend herself,  For these reasons, the abhorrent position taken by Defendants should be forthwith rejected.  The result of this harm of wrongful foreclosure clearly grants Plaintiff standing.

This harm certainly grants standing to the Plaintiff in this case and to all the similarly situated Plaintiff nationwide, who are defending themselves from strangers to the title of their homes, who manufacture fraudulent documents to create standing for themselves.  Courts around the country do not countenance foreclosure fraud to establish an illusion of standing on the part of alleged mortgage and note holders.  Defendants' Motion asks this Court to turn a blind eye to fraudulent documents before the Court and to deny Plaintiff redress for such illicit conduct. For these reasons the Court should deny this Motion to Dismiss.

Respectfully submitted,

January 14, 2011


/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw@aol.com


## CERTIFICATE OF SERVICE

I, John B. Ennis, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 14, 2011.


/s/ John B. Ennis