UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


ELOISA COSAJAY,                       :
                    Plaintiff,        :
                                      :
      v.                              :        CA 10-442 M
                                      :
MORTGAGE ELECTRONIC                   :
REGISTRATION SYSTEMS, INC.,           :
CM REO TRUST, and                     :
SAXON MORTGAGE SERVICES, INC.,        :
                    Defendants.       :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge


      This is a declaratory judgment action in which the Plaintiff

seeks a declaration that the assignments of her mortgage are

invalid, that her mortgage and promissory note are not held by any

of the Defendants, and that the Defendants lack standing to

foreclose on the mortgage or enforce the note.  See Complaint ¶ 8

b; see also id. ¶ 24; id., prayer for relief ¶¶ A, C, D, E, O.

Before the Court is a motion to dismiss filed by Defendants

Mortgage Electronic Registration Systems, Inc. ("MERS"), CM REO

Trust ("CM REO"), and Saxon Mortgage Services, Inc. ("Saxon")

(collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1).

See Defendants Mortgage Electronic Registration Systems, Inc., CM

REO Trust and Saxon Mortgage Services, Inc.'s Motion to Dismiss

(Docket ("Dkt.") #5) ("Motion to Dismiss" or "Motion").  Defendants

contend that Plaintiff Eloisa Cosajay ("Plaintiff" or "Cosajay") does not have standing to dispute their power to foreclose by challenging the validity of the assignments of her mortgage from the loan originator to its present holder because Plaintiff was not a party to any of those agreements.

The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After listening to the arguments presented, reviewing the memoranda and exhibits submitted, and performing independent research, I recommend that the Motion be treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and that it be granted.

## I. Facts

On April 24, 2007, Plaintiff obtained a loan from Lime Financial Services, Ltd. ("Lime"), in the amount of $220,000 in exchange for a promissory note. Complaint ¶ 9; see also id., Exhibit ("Ex.") D (Mortgage). The note was secured by a mortgage which the Plaintiff executed in favor of Lime, as lender, and MERS, as Lime's nominee, successor and assign, and as the mortgagee under the mortgage agreement. Id., Ex. D. The mortgage's security consisted of property owned by Plaintiff and located at 220 Sterling Avenue, Providence, Rhode Island (the "Property"). Complaint ¶ 8; see also id., Ex. D.

Plaintiff's promissory note and mortgage were the subject of

three assignments. Complaint ¶ 11. On March 12, 2008, MERS, as nominee for Lime, assigned the mortgage to Deutsche Bank Trust Company Americas, as Trustee and Custodian for IXIS Real Estate Capital, Inc. ("Deutsche Bank") (the "First Assignment"). Id. ¶ 11; see also id., Ex. A (First Assignment). On September 4, 2008, Deutsche Bank assigned the mortgage to Saxon (the "Second Assignment"). Complaint ¶ 11; see also id., Ex. B (Second Assignment). On March 5, 2009, Saxon assigned the mortgage to CM REO (the "Third Assignment"). Complaint ¶ 11; see also id., Ex. C (Third Assignment). Each assignment was recorded in the Property's chain of title at the Recorder of Deeds for the City of Providence. Complaint, Exs. A, B, C. Saxon, on behalf of CM REO and through its local counsel, Nicholas Barrett & Associates, initiated foreclosure proceedings in October 2010 after Plaintiff failed to make monthly payments and defaulted on her loan.[1] Complaint ¶ 10. Plaintiff filed this action to enjoin the foreclosure proceedings by alleging that the assignments of her mortgage are invalid. Id. ¶¶ 8-15.

## II. Plaintiff's Contentions

Plaintiff challenges the validity of the assignments on multiple grounds. She alleges that the persons executing the

---

[1] While Plaintiff does not explicitly state that she has defaulted on her loan, see Complaint, she has not disputed in her filings or at the March 14, 2011, hearing on the Motion to Dismiss Defendants' repeated assertions of this fact.

assignments lacked authority to sign them and that the documents themselves were "fraudulent and manufactured ...." _Id._ ¶ 11. In support of this allegation, Plaintiff avers that the persons executing the assignments were not employees, officers, or properly authorized agents of the entities for whom they purported to act and that the signatures on the assignments are fraudulent and/or not authentic. _See_ _id._ ¶ 13.

Plaintiff also alleges that MERS, as Lime's nominee, did not have the authority to assign Plaintiff's mortgage on March 12, 2008, the date of the First Assignment. _See_ _id._ ¶ 11. As support for this contention, Plaintiff posits that: "If this loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid." _Id._ Plaintiff asserts that "[a]ny assignment which would have been made on or [after] March 12, 2008[,] was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company Americas as Trustee and Custodian for IXIS Real Estate Capital Inc." _Id._ Plaintiff further asserts that this trust does not exist but that another IXIS Trust closed on April 30, 2007, and that, therefore, no assignment to that trust was possible on March 12, 2008. _Id._ As a result, according to Plaintiff, the First Assignment was to a non-existent entity and any subsequent

assignments were also void.[2]  <u>Id.</u>

Less clearly, Plaintiff also contends that "[a]fter the execution of the Trust agreement, if Plaintiff's loan was included in the PSA, the only party with any authority or capacity to assign the mortgage deed or to transfer the mortgage note to the Trust was the Depositor."[3]  Complaint ¶ 15.

---

[2] For the sake of completeness, the Court reproduces the portion of Plaintiff's Complaint which contains these allegations:

> 11. ...  If this loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid.  Thus MERS no longer held the mortgage on March 12, 2008[,] and never held the note on any date because MERS does not hold notes.  Any assignment which would have been made on or [after] March 12, 2008[,] was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company Americas as Trustee and Custodian for IXIS Real Estate Capital Inc.  Such entity does not exist.  However the last "IXIS" Trust was Natixis Real Estate Capital Trust 2007-HE2, which was issued on April 1, 2007.  The closing date for this Trust was April 30, 2007.  Thus no assignment to that Trust was possible on March 12, 2008.  The [First Assignment] was to a non-existent entity.  As a result the subsequent assignments were also void.  As a result, the mortgage and note could not have been transferred or assigned by MERS on March 12, 2008.

Complaint ¶ 11.

[3] This allegation is not entirely clear because the terms "Trust," "Trust agreement," "PSA," and "Depositor" are not defined in the Complaint.  Because the pleading previously refers to "CM REO Trust," Complaint ¶ 10, "'IXIS' Trust," <u>id.</u> ¶ 11, and "Natixis Real Estate Capital Trust 2007-HE2," <u>id.</u>, the meaning of "Trust agreement" in paragraphs 14 and 15 (reproduced below) is uncertain.

> 14.  Any REMIC securitized trust, by the terms of its Trust agreement and pursuant to its ability to accept qualified mortgages as defined by 26 USC Section 860[G], relating to Real Estate Mortgage Investment Conduits ("REMIC"), does not have the power or authority to receive mortgages or notes more than ninety days after the closing date specified in the Trust agreement, which at the latest could have been April 30, 2007.

### III.  The Complaint

#### A.  Counts

In Count I Plaintiff essentially recites the factual allegations underlying her claim.  In Count II she asserts that Defendants lacked standing to assign and transfer the note and mortgage, to enforce the note, and to foreclose.  Complaint ¶ 17. Count III alleges that "Defendants have the burden of proof of establishing possession and ownership of the note and the mortgage in addition to proving that the mortgage and note were transferred pursuant to the law and the terms of the Trust agreement." Id. ¶ 19.  Count III then asserts that Defendants have failed to do this, see id. ¶ 20, and repeats that Defendants lack standing to enforce the note or the mortgage, see id. ¶ 21.  Count IV seeks a mandatory injunction, preliminary injunction, and temporary restraining order against all Defendants to prohibit an "illegal foreclosure action ...." Id. ¶ 23.  In Count V, Plaintiff posits:

> 28.  On information and belief, if the loan had been included in a REMIC Trust, Saxon has acted to collect

---

The terms of all REMIC Trust agreements do not authorize such acquisition and the status of the Trust as a REMIC do [sic] not allow such to accept such mortgages or notes at more than 90 days beyond the closing date.

15.  After the execution of the Trust agreement, if the Plaintiff's loan was included in the PSA, the only party with any authority or capacity to assign the mortgage deed or to transfer the mortgage note to a Trust was the Depositor.

Complaint ¶¶ 14-15.  Presumably, "PSA" means Pooling and Servicing Agreement which the Complaint mentions (for the first time) in the prayer for relief.  See id., prayer for relief ¶ B.

funds for itself rather than on behalf of any Trust and
had previously advanced the Trust funds for payments on
the promissory notes allegedly contained in the loan
pool. Thus there is no default in relation to payments
allegedly due to any Trust, if the Plaintiff's loan is in
the Trust's loan pool, as it has been paid up to date by
the loan servicer.

29. If the Plaintiff'[s] loan and mortgage are contained
in an IXIS Trust, it has been paid in full by either
Credit Default Swaps, mortgage insurance or payments by
loan servicers or other third party payments. There is
no subrogation for these payments. As a result, any
claim being made by Saxon is to seek payment on claims on
behalf of CM REO Trust, which it does not have any
authority to collect or enforce.

Complaint ¶¶ 28-29.

The allegations of Count VI are similar to those alleged in

Count V:

31. On information and belief, the IXIS Trust agreement
provided for mortgage insurance and credit default swaps
and payments of principal and interest advances by the
loan servicer and other third party payments, whereby,
the Plaintiff'[s] obligations pursuant to their [sic]
promissory note have already been paid in full by
mortgage insurance provider and credit default swaps and
loan servicer and other similar entities. As a result no
default existed as to the actual holder of the note and
or the mortgage, which would authorize the note to be
accelerated or which would authorize foreclosure of the
mortgage.

Id. ¶ 31.

In Count VII, Plaintiff asserts "[o]n information and belief,

Defendants do not possess an original endorsed note," id. ¶ 33,

that "any note remains in the name of Lime Financial," id., and

that "[p]ursuant to Rhode Island law, the Defendant [sic] cannot

foreclose due to the disconnect between the note and the mortgage,"

<u>id.</u> ¶ 34.

**B. Prayer for Relief**

In her prayer for relief, Plaintiff requests a declaratory judgment that: a) the note and mortgage are not vested in Defendants; b) pursuant to the terms of the Pooling and Servicing Agreement[4] and 26 U.S.C. § 860G[5] there can be no direct assignment of the mortgage or transfer of the note from MERS as nominee for Lime directly to any trust; c) any assignments from MERS as nominee for Lime are invalid and void as a matter of law; d) Defendants do not own or hold a secured claim on the Property and do not own or hold the promissory note; e) any foreclosure proceedings previously conducted against Plaintiff are invalid; f) Plaintiff is entitled to recoup any proceeds paid to Defendants to reduce any obligation allegedly due by Plaintiff; g) the loan executed by Plaintiff was not a qualified mortgage pursuant to the Pooling and Servicing Agreement and 26 U.S.C. § 860G, and any IXIS Trust was not capable of accepting said loan or mortgage at any time more than ninety days after April 30, 2007, at the latest; h) the Second Assignment was void for lack of an existing assignment; and i) the assignments

---

[4] Although paragraph 15 references "the PSA," Complaint ¶ 15, this is the first time that the term "Pooling and Servicing Agreement" appears in the Complaint, <u>see</u> n.3.

[5] The Complaint identifies this statute as "26 USC 860(G)," Complaint, prayer for relief ¶¶ B, N; <u>see also</u> Complaint ¶ 14. For clarity, the Court uses the more standard identification of 26 U.S.C. § 860G. <u>See</u> <u>In re Cyrus II P'ship</u>, Bankruptcy No. 05-39857, 2008 WL 4371670, at *4 (Bankr. S.D. Tex. Sept. 11, 2008).

were not made by corporate officers with requisite corporate authority pursuant to law.[6]  Complaint, prayer for relief ¶¶ A-G, I, K-L, N-P.

Plaintiff additionally seeks an order: a) requiring Saxon to return any mortgage payments which Plaintiff has made;[7] and b) quieting the title of Plaintiff by holding that the mortgage executed to MERS as nominee for Lime is void and discharged.  <u>Id.</u> ¶¶ H, L.  Plaintiff further seeks to have Defendants preliminarily and permanently enjoined from commencing any further eviction or collection actions against Plaintiff, <u>id.</u> ¶¶ J-K, and executing any further assignments of the original mortgage, <u>see id.</u> ¶ L.  Lastly, Plaintiff prays for an award of compensatory and punitive damages, attorney's fees, and costs against all Defendants for wrongful foreclosure.  <u>Id.</u> ¶ Q.

## IV.  Travel

Plaintiff filed the instant action on or about October 1,

---

[6] The prayer for relief also includes a somewhat incoherent request that the Court issue "a Declaratory Judgment that the scheme of Saxon in hiring Lender Processing Servicing, Inc.[,] constitutes and [sic] is designed to avoid the requirements for valid foreclosures of mortgages." Complaint, prayer for relief ¶ G.  The Complaint does not allege that Saxon hired Lender Processing Servicing, Inc., although such action could possibly be inferred, <u>see</u> Complaint ¶ 13 c (alleging that Bethany Hood is not an Assistant Vice President of Saxon, but an employee of "Default Loan Solutions ... formerly known as Fidelity Foreclosure Solutions, which is a division of Lenders Processing Servicing, Inc.").

[7] In stating this, the Court reads Plaintiff's Complaint generously. As written, Plaintiff's request states: "Order Saxon it paid to return any mortgage payments made the Plaintiff since the securitization of the loan."  <u>Id.</u>, prayer for relief ¶ H.

2010, in the Providence County Superior Court.  See Notice of Removal (Dkt. #1) ¶ 1.  Defendants removed the action to this Court on October 29, 2010, on the basis of diversity of citizenship.[8]  See id. ¶ 5.  Thereafter, on November 30, 2010, they filed the instant Motion to Dismiss.  Plaintiff filed an objection to the Motion on January 14, 2011.  See Objection to Motion to Dismiss ("Objection") (Dkt. #12).  Defendants responded to the Objection in a reply brief on February 25, 2011.  See Defendants' Reply Memorandum to Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. #18) ("Defendants' Reply").

A hearing on the Motion was held on March 14, 2011. Thereafter, the Court took the matter under advisement.

## V.  Jurisdiction

### A.  Burden of Establishing Jurisdiction

Defendants have moved to dismiss for lack of subject matter jurisdiction.  See Memorandum of Law in Support of the Defendants' Motion to Dismiss ("Defendants' Mem.") at 4 (citing Fed. R. Civ. P. 12(b)(1)).  They appear to argue that Plaintiff does not have standing and that, therefore, the necessary requirement of a "case[] and controvers[y]," Lujan v. Defenders of Wildlife, 504

_____

[8] Plaintiff is a resident of Rhode Island.  Complaint ¶ 1. Defendant MERS is a Delaware corporation with a principal place of business in Virginia.  Notice of Removal ¶ 7.  Defendant CM REO is a trust organized under the laws of Delaware.  Id. ¶ 8.  Defendant Saxon is a Texas corporation with a principal place of business in Texas.  Id. ¶ 9.

U.S. 555, 560-61, 112 S.Ct. 2130 (1992), for the exercise of federal court jurisdiction is not satisfied, Defendants' Mem. at 5 (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 559-60); <u>see also</u> <u>Davis v. Fed. Election Comm'n</u>, 554 U.S. 724, 732, 128 S.Ct. 2759 (2008)("Article III restricts federal courts to the resolution of cases and controversies."); <u>United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.</u>, 508 U.S. 439, 446, 113 S.Ct. 2173 (1993)("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy ....."); <u>Simon v. E. Kentucky Welfare Rights Org.</u>, 426 U.S. 26, 37, 96 S.Ct. 1917 (1976)("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). Defendants assert that "Plaintiff bears the burden of establishing that she has standing to sue." Defendants' Mem. at 5 (citing <u>Lujan</u>, 504 U.S. at 561). However, in making this assertion Defendants overlook that in <u>Lujan</u> and other cases the Supreme Court has made clear that the party invoking federal jurisdiction bears the burden of establishing it. <u>See Lujan</u>, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing [standing].");<u>see also</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 104, 118 S.Ct. 1003 (1998)("the party invoking federal jurisdiction bears the burden of establishing its existence"); <u>FW/PBS, Inc. v. City of Dallas</u>, 493

U.S. 215, 231, 110 S.Ct. 596 (1990)("[Standing] is the burden of the 'party who seeks the exercise of jurisdiction in his favor'") (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780 (1936)); cf. Davis, 554 U.S. at 732 ("the party invoking federal jurisdiction [must] have standing-the personal interest that must exist at the commencement of the litigation") (internal quotation marks omitted).

Here Defendants removed the action to this Court. Therefore, they are the parties invoking federal jurisdiction. Cf. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3, 126 S.Ct. 1854 (2006)("Because defendants removed the case from state court to District Court, plaintiffs were not initially the parties that invoked federal jurisdiction."). Thus, the burden of demonstrating standing for purposes of federal jurisdiction is on Defendants. See Council of Ins. Agents & Brokers v. Juarbe-Jiménez, 443 F.3d 103, 108 (1st Cir. 2006)("burden of establishing elements of standing is on party invoking federal jurisdiction")(citing Lujan, 504 U.S. at 561); Ramírez v. Sánchez Ramos, 438 F.3d 92, 100 (1st Cir. 2006)("the party invoking federal jurisdiction bears the burden of proving that she has standing"); Manqual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003)("The burden to establish standing lies with the party invoking federal jurisdiction."); As You Sow v. Sherwin-Williams Co., No. C-93-3577-VRW, 1993 WL 560086, at *1 (N.D. Cal. Dec. 21, 1993)("the burden of proving that plaintiff has

Article III standing is with the removing defendants"); <u>see also</u> <u>Amoche v. Guarantee Trust Life Ins. Co.</u>, 556 F.3d 41, 48 (1st Cir. 2009)("The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case."); <u>Danca v. Private Health Care Sys., Inc.</u>, 185 F.3d 1, 4 (1st Cir. 1999)("[Removing] defendants have the burden of showing the federal court's jurisdiction."); <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995)("the party invoking the jurisdiction of a federal court carries the burden of proving its existence"); <u>cf.</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 101, 88 S.Ct. 1942 (1968)("[I]n terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.  It is for that reason that the emphasis in standing problems is on whether **the party invoking federal court jurisdiction** has a 'personal stake in the outcome of the controversy.'")(quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204, 82 S.Ct. 691 (1962))(bold added); <u>McNutt</u>, 298 U.S. at 189 ("In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf.  As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court.").

Accordingly, to the extent Defendants contend that Plaintiff bears the burden of establishing she has standing to sue for purposes of demonstrating that Article III's case or controversy requirement is satisfied, the Court rejects such contention. Defendants as the parties invoking this Court's jurisdiction bear the burden of establishing it. See Amoche, 556 F.3d at 48; Danca, 185 F.3d at 4.

**B.  Finding Re Jurisdiction**

Defendants have invoked the jurisdiction of the Court, and Plaintiff has not disputed that jurisdiction exists.  Indeed, Plaintiff argues against dismissal for lack of jurisdiction. Memorandum of Law ("Plaintiff's Mem.") at 5-6.  However, the Court has an independent duty to satisfy itself that subject matter jurisdiction exists. See Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005)("The existence of subject-matter jurisdiction is never presumed.  Rather, federal courts ... must satisfy themselves that subject-matter jurisdiction has been established.")(internal quotation marks and citations omitted); In re Boston Herald, Inc., 321 F.3d 174, 177 (1st Cir. 2003)("A federal court must satisfy itself of its jurisdiction over a case ....."); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 498 n.11 (1st Cir. 1992)("a federal court must independently satisfy itself about basic concerns such as subject matter jurisdiction").

The Court is satisfied from its examination of the Complaint

and the Notice of Removal that diversity jurisdiction exists. <u>See</u>
Complaint ¶¶ 1-4 (alleging that Plaintiff is a "resident"[9] of Rhode
Island and that Defendants are out-of-state corporations); <u>id.</u> ¶ 9
(alleging that the amount of the promissory note underlying this
controversy is $220,000); <u>see also</u> Notice of Removal ¶¶ 5-11. The
Court is also satisfied that Defendants have standing for purposes
of Article III, Section 2 of the Constitution. <u>See</u> <u>Pagán v.</u>
<u>Calderón</u>, 448 F.3d 16, 27 (1st Cir. 2006)("The Constitution confines
federal courts to the adjudication of actual cases and
controversies.")(citing U.S. Const. art. III, § 2, cl. 1; <u>Allen v.</u>
<u>Wright</u>, 468 U.S. 737, 750, 104 S.Ct. 3315 (1984)). "An actual case
or controversy exists when the party seeking to invoke the court's
jurisdiction ... has a 'personal stake in the outcome' of the claim
asserted." <u>Pagán</u>, 448 F.3d at 27 (quoting <u>Baker v. Carr</u>, 369 U.S.
186, 204, 82 S.Ct. 691 (1962)). Here, Defendants have a "personal
stake in the outcome" of the claims asserted because Plaintiff is
seeking, among other relief, a declaratory judgment that the
mortgage and note are not vested in or held by Defendants and also
"compensatory and punitive [d]amages, attorney fees[,] and costs
against all defendants jointly and severely for wrongful

---

[9] The Complaint alleges that Plaintiff is a "resident," Complaint
¶ 1, not a citizen, of Rhode Island. The First Circuit has noted that,
"[j]urisdictionally speaking, residency and citizenship are not
interchangeable." <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 361 n.1
(1st Cir. 2001). However, this Court emulates the First Circuit in
<u>Valentin</u> and assumes that Plaintiff meant citizen of Rhode Island when
she said "resident." <u>Id.</u>

foreclosure." Complaint, prayer for relief. Accordingly, the Court finds that subject matter jurisdiction exists.

## VI. Treatment of the Instant Motion

Although subject matter jurisdiction exists, this determination does not end the matter. The standing argument advanced by Defendants is more properly treated as a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 795 n.2 (5th Cir. 2011)("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).")(citing <u>Blanchard 1986, Ltd. v. Park Plantation, LLC</u>, 553 F.3d 405, 409 (5th Cir. 2008));[10] <u>Ctr. for Cmty. Justice & Advocacy v. RBS Citizens, N.A.</u>, Case No. 10- cv-10011, ___ F.Supp.2d ___, 2011 WL 824763, at

_____

[10] In <u>Blanchard 1986, Ltd. v. Park Plantation, LLC</u>, 553 F.3d 405 (5th Cir. 2008), the court explained:

> This question of whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question, affecting statutory standing, not a jurisdictional question, affecting constitutional standing. In the words of the Supreme Court, once a plaintiff has suffered sufficient injury to satisfy the "case and controversy" requirement of Article III, "jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Thus, the district court dismissed the rescission claim under Fed. R. Civ[.] P. 12(b)(6) for failure to state a claim upon which relief can be granted, and not Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

<u>Id.</u> at 409 (footnote omitted).

*8 n.4 (E.D. Mich. Mar. 7, 2011)("Although dismissal for lack of subject matter jurisdiction is properly brought under Rule 12(b)(1), dismissal for lack of standing is properly brought under either Rule 12(b)(1) or Rule 12(b)(6)."); <u>Bridge v. Aames Capital Corp.</u>, No. 1:09 CV 2947, 2010 WL 3834059, at *2 (N.D. Ohio Sept. 29, 2010)(construing defendants' Rule 12(b)(1) as a motion to dismiss for failure to state a claim); <u>see also</u> <u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 67 (1st Cir. 2003)(reviewing dismissal pursuant to Rule 12(b)(6) for lack of standing and noting that "[n]ormally on a Rule 12(b)(6) motion to dismiss, only the complaint is reviewed.  However, where standing is at issue, it is within the trial court's power to allow or to require the plaintiff to provide by affidavit or amended complaint 'further particularized allegations of fact deemed supportive of plaintiff's standing'")(quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 501, 95 S.Ct. 2197 (1975)); <u>Thompson v. Cnty. of Franklin</u>, 15 F.3d 245, 247 (2nd Cir. 1994)("dismissals for lack of standing may be made pursuant to Fed. R. Civ. P. 12(b)(6) rather than 12(b)(1)"); <u>United States v. AVX Corp.</u>, 962 F.2d 108, 114 n.6 (1st Cir. 1992)(noting that "Courts have often treated motions to dismiss for want of standing as motions to dismiss for failure to state a claim, thus bringing them under the rubric of Rule 12(b)(6)");[11] <u>In re Cousins</u>, 404 B.R. 281,

---

[11] After making this observation, the <u>AVX Corporation</u> court stated: "Nevertheless, we leave the ultimate choice between Rules 12(b)(6) and 12(b)(1) for another day." <u>United States v. AVX Corp.</u>, 962 F.2d 108, 114

17

285 n.4 (Bankr. S.D. Ohio 2009)("Dismissal for lack of standing is proper under Rule 12(b)(1) or 12(b)(6)."). <u>But see</u> <u>Edelkind v. Fairmont Funding, Ltd.</u>, 539 F.Supp.2d 449, 453 (D. Mass. 2008)("A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim.");[12] <u>Provencio v. Def. Tech. Corp. of Am.</u>, No. 1:07-CV-0651 AW1 DLB, 2007 WL 2177800, at *1 (E.D. Cal. July 27, 2007)("Because standing is jurisdictional, it is properly raised through Rule 12(b)(1) and not through Rule 12(b)(6).")(citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000)); <u>Ross-Randolph v. Allstate Ins. Co.</u>, Civil Action No. DKC 99-3344, 2001 WL 36042162, at *2 (D. Md. May 11, 2001)("According to the Second Circuit, the standing inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise, and thus should be analyzed under 12(b)(1).")(citing <u>Thompson v. Cnty. of Franklin</u>, 15 F.3d at

_____

n.6 (1st Cir. 1992).  As far as this Magistrate Judge has been able to determine, the First Circuit has not yet ruled definitively with respect to this question.

   [12] As support for this statement, the <u>Edelkind</u> court cited <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 801 (8th Cir. 2002), and <u>Valentin</u>, 254 F.3d at 363.  While the <u>Faibisch</u> opinion provides some support for the proposition that a challenge to a plaintiff's standing should be made pursuant to Rule 12(b)(1), <u>see</u> <u>Faibisch</u>, 304 F.3d at 801 ("We have held ... that if a plaintiff lacks standing, the district court has no subject matter jurisdiction.  Therefore, a standing argument implicates Rule 12(b)(1).")(internal citation omitted), the <u>Valentin</u> opinion does not mention the word "standing."  Thus, this Magistrate Judge does not find that <u>Valentin</u> answers the question of whether in the First Circuit a challenge to a plaintiff's standing on the ground raised by Defendants here should be made pursuant to Rule 12(b)(1) or 12(b)(6).

247)(internal quotation marks omitted).

## VII. Standard

For purposes of ruling on a motion for want of standing, the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. United States v. AVX Corp., 962 F.2d at 114 (citing Warth, 422 U.S. at 501). In practical effect, the standard is much the same as that traditionally applied to motions to dismiss made under Fed. R. Civ. P. 12(b)(6). Id.; see also New Hampshire Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 12 (1st Cir. 1996)("crediting the plaintiff's factual allegations to the extent that they are material and construing those alleged facts, together with the reasonable inferences therefrom, in favor of the plaintiff").

Satisfaction of the Rule 12(b)(6) standard requires a plaintiff to provide the grounds of her entitlement to relief, and this demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. Factual allegations must be enough to raise a right to relief above the speculative level. Id. "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at

555 n.3.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1960 (2009)(quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. (quoting Twombly, 550 U.S. at 556). When a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Thus, a court must "consider the factual allegations in [plaintiff]'s complaint to determine if they plausibly suggest an entitlement to relief." Id. at 1951. Accordingly, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Id. at 1954; cf. Horvath v. Bank of New York, N.A., Civil Action No. 1:09-cv-01129 (AJT/TCB), 2010 WL 538039, at *1-2 (E.D. Va. Jan. 29, 2010)(granting motion to dismiss because complaint "fail[ed] to set forth facts that make [plaintiff]'s claims plausible when evaluated in light of settled

law pertaining to the negotiability of promissory notes and the enforcement of deeds of trust securing such notes following negotiability").

## VIII. Basis for Motion

In this action, Plaintiff seeks principally to enjoin Defendants from foreclosing on the Property by challenging the validity of the assignments of the mortgage and the note. Complaint ¶ 8 a; <u>id.</u> ¶ 11. Plaintiff alleges that because of improprieties or deficiencies in the assignments, Defendants lack standing to foreclose or enforce the note. <u>Id.</u> ¶ 17. Defendants have moved for dismissal on the ground that Plaintiff has no standing to challenge the validity of the assignments in order to enjoin foreclosure because she is neither a party to, nor a third-party beneficiary of, the assignments or the Pooling and Servicing Agreement ("PSA"). Defendants' Mem. at 5-6.

## IX. Law re Standing

### A. General

One of the prudential aspects of standing is "the general prohibition on a litigant's raising another person's legal rights ...." <u>Osediacz v. City of Cranston</u>, 414 F.3d 136, 139 (1st Cir. 2005)(quoting <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S.Ct. 3315 (1984)). Even when a plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, the Supreme Court has held that the plaintiff generally must assert his own legal rights

and interests and cannot rest his claim to relief on the legal rights or interests of third parties. <u>Warth</u>, 422 U.S. at 499; <u>Pagán v. Calderón</u>, 448 F.3d 16, 27 (1st Cir. 2006); <u>see also</u> <u>Warth</u>, 422 U.S. at 500 ("standing in no way depends on the merits of plaintiff's contention that particular conduct is illegal ...."); <u>Bowen v. Mollis</u>, 945 A.2d 314, 317 (R.I. 2008)( "A standing inquiry focuses on the party who is advancing the claim rather than on the issue the party seeks to have adjudicated.").

**B. Rhode Island Law**

Since the basis for this Court's jurisdiction is diversity jurisdiction, Plaintiff's claims are governed by Rhode Island law.[13] <u>Miree v. DeKalb Cnty., Georgia</u>, 433 U.S. 25, 28, 97 S.Ct. 2490 (1977); <u>Barton v. Clancy</u>, 632 F.3d 9, 17 (1st Cir. 2011)("A federal court sitting in diversity ... must apply state substantive law."). Under Rhode Island law, only parties to a contract may seek to have rights declared under a contract. <u>See</u> <u>Brough v. Foley</u>, 525 A.2d 919, 921 (R.I. 1987)(holding that the "sole right that plaintiffs

---

[13] In determining state substantive law, a federal court:

"look[s] to the pronouncements of a state's highest court in order to discern the contours of that state's law." <u>González Figueroa v. J.C. Penney P.R., Inc.</u>, 568 F.3d 313, 318 (1st Cir. 2009). If the highest court has not spoken directly on the question at issue, [the federal court] predict[s] "how that court likely would decide the issue," looking to the relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority. <u>Id.</u> at 318–19.

<u>Barton v. Clancy</u>, 632 F.3d 9, 17 (1st Cir. 2011); <u>see also</u> <u>Douglas v. York Cnty.</u>, 433 F.3d 143, 149 (1st Cir. 2005).

had in respect to the subject real estate is set forth in the sales agreement that they entered into with [the executor] .... This agreement gave no right to plaintiffs to second-guess the validity of the right of first refusal, nor did it give plaintiffs the right to supervise or pass upon the effectiveness of the assignment to [the assignor]'s nominee, or the nominee's exercise of that assignment."); id. at 922 ("The plaintiffs were, in substance, strangers to those transactions and were given no rights under the contract to challenge the transactions."); State v. Med. Malpractice Joint Underwriting Ass'n, No. 03-0743, 2005 WL 1377493, at *2 (R.I. Super. Ct. June 7, 2005)("Only parties to the contract or intended third party beneficiaries may seek to have rights declared under a contract.")(citing Forcier v. Cardello, 173 B.R. 973, 984-85 (Bankr. D.R.I. 1994)); Baxendale v. Martin, No. 94-2303, 1997 WL 1051072, at *2, (R.I. Super. Ct. Aug. 14, 1997)("one who is not a party and has no right to enforce a contract lacks standing to seek a declaration of rights under that contract"); id. at *3 (declining to grant declaratory relief on the ground that plaintiff lacked standing to bring declaratory action); see also Forcier, 173 B.R. at 984 ("The Rhode Island Supreme Court recognizes the general rule that only intended, and not incidental, third party beneficiaries can maintain an action for damages resulting from a breach of contract between two other contracting parties.")(citing Davis v. New England Pest Control Co., 576 A.2d

1240, 1242 (R.I. 1990); <u>Finch v. Rhode Island Grocers Ass'n</u>, 175 A.2d 177, 184 (R.I. 1961)); <u>cf.</u> <u>Meyer v. City of Newport</u>, 844 A.2d 148, 151 (R.I. 2004)("In <u>Sousa v. Town of Coventry</u>, 774 A.2d 812, 815 n.4 (R.I. 2001) ..., this [c]ourt held that even accepting plaintiffs' argument that a town manager lacked the authority to execute a lease of town property, people who were not a party to the agreement did not have standing to challenge its validity."); <u>id.</u> (refusing to allow "exception to the standing requirement" and affirming dismissal of plaintiff's lawsuit seeking declaratory and injunctive relief).

When confronted with a request for declaratory relief, a trial justice must first determine whether a party has standing to sue. <u>Bowen v. Mollis</u>, 945 A.2d at 317; <u>Depetrillo v. Belo Holdings, Inc.</u>, No. PB 09-3367, 2009 WL 3794902, at *1 (R.I. Super. Ct. Nov. 6, 2009)(citing <u>Bowen</u>). The most fundamental characteristic of standing is that it focuses on the party seeking to have a claim entertained and not on the issues he wishes to have adjudicated. <u>McKenna v. Williams</u>, 874 A.2d 217, 225 (R.I. 2005). "Thus, when standing is at issue, the focal point shifts to the claimant, not the claim, and a court must determine if the plaintiff whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." <u>Id.</u> (internal quotation marks omitted).

## X. Application

In this case, Plaintiff's Complaint disputes Defendants' power to foreclose by challenging the validity of the assignments of her mortgage and by positing that the provisions of the PSA may have been violated. However, it is undisputed that Plaintiff is not a party to the assignment agreements or to the PSA. Thus, Plaintiff does not have standing to assert legal rights based on these documents. <u>Brough</u>, 525 A.2d at 921-22; <u>Livonia Props. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings</u>, 717 F.Supp.2d 724, 747 (E.D. Mich. 2010)(holding that a borrower who is a non-party to assignments lacks standing to dispute their validity); <u>id.</u> at 736-37 ("[F]or over a century, state and federal courts around the country have applied similar reasoning to hold that a litigant who is not a party to an assignment lacks standing to challenge that assignment."); <u>id.</u> at 747 ("[R]egardless of what contracts exist between which entities, [p]laintiff was not and is not a party to *any* of those contracts (including the assignments), and lacks standing to challenge their validity or the parties' compliance with those contracts here."); <u>id.</u> at 749 ("Plaintiff seeks to challenge whether each and every entity that ever held an interest in [p]laintiff's Note and Mortgage complied to the letter with the terms of each and every contract between it and its successor. These are *exactly* the types of challenges that [p]laintiff, as a stranger to those contracts, lacks standing to assert."); <u>id.</u> at

736 ("A debtor, for example, cannot raise alleged acts of fraud, or question the motive or purpose underlying an assignment.").

The principle that a party to a contract does not have standing to challenge the contract's subsequent assignment is well established. <u>Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC</u>, 399 F. App'x 97, 102 (6th Cir. 2010) ("There is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment.")(internal quotation marks omitted); <u>Liu v. T & H Mach., Inc.</u>, 191 F.3d 790, 797 (7th Cir. 1999)(holding that "[defendant] lacks standing to attack any problems with the reassignment" of rights under a contract); <u>Turner v. Lerner, Sampson & Rothfuss</u>, No. 1:11-CV-00056, 2011 WL 1357451, at *2 (N.D. Ohio Apr. 11, 2011)("[I]t is generally accepted law that 'a litigant who is not a party to an assignment lacks standing to challenge [] assignment' of a note.")(quoting <u>Livonia Props. Holdings, LLC</u>, 399 F. App'x at 102)(alteration in original); <u>Bridge v. Aames Capital Corp.</u>, No. 1:09 CV 2947, 2010 WL 3834059, at *3 ("Courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee."). As the court in <u>Ifert v. Miller</u>, 138 B.R. 159 (Bankr. E.D. Pa. 1992), explained:

> [W]hile the law permits the obligor to raise as a defense against the assignee the fact that the assignment contract between the assignor and the assignee was void, it does not permit the obligor to raise, as a defense, the claim that the assignment contract between the assignor and the assignee is voidable: Voidability (based

26

on fraud, for example) can be raised only "at the option of the injured party." 6A C.J.S. § 58; see also [Samuel] Williston[,] [A Treatise on the Law of Contracts] § 432 [(3d ed. 1960)] ("If, however, the objection to the validity of an assignment is not that it is void but voidable only at the option of the assignor ... the debtor has no legal defense whether or not action is brought in the assignee's name, for it cannot be assumed that the assignor is desirous of avoiding the assignment").

Id. at 166 (sixth alteration in original); see also Jarbo v. BAC Home Loan Servicing, No. 10-12632, 2010 WL 5173825, at *8-9 (E.D. Mich. Dec. 15, 2010)(rejecting borrower's claim that defective assignment destroys record chain of title and divests mortgage holder of standing to foreclose).

To be clear, the question of whether for standing purposes a non-party to a contract has a legally enforceable right therein is a matter of state law, Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005), and this Court has applied Rhode Island law in finding that Plaintiff does not have standing,[14] see Law re Standing, Section IX. B. supra at 22-24. The Court has cited cases from other jurisdictions only for the purpose of showing that the

_____

[14] Thus, the Court agrees with Plaintiff that "Michigan law ... does not apply to this case." Plaintiff's Mem. at 32. Similarly, Massachusetts law (and the law of other states) also does not apply. Therefore, the Court finds it unnecessary to discuss U.S. Bank National Ass'n v. Ibanez, Nos. 08 MISC 384283(KCL), 08 MISC 386755(KCL), 2009 WL 3297551 (Mass. Land Ct. Oct. 14, 2009), a case which Plaintiff analyzes at length, see Plaintiff's Mem. at 18-25, or the cases from other jurisdictions which Plaintiff cites. The Court notes, however, that none of these cases provide support for Plaintiff's claim of standing to challenge the validity of the assignments of her mortgage. Nor do any of them hold that a plaintiff has standing to sue based upon the legal rights and obligations contained within agreements to which that plaintiff was not a party.

principle adopted by the Rhode Island Supreme Court is well
established in the law.

## XI. Plaintiff's Arguments[15]

Plaintiff cites <u>Eisenberg v. Gallagher</u>, 79 A. 941 (R.I. 1911),
as supporting her contention that in Rhode Island she has the right
to "challenge an illegal and fraudulent assignment ...."
Plaintiff's Mem. at 16; <u>see also</u> <u>id.</u> at 15 (arguing that "[t]his
case is still good law and prohibits the Defendants from proceeding
with a foreclosure").  To the extent that Plaintiff contends that
the holding in <u>Eisenberg</u> gives her standing to challenge the
assignments or compliance with the PSA, the Court is not so
persuaded.  The 100 year old <u>Eisenberg</u> opinion is little more than
one page in length, and it does not discuss or even mention
standing.  To the extent that it implicates standing, it
illustrates that a mortgagor has standing to contest a foreclosure

_____

[15] Identification of Plaintiff's arguments is hindered by the absence
of topic headings over the course of some thirty-six pages of "Argument."
<u>See</u> Plaintiff's Mem. at 5-41.  Consideration of some arguments is also
hampered by the lack of citations which support Plaintiff's statements.
<u>See, e.g.</u>, Plaintiff's Mem. at 2 ("In particular, the Plaintiff has
offered uncontradicted evidence, provided to her by Saxon Mortgage in a
prior Bankruptcy proceeding that transferred the original promissory note
has never been indorsed by the original holder. [sic]"); <u>id.</u> at 3-5
(listing allegations in Plaintiff's largely single-spaced twelve page
Complaint); <u>id.</u> at 4 (referring to "four assignments"); <u>id.</u> at 9 ("In
Rhode Island a mortgagor can seek injunctive and declaratory relief to
allege that the party seeking to foreclose does not in fact hold the
mortgage and the note."); <u>id.</u> ("Rhode Island is a title theory state.");
<u>id.</u> at 13 (citing to an "Exhibit M-4" which does not exist in the
record); <u>id.</u> at 19 (identifying "two issues" allegedly addressed in
twenty page <u>Ibanez</u> opinion but providing no page citation); <u>id.</u> at 32
(stating that "Rhode Island Law ... clearly establishes that a Mortgage
is an estate in land"); <u>id.</u> at 40 ("In Rhode Island a mortgage is defined
as a conveyance of land.").

proceeding which is not in accordance with the conditions contained in the mortgage because he is a party to that agreement.  See Eisenberg, 79 A.2d at 942.

Here Plaintiff challenges Defendants' authority to foreclose "because she alleges that they do not hold the mortgage and they thus cannot foreclose."  Plaintiff's Mem. at 8; see also id. at 7 ("the Plaintiff alleges that the Defendant, CM REO Trust, does not hold the mortgage.").  However, the basis for this contention is the alleged fraud, defects, and improprieties in the assignments and possible non-compliance with the PSA which Plaintiff alleges in her Complaint.[16]  See Complaint ¶¶ 8-15; see also Plaintiff's Mem. at 8; id. at 16 (asserting that "the argument that Plaintiff[] cannot challenge an illegal and fraudulent assignment is without merit").  Plaintiff was not a party to, nor a third-party beneficiary of, these assignments or the PSA, and, therefore, she has no standing to challenge compliance with these instruments.

---

[16] Plaintiff clearly expresses this position in her memorandum:

The evidence which Plaintiff propounds on behalf of her claim is that the assignment[s] are invalid due to fraud and a non-existent entity being 'assigned' a mortgage.  Plaintiff did not allege that the mortgage was transferred into a trust. Rather, she alleges that the mortgage was not transferred into a trust which sought to foreclose.  She alleges that there is no named trust, which contained a PSA which ever acquired the Plaintiff's mortgage or note and alleges that Saxon Mortgage is not a loan servicer, authorized to foreclose.  Defendants can point to no PSA, which includes the Plaintiff's mortgage or note.

Plaintiff's Mem. at 8.

See Brough, 525 A.2d at 921; see also In re Wilson, Bankruptcy No. 05-17557-FJB, 2010 WL 4934936, at *4 (Bankr. D. Mass. Nov. 30, 2010)(holding that alleged violation of PSA did not affect validity of assignment); Porter v. First NLC Fin. Servs., LLC, C.A. No. PC 10-2526, 2011 R.I. Super. LEXIS 45, at *6-11 (R.I. Super. Ct. Mar. 31, 2011)(rejecting plaintiff's arguments that "a variety of technical irregularities ... result[ed] in the invalidity of the foreclosure, including the fact that MERS was not the holder of the note or mortgage deed on the date of the foreclosure sale, and that MERS and [assignee] were not acting as an agent of ... the lender; and that there is no chain of title to MERS or [assignee] or valid assignment of the Note payable to [lender] because there is no recorded power of attorney or assignment of interest from [lender]").

Plaintiff disputes that she is seeking to be a third-party beneficiary of the PSA. See Plaintiff's Mem. at 16 ("The attempt of the Defendants to suggest that the Plaintiff is seeking to be [a] third party beneficiar[y] of the PSA is also without merit."). However, the allegations of paragraphs 14 and 15 (and the relief sought by paragraph N of the prayer for relief), fairly read, challenge Defendants' compliance with the PSA or the validity of one or more of the assignments based on non-compliance with the PSA. This Court is satisfied that Plaintiff is attempting to invoke rights under agreements to which she is not a party. Thus,

Eisenberg is distinguishable.

Plaintiff also cites several Rhode Island statutes which pertain to real estate, mortgages, conveyances, and related matters. See Plaintiff's Mem. at 30-32, 40 (citing R.I. Gen. Laws §§ 19-9-2, 34-11-1, 34-11-4, 34-11-21, 34-11-22, 34-11-24, 34-26-5, 34-26-8, 34-27-1, 34-27-2, 34-27-3, 34-27-4, 34-27-6). The Court has reviewed these statutes and does not find that they provide her with standing to raise the matters pled in her Complaint.

In sum, Plaintiff's contention that CM REO is not the holder of the mortgage is based on her claims that the assignments are fraudulent and/or invalid and that the requirements of the PSA may not have not been followed or have been violated. See Plaintiff's Mem. at 7. As a non-party to the assignments and the PSA, however, Plaintiff does not have standing to challenge the assignments or compliance with the PSA. She has not been injured by any alleged fraud or wrong-doing by Defendants. Plaintiff granted the mortgagee both the right to assign the mortgage and the right to foreclose upon default. See Complaint, Ex. D at 2-3. Whether a subsequent assignee enforces the right to foreclose or the original mortgagee, Plaintiff will not be harmed so long as she was in default. Cf. Bridge, 2010 WL 3834059, at *5 ("[R]egardless of the outcome of this litigation, Plaintiff is still in default on her mortgage and is subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment

31

between Aames and Deutsche Bank[,] nor is there any likelihood that Plaintiff's request will prevent her alleged injury.").

With respect to Plaintiff's speculation in paragraphs 28-29 and 31 of the Complaint that her loan as been paid in full, factual allegations must be enough to raise a right to relief above a speculative level. _Twombly_, 550 U.S. at 555; _see also_ _Justice v. Dimon_, No. 3:10cv413, 2011 WL 2183146, at *3 (W.D.N.C. June 6, 2011)("Post _Twombly_, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in the[] complaint that 'raise a right to relief above the speculative level.'")(quoting _Twombly_, 550 U.S. at 555); _cf._ _Peñalbert-Rosa v. Fortuño-Burset_, 631 F.3d 592, 597 (1st Cir. 2011)(noting that "_Twombly_ and _Iqbal_ are relatively recent; developing a workable distinction between 'fact' and 'speculation' is still a work in progress"). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." _Twombly_, 550 U.S. at 555 n.3; _see also_ _Iqbal_, 129 S.Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Plaintiff's allegations with respect to the possible payment of her loan fail to satisfy this standard. _See_ _Iqbal_, 129 S.Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'")(citing Fed. R. Civ. P. 8(a)(2))(second alteration in original)(internal citation omitted).

Lastly, Plaintiff suggests that if the Court accepts Defendants' argument regarding standing, it "will destroy the fabric of American jurisprudence by allowing fraud to go unchecked and undefended ...." Plaintiff's Mem. at 42. Plaintiff characterizes Defendants' position as "abhorrent," id., and asserts that Plaintiff and similarly situated plaintiffs "are defending themselves from strangers to the title of their homes, who manufacture fraudulent documents to create standing for themselves," Plaintiff's Mem. at 42. Totally absent from Plaintiff's filings is any acknowledgment of the apparently undisputed fact that she has defaulted on the $220,000 loan which she used to purchase the Property and which she promised to repay. See Complaint, Ex. D at 1; cf. Porter, 2011 R.I. Super. LEXIS 45, at *8 ("Plaintiff undisputably borrowed the funds to buy her home, arranged for the home to serve as security for the Note, and subsequently defaulted by her nonpayment under the Note. No holding of this Court should invalidate the foreclosure, which Plaintiff agreed would ultimately be the consequence of nonpayment

of the mortgage loan.").

"It is fundamental that a defaulting party on a material matter is in no position to invoke affirmative relief in equity." Beagan v. Citizens Sav. Bank, 30 A.2d 105, 108 (R.I. 1943). Plaintiff is a defaulting party and is seeking such relief. See Complaint, prayer for relief; see also Arena v. City of Providence, 919 A.2d 379, 396 (R.I. 2007)(noting that "proceedings for declaratory relief have a great deal in common with equitable proceedings"); Bendick v. Cambio, 558 A.2d 941, 945 (R.I. 1989) ("There is no question that claims for injunctive relief are clearly equitable."). Plaintiff is not entitled to equitable relief. Under the circumstances, she is ill-suited to describe Defendants' position as "abhorrent."

## XII. Summary

The burden of demonstrating standing for purposes of federal jurisdiction is on Defendants because they are the parties invoking federal jurisdiction. However, Plaintiff has not disputed subject matter jurisdiction, and the Court is satisfied from its review of the Complaint and Notice of Removal that diversity jurisdiction exists. The instant Motion, which is based on Defendants' argument that Plaintiff lacks standing to assert her claims, is more properly treated as a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted rather than as a motion pursuant to Rule 12(b)(1). This Magistrate

Judge recommends that it be treated as such.

Since the basis for this Court's jurisdiction is diversity jurisdiction, Plaintiff's claims are governed by Rhode Island law. Under Rhode Island law, when confronted with a request for declaratory relief, a trial justice must first determine whether a party has standing to sue. Also under Rhode Island law, plaintiffs have no standing to challenge the validity of assignments or agreements to which they are not parties. Because Plaintiff here was not a party to the assignments or the PSA, she has no standing to challenge the validity of those assignments or compliance with the terms of the PSA. In addition Plaintiff, having defaulted, is in no position to invoke affirmative relief in equity. Accordingly, the Motion, which the Court treats as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), should be granted. I so recommend.

## XIII.  Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's

decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st

Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603,

605 (1st Cir. 1980).


<u>**/s/ David L. Martin**</u>
DAVID L. MARTIN
United States Magistrate Judge
June 23, 2011