UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ELOISA COSAJAY,<br><br>        Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CM REO TRUST, AND SAXON MORTGAGE SERVICES, INC.<br><br>        Defendants. | CIVIL ACTION NO. CA10-442S |

## DEFENDANTS' RESPONSE TO COURT'S SHOW CAUSE ORDER

### I. INTRODUCTION

In response to the First Circuit's June 14, 2013 decision, *Fryzel, et al. v. Mortgage Electronic Registration Systems, Inc. et al.*, 2013 WL 2896794 (1st Cir. (R.I.) June 14, 2013), this Court has tasked the Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS"), CM REO Trust ("Trust"), and Saxon Mortgage Services, Inc. ("Saxon"), (collectively "Defendants"), to "show cause" why the June 23, 2011 Report and Recommendation of Magistrate Judge David L. Martin dismissing Eloisa Cosajay's ("Plaintiff") complaint for lack of standing, "should not be rejected" in light of the recent First Circuit decision, *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013). This Court's implied intention to rely upon *Culhane*, which interprets, applies, and is limited to Massachusetts law, is misplaced. As a federal court sitting in diversity, this Court is obligated to apply Rhode Island state law, which clearly supports Magistrate Martin's decision, even after *Culhane*. Moreover, were the court to consider *Culhane* applicable in Rhode Island, it does not support the rejection of Magistrate Martin's Report and Recommendation. On the contrary, even applying *Culhane* to Plaintiff's

Complaint, this Court must adopt the Report and Recommendation finding that the Plaintiff lacks standing to challenge the assignments of mortgage at issue in her case because her challenges are based on defects that would make the assignments merely voidable, not void.

As noted by the First Circuit in *Fryzel*, this Court must act on Magistrate Judge Martin's recommendation "no later than the order continuing or lifting the injunction" applied by the Court globally on the *In re Mortgage Foreclosure Cases* docket. 2013 WL 2896794, at *5. Because the Plaintiff in this case asserts claims similar and/or identical to claims asserted by hundreds of other plaintiffs filing cases assigned to this Court's docket that challenge foreclosures based on facially defective mortgage assignments, should the Court adopt the Report and Recommendation on the grounds that the Plaintiff lacks standing to bring these claims, the decision would rebut any assertion by plaintiffs in other cases that they can meet their burden of proving a substantial likelihood of success on the merits of their claims required to continue this Court's injunction barring defendants from conducting foreclosures and evictions.[1]

## II. PLAINTIFF'S COMPLAINT AND PROCEDURAL BACKGROUND

The facts that form the basis of Plaintiff's causes of action are reviewed in detail in Magistrate Martin's June 23, 2011 Report and Recommendation. (Doc. No. 21, pp. 2-3.)

<u>Plaintiff's Allegations Concerning the Validity of the Assignments of her Mortgage</u>

In Count I, Plaintiff presented multiple grounds to challenge the assignment of her mortgage:

I.  Plaintiff alleged that the March 12, 2008 assignment from MERS, as nominee for Lime, to Deutsche Bank was invalid because MERS, as nominee for Lime, never held her note and does not hold notes. (Compl. ¶11.)

---

[1] Defendants further note, however, that should the Court reject the Report and Recommendation, this alone would fail to establish plaintiffs' right to a continued injunction over the defendants' actions outside the lawsuits assigned to this docket, and that plaintiffs are required to meet their burden to show they are entitled to the extraordinary relief an injunction provides in accordance with Federal Rule of Civil Procedure 65.

II. Plaintiff alleged that all three assignments of mortgage were invalid because they were not executed in time specified by the terms of a securitized trust into which Plaintiff's mortgage loan was deposited. (Compl. ¶11.)

III. Plaintiff alleged that she did not receive a notice of default pursuant to the terms of her mortgage because Rhode Island law mandates that prior to commencing a foreclosure by default letter and power of sale, a party must actually hold the note and be the owner of the mortgage. (*Id.* ¶12.)

IV. Plaintiff alleged that the persons executing her assignments of mortgage lacked authority to sign the documents and that the documents themselves were fraudulent and manufactured. (*Id.* ¶13.) Specifically, the Plaintiff claimed that the persons who executed the assignments were not employees, officers, or properly authorized agents of the entities assigning the Plaintiff's mortgage and that their signatures were fraudulent and/or not authentic. (*Id.*)

V. Plaintiff alleged that the assignments of her mortgage were invalid because the terms of a Real Estate Investment Conduit trust agreement did not authorize a REMIC securitized trust to receive mortgages or notes more than 90 days beyond the closing date, which at the latest could have been April 30, 2007. (*Id.* ¶14.)

VI. Plaintiff alleged that once her loan was included in a Pooling and Servicing Agreement ("PSA"), the only party with any capacity to assign her mortgage was the Depositor to the pool. (*Id.* ¶15.)

Plaintiff's Causes of Action

Based upon the allegations of invalid assignments, the Plaintiff asserted in Count II that the Defendants lacked standing to assign her mortgage, transfer her note, enforce the note and foreclose. (Compl. ¶17.) In Count III, Plaintiff claimed that the Defendants failed to prove possession and ownership of the note and mortgage and that the mortgage and note were transferred pursuant to law and the terms of the trust's Pooling and Servicing Agreement ("PSA") in order to foreclose. (*Id.* ¶¶18-21.) In Count IV, Plaintiff sought injunctive relief based upon allegations that the Defendants lack standing to foreclose on the Plaintiff's mortgage. (*Id.* ¶¶22-26.) In Counts V and VI, the Plaintiff alleged that her note had been paid in full in accordance with terms of the PSA so that the Defendants did not have authority to collect or enforce the note and mortgage, and/or initiate foreclosure. (*Id.* ¶¶27-31.) Finally, in Count VII, Plaintiff claimed

3

that the Defendants did not possess the Plaintiff's original endorsed note so that "[p]ursuant to Rhode Island law, the Defendant cannot foreclose due to the disconnect between the note and the mortgage." (*Id.* ¶¶32-34.)

Procedural History

Defendants filed a Motion to Dismiss Plaintiff's Complaint on November 30, 2010 on the grounds that Plaintiff lacked standing to challenge the mortgage assignments and the Defendants' compliance with the PSA governing the trust. (Doc. Nos. 5-6.) The Plaintiff objected to the Motion to Dismiss on January 14, 2011 (Doc. No. 12), and the Defendants replied on February 25, 2011. (Doc. No. 18.) Magistrate Judge Martin heard oral argument on the Defendants' Motion to Dismiss on March 14, 2011, and issued a Report and Recommendation to dismiss this case on June 23, 2011. (Doc. No. 21.)

Magistrate Judge Martin dismissed this case because the Plaintiff does not have standing to challenge the validity of the mortgage assignments or to allege that the provisions of the PSA governing the trust into which her loan was deposited may have been violated. (Report and Recommendation, Doc. No. 21, p. 25.) In reaching this decision, the Magistrate applied Rhode Island law, specifically *Brough v. Foley*, 525 A.2d 919, 921 (R.I. 1987), where the Rhode Island Supreme Court held that a plaintiff, who was a party to a real estate purchase and sale agreement, but not a party to a separately executed right of first refusal or the assignment of that right of first refusal, did not have the right to challenge the effectiveness of the assignment or the validity of the right of first refusal. Magistrate Martin recognized that, under Rhode Island law, only parties to or intended third-party beneficiaries of a contract can seek to have rights declared under a contract. (Report and Recommendation, Doc. No. 21, pp. 22-24.) Applying Rhode Island law to the allegations in this case, Magistrate Martin determined that the Plaintiff was undisputedly not

4

a party to the assignments or the PSA such that the Plaintiff lacks standing to assert legal rights based on these documents.[2] (*Id.* at p. 25)

Magistrate Martin further determined that the panoply of statutes cited by the Plaintiff do not provide her with standing to raise matters pled in the Complaint. (Report and Recommendation, Doc. No. 21, p. 31.) Finally, Magistrate Martin determined that the Plaintiff's claims in in Counts V and VI, that her loan was paid in full and that the Defendants do not have the authority to enforce the note and mortgage, fail to raise a right to relief above speculation sufficient to satisfy Fed. R. Civ. P. 8 and 12(b)(6). (*Id.* at 32.)

On July 11, 2011, the Plaintiff objected to the Report and Recommendation. (Doc. No. 22.) On September 9, 2011, the Defendants responded to the Plaintiff's objection. (Doc. No. 27.) On October 4, 2011, this Court heard oral argument on the Plaintiff's objection to the Report and Recommendation and took the parties' arguments under advisement. This Court has now ordered the Defendants "show cause why the Report and Recommendation from the Magistrate Judge (ECF No. 21) should not be rejected and the Defendants' Motion to Dismiss (ECF No. 5) denied in light of the First Circuit's recent decision in *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282 (1st Cir. 2013)." (*In re Mortgage Foreclosure Cases,* 11-mc-88-M-LDA, Doc. No. 2163.)

---

[2] Although the Magistrate referenced cases from other jurisdictions in which the court determined that a party to a contract does not have standing to challenge the contract's subsequent assignment, the Magistrate noted that whether a non-party to a contract has a legally enforceable interest is a matter of state law, and accordingly, applied Rhode Island law to find the Plaintiff does not have standing. (Report and Recommendation, p. 27.) The Magistrate's citation to cases from other jurisdictions merely demonstrates that the principle adopted by the Rhode Island Supreme Court is well-established in the law. (*Id.*) In fact, the Magistrate noted that Massachusetts law (and the law of other states) do not apply. (*Id.* at p. 27 n. 14.)

5

34355270 0915271

## III. FEDERAL LAW REQUIRES THE DISTRICT COURT APPLY RHODE ISLAND LAW TO REVIEW THE REPORT AND RECOMMENDATION

To apply *Culhane* in further review of Magistrate Martin's Report and Recommendation would disregard the Court's obligation to review and apply Rhode Island law. This Court's diversity jurisdiction requires application of Rhode Island substantive law to decide all state law claims in this action. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 28, 97 S.Ct. 2490 (1977); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938); *Culhane v. Aurora Loan Services of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013); *Barton v. Clancy,* 632 F.3d 9, 17 (2011); *Allstate Ins. Co. v. Bonn*, 709 F.Supp.2d 161, 165 (D.R.I. 2010); *Gray v. Derderian*, 400 F. Supp. 2d 415, 420 (D.R.I. 2005); *Magnum Defense, Inc. v. Harbour Group, Ltd.*, 248 F. Supp. 2d 64, 68-69 (D.R.I. 2003); *Gem Mechanical Servs., Inc. v. DV II, LLC*, 2012 WL 2312095, at *2 (D.R.I. June 18, 2012). Should this Court follow *Culhane*, or any decision that does not apply Rhode Island law, in lieu of a significant line of Rhode Island decisions that reject *Culhane's* reasoning, its refusal to adopt the Report and Recommendation on this basis would constitute error.

In *Erie v. Tompkins*, 304 U.S. at 70-71, 58 S.Ct. 817, the Supreme Court granted certiorari to review whether a United States District Court, sitting in diversity, could disregard Pennsylvania common law in favor of "general law" while adjudicating a state law claim. Reversing the lower courts' decision, the Supreme Court abandoned a doctrine, adopted in *Swift v. Tyson*, 16 Pet. 1, 10 L.Ed. 865, which permitted federal courts to use their judgment as to what rules of common law apply and to exercise independent judgment on matters of general law while adjudicating state law claims. *Id.* at 823. Justice Brandeis, writing for the Court, concluded "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." He further opined that "whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not

6

a matter of federal concern." *Id.* Finally, Justice Brandeis noted that while learned judges have fallen into the habit of advancing general federal common law as a mode of brushing aside the law of a state in conflict with their own views, the United States Constitution recognizes and preserves the autonomy and independence of the states in their legislative and judicial departments. *Id.* at 78-79. A federal court's interference with a state's legislative or judicial action is an "invasion of the authority of the state, and, to that extent, a denial of its independence." *Id.* at 79.

Federal courts have consistently affirmed and applied the *Erie* decision in reviewing state substantive law when the basis for their jurisdiction is diversity of citizenship. For example, in *Miree v. DeKalb County*, 433 U.S. at 28-29, the Supreme Court vacated judgment because the Fifth Circuit relied upon federal common law, as opposed to Georgia state law, to decide whether a third-party beneficiary to a contract had standing to sue. The plaintiffs in *Miree* argued that federal common law, as opposed to Georgia law, should apply to determine whether they had standing to sue because the United States was a party to the contract in question. *Id.* at 28. In overruling the Fifth Circuit's application of federal common law rather than Georgia state law, Justice Rehnquist, writing for the majority, concluded that "[s]ince the only basis of federal jurisdiction alleged in the petitioner's claim against respondent is diversity of citizenship, 28 U.S.C. s 1332, the case would unquestionably be governed by Georgia law…." *Id. citing Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938).

More recently, in *Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 318 (1st Cir. 2009), the First Circuit directed a federal court's review of substantive law when sitting in diversity. According to the First Circuit, as a general rule the federal court looks to the pronouncements of a state's highest court to "discern the contours of that state's law." *Id.* at 318.

7

If the state's highest court has not spoken directly to the precise question, then the federal court's "first step is to consult pertinent statutory language and analogous decisions of the state supreme court" in order to predict how the state's high court would decide the issue. *Id.* Next, decisions of the lower state courts may furnish helpful guidance in resolving an unsettled question of state law. *Id.* at 319. Finally, the federal court may consult the decisions of other courts in the circuit for similar decisions or courses. *Id.* at 320.

In this case, the basis for the federal court's jurisdiction is diversity of citizenship. (*See* Notice of Removal, Doc. No. 1, ¶5; Civil Cover Sheet, Doc. No. 1-5, pp. 1-2.) The federal court is required to apply Rhode Island law to determine whether the Plaintiff has standing to pursue her claims alleging state law causes of action. As discussed above, in reviewing the Report and Recommendation to dismiss Plaintiff's claims, this Court must first look to decisions of the Rhode Island Supreme Court for pronouncements on the issues raised in this case, followed by review of Rhode Island statutes and decisions of the Rhode Island Superior Court.

Should this Court apply *Culhane* to reject the Report and Recommendation, it would ignore Rhode Island state law in favor of Massachusetts law in violation of the *Erie* doctrine, its progeny, and a federal court's obligation to review state law while sitting in diversity. In *Culhane*, the First Circuit unquestionably relied upon and applied Massachusetts law. *See Culhane*, 708 F.3d at 290 ("we hold only that Massachusetts mortgagors, under circumstances comparable to those in this case, have standing to challenge a mortgage assignment."), and 291 ("[t]he short of it is that, in Massachusetts, a mortgagor has a legally cognizable right to challenge a foreclosing entity's status qua mortgagee."). To find that Culhane had standing to sue, the First Circuit relied upon the Massachusetts Supreme Judicial Court's decisions, such as *Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 969 N.E.2d 1118 (2012), *Cumis Ins. Soc'y, Inc.*

*v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 918 N.E.2d 36 (2009), *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011), and *Rogers v. Barnes*, 169 Mass. 179, 47 N.E. 602 (1897). In addition, the First Circuit relied on the statutory power of sale under Massachusetts General Laws ch. 183, §21 and ch. 244, §14. The *Culhane* decision does not present any interpretation or application of Rhode Island law. Based this Court's diversity jurisdiction over this case, this Court may not apply *Culhane* without first considering Rhode Island state common law and consulting the decisions of the Rhode Island courts.

### IV. RHODE ISLAND LAW SUPPORTS ADOPTION OF THE REPORT AND RECOMMENDATION AND DISMISSAL OF THIS CASE

Rhode Island law provides that a plaintiff who is not a party to or intended third party beneficiary of a contract lacks standing to bring claims seeking to invalidate the contract, and its Supreme Court has issued decisions that reject Plaintiff's claims and theories of recovery. The Rhode Island Supreme Court has consistently held that only parties to a contract may seek to have rights declared under that agreement. *DePetrillo v. Belo Holdings*, 45 A.3d 485, 491-92 (R.I. 2012); *Brough v. Foley*, 525 A.2d at 922. Specifically, in *Brough*, 525 A.2d at 922, the Rhode Island Supreme Court concluded that a stranger to the assignment of a right of first refusal lacked standing to litigate the validity of rights under that agreement. Furthermore, in *Bucci v. Lehman Brothers Bank, FSB, et al.*, 2013 WL 1498655 (R.I. April 12, 2013), the Rhode Island Supreme Court held that MERS is contractually and statutorily authorized to foreclose pursuant to the statutory power of sale under Rhode Island law. The Rhode Island Supreme Court further held in *Bucci*, 2013 WL 1498655 at *12-*13, that a mortgagee does not have to own the borrower's note in order to foreclose under Rhode Island law. Based on Rhode Island common law, this Court should adopt the Report and Recommendation and dismiss the Plaintiff's Complaint.

Not only do the Rhode Island Supreme Court's decisions support dismissal of Plaintiff's Complaint, Rhode Island statutes and Superior Court decisions do as well. Rhode Island statutes permit the inclusion of a statutory power of sale in a mortgage agreement and provide the Defendants with the statutory right to foreclose notwithstanding Plaintiff's efforts to convince this Court to enforce and require judicial foreclosure in this case. R.I. Gen. Laws 1956 §§34-11-21 and 22. In *Bucci*, 2013 WL 1498655 at \*11-\*12, the Rhode Island Supreme Court concluded that MERS's designation as grantee of the mortgage and nominee for the lender and its assigns and successors did not violate Rhode Island's statutory power of sale. Moreover, our Rhode Island Superior Court has rejected borrowers' claims that MERS, and any assignee of MERS, does not hold the statutory power of sale and lacks the authority to foreclose under Rhode Island law. *Payette v. Mort. Elec. Registration Sys., Inc.*, No. PC 2009-5875, 2011 WL 3794701 (R.I. Super. Aug. 22, 2011) (Rubine, J.); *Kriegel v. Mortg. Elec. Registration Sys., Inc.*, No. PC 2010-7099, 2011 WL 4947398 (R.I. Super. October 13, 2011) (Rubine. J.); *Porter v. First NLC Fin. Serv.*, No. PC 2010-2526, 2011 WL 1252146 (R.I. Super. March 31, 2011) (Rubine, J.); *Rutter v. Mortg. Elec. Registration Sys., Inc.*, Nos. PC 2010-4756, PD 2010-4418, 2012 WL 894012 (R.I Super. March 12, 2012) (Silverstein, J.).

Even after the First Circuit issued *Culhane*, our Superior Courts continue to find that a plaintiff/mortgagor lacks standing to challenge the validity of a mortgage assignment under Rhode Island law. *Seng v. Mortg. Elec. Registration Sys., Inc.*, No. PC 2011-2784, 2013 1490360, \*4 (R.I. Super. April 3, 2013); *Van Hoecke v. First Franklin Financial Corp., et al.*, No. KC 2009-0743, 2013 WL 1088825, \*4 (R.I. Super. March 7, 2013) (Rubine, J.). In these more recent decisions, the Superior Court has recognized the *Culhane* decision and its applicability under Massachusetts law. *Id.* At the same time, the Superior Court has concluded

10

that it is required to apply Rhode Island common law, and has found that Rhode Island law prohibits a non-party from challenging the assignment of a contract. *Id.* The Superior Court interprets the First Circuit's opinion in *Cuhane* that, under Massachusetts law, a "mortgagor has standing to challenge a mortgage assignment on the basis that the assignor had no interest to assign" but does not have "standing to assert defects in the execution of a particular mortgage assignment." *Id.* Nevertheless, the Superior Court has not applied *Culhane* prudential standing under Rhode Island law and continues to dismiss cases for lack of standing even after the First Circuit issued the *Culhane* decision.

In this case, the Plaintiff alleges defects in the assignments of her mortgage. (Plaintiffs' Complaint, Doc. No. 1-1, ¶13.) Specifically, she claims that the signatories of the assignments did not have authority to sign. (*Id.*) Rhode Island law does not provide the Plaintiff with any legal basis to challenge the alleged defects in the execution of the assignment because she was not party to the agreement. *DePetrillo v. Belo*, 45 A.3d at 491-92; *Brough v. Foley*, 525 A.2d at 922; *Seng v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1490360, *4; *Porter v. First NLC Fin. Serv.*, 2011 WL 1252146; *Rutter v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 894012. In addition, the Plaintiff challenges the assignment of her mortgage on the grounds that the assignments did not conform to the terms of the PSA. (Complaint, Doc. No. 1-1, ¶¶11, 14 and 15.) It is, however, undisputed that the Plaintiff is not a party to the Pooling & Servicing Agreement so that she does not have standing to assert legal rights based upon this agreement. *Brough v. Foley*, 525 A.2d at 921-22.

Plaintiff also challenges MERS's authority to foreclose based upon allegations that MERS never held her note, in attempt to invalidate the MERS assignment in this case. (Plaintiff's Complaint, Doc. No. 1-1, ¶¶11-13.) The Rhode Island Supreme Court has held that

MERS has the authority to foreclose under Rhode Island law, and that possession of a borrower's note is not required to initiate foreclosure under the statutory power of sale. *Bucci v. Lehman Bros.*, 2013 WL 1498655 at \*\*9-14. Finally, the Plaintiff alleges that only a party who possesses her note and owns her mortgage can foreclose under Rhode Island law. (Compl. Doc. No. 1-1, ¶¶32-34.) The Rhode Island Supreme Court, in *Bucci*, 2013 WL 1498655 at \*\*12-13, has rejected this argument definitively.

Reviewing the allegations of the Plaintiff's Complaint under Rhode Island law demonstrates that the Plaintiff lacks standing to bring the claims and has failed to assert any facts or causes of action that would entitle her to relief in this case. Indeed, Rhode Island's Supreme and Superior Courts have dispatched with all of the allegations and arguments Plaintiff asserts in her complaint. These decisions compel this Court to adopt the Report and Recommendation and dismiss this case based on Plaintiff's lack of standing to assert the claims pled.

### V. THE *CULHANE* DECISION SUPPORTS ADOPTION OF THE REPORT AND RECOMMENDATION AND DISMISSAL OF THIS CASE

Even if this Court found it was unable to reach a decision on the Report and Recommendation based upon Rhode Island law, and looked to the First Circuit's decision in *Culhane* for guidance, *Culhane* does not support the Plaintiff's causes of action. Indeed, *Culhane* supports dismissal of this case.

In *Culhane*, 708 F.3d at 289, the First Circuit established a narrow category of prudential standing entitling Massachusetts mortgagors to challenge assignments of mortgage as invalid, ineffective or void. The First Circuit concluded that Massachusetts mortgagors would have standing to challenge a "mortgage assignment…if say, the assignor had nothing to assign or had no authority to make the assignment to a particular assignee." *Id.* at 291. However, the First Circuit also concluded that "a mortgagor does not have standing to challenge the shortcomings in

an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." *Id.* Although the First Circuit permitted the plaintiff a prudential category of standing that is unique to Massachusetts law to challenge MERS's authority to foreclose, the First Circuit ultimately endorsed MERS's ability to assign the plaintiff's mortgage and dismissed the case. *Id.*

After the First Circuit decided *Culhane*, the United States District Court (Massachusetts) further clarified the applicability of this holding as creating a Massachusetts category of prudential standing limited to challenges to mortgage assignments based on a lack of ownership of the mortgage by the assignee. *Mills v. U.S. Bank Nat'l Ass'n*, 2013 WL 1389751 (D. Mass. April 3, 2013); *Ross v. Deutsche Bank National Trust Co.*, 2013 WL 1225621 (D. Mass. March 27, 2013); *Contreras v. Bank of New York Mellon*, 2013 WL 1282366 (D. Mass. March 27, 2013); *Koufos v. U.S. Bank, N.A.*, 2013 WL 1189502 (D. Mass. March 21, 2013); *Jepson v. HSBC Bank USA, N.A.*, 2013 WL 639184 (D. Mass. February 20, 2013). Applying the reasoning of *Culhane* in *Koufos*, 2013 WL 1189502 at *4, and *Ross*, 2013 WL 1225621 at *5, the United States District Court of Massachusetts permitted plaintiffs to challenge the assignments of their mortgage based upon allegations that their loan originator (in both cases New Century Financial) filed for bankruptcy prior to assigning their mortgage and no longer could have owned their mortgage as a result of the reorganization plan.

While Massachusetts federal courts have acknowledged the limited prudential standing of *Culhane*, the decision has not served as a basis to establish standing for any other challenge to the assignment of a plaintiff's mortgage. Indeed, *Culhane* has served as a basis for dismissal of cases in which borrowers challenge the facial validity of the assignments of mortgage including a signatory's authority to sign, compliance of the assignments to the pooling and servicing

34355270 0915271

agreements governing trusts, and MERS's authority to foreclose. In *Koufos*, 2013 WL 1189502 at *4-*5, the federal court also rejected the plaintiff's claim that the transfer of the mortgage instruments violated the trust's governing documents as outside the scope of standing granted in *Culhane*. Judge Casper concluded that "the alleged problem of a trust not complying with the terms of its Trust Governing Documents is an ancillary consideration that does not void the transfer." *Id* at *5. Judge Sorokin reached the same conclusion as Judge Casper in *Jepson*, 2013 WL 639184 at *5, finding that "both state and federal courts in Massachusetts have uniformly held that mortgagors may not attack an assignment based on alleged failures to comply with PSAs, which are contracts to which the borrowers are not a party."

In *Contreras*, 2013 WL 1282366 at *2, the federal court dismissed the plaintiff's claim that the individual executing the mortgage assignments did not have authority to assign. Acknowledging the *Culhane* decision, Judge Zobel concluded that plaintiff's allegation that the individual executing on behalf of MERS while being employed by Bank of New York's counsel "in no way vitiates the assignment." *Id.* In *Jepson*, 2013 WL 639184 at *4-*5, the federal court likewise dismissed the plaintiff's claim that the individuals who signed their assignments were not authorized to make assignments on behalf of MERS. Judge Sorokin concluded that this argument had been presented to and soundly rejected both by the First Circuit, citing to *Culhane*, and by the Massachusetts federal district courts. *Id.* at *5.

The Rhode Island Superior Court has also interpreted the First Circuit's decision in *Culhane* as an endorsement, under Massachusetts law, of a mortgagor's standing to challenge a mortgage assignment only on the basis that the assignor had no interest to assign. *Seng v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1490360 at *4; *Van Hoecke v. First Franklin Financial Corp., et al.*, 2013 WL 1088825 at *4. However, the Superior Court in *Seng* and *Van Hoecke*

14

determined, similar to the Massachusetts federal courts, that *Culhane* does not provide standing for borrowers to assert defects in the execution of a particular mortgage assignment. *Id.* Neither the Rhode Island Superior nor Supreme Courts have granted standing to any borrower to challenge an assignment of mortgage before or after the *Culhane* decision.

Moreover, even if this Court was inclined to follow *Culhane*, the Plaintiff's claim does not present any facts to support application of the First Circuit's decision with regard to prudential standing in *Culhane*. The Plaintiff has not alleged facts sufficient to render the assignments of her mortgage void, and instead she claims the persons executing the assignments lacked authority to sign and that the documents were "fraudulent" and "manufactured." (Compl. Doc. 1-1, ¶13.) She alleges, for example, that signatures of the individuals executing the assignments of her mortgage were not authentic. (*Id.*) She also alleges that the particular executing person for the assigning entity was not authorized to assign. (*Id.*) These allegations are directed at facial challenges to the validity of the assignment agreement or defects in a particular assignment. These allegations, if proven true, would render the assignment voidable but would not void the assignment or otherwise effect the passing of title. *Culhane*, 708 F.3d at 291. As discussed in *Contreras*, 2013 WL 1282366 at *2, a plaintiff's challenge to the authority of the signatory to an assignment does not vitiate the assignment and cannot provide a plaintiff with standing to sue. In *Jepson*, 2013 WL 639184 at *5, the court dismissed a plaintiff's challenge to the validity of assignments based upon allegations that the executing individual did not have authority to sign on behalf of MERS. *Culhane* does not provide the Plaintiff with any legal basis to challenge the assignments of her mortgage based upon allegations that the assignment signatories lacked authority to sign.

15

34355270 0915271

The Plaintiff also claims that her mortgage assignments are invalid because the assignments and transfers did not conform to the terms of the PSA governing the trust into which the Plaintiff's loan may have been deposited. (Compl. ¶¶11, 14-15.) The Plaintiff's argument cannot withstand dismissal under Rhode Island law because the Plaintiff has no right to enforce the terms of the PSA. As discussed by Magistrate Judge Martin in the Report and Recommendation, it is undisputed that the Plaintiff is not a party to the PSA. (Doc. No. 21, p. 25.) Because the Plaintiff is not a party to the PSA, she has no standing to assert legal rights based upon this document. *Brough v. Foley*, 525 A.2d at 921-22. Moreover, the Plaintiff's argument cannot withstand dismissal under Massachusetts law following *Culhane* because this decision and all later Massachusetts courts applying it have concluded that a mortgagor does not have standing to challenge the foreclosure due to alleged non-compliance with the provisions and rules governing a foreclosing trust. *Koufos*, 2013 WL 1189502 at *5; *Jepson*, 2013 WL 639184 at *5. The Plaintiff has no standing to assert the terms of the PSA, or seek to enforce the PSA, as a vehicle to challenge the authority of the assignors of mortgage. The *Culhane* decision does not provide any refuge for this argument.

Finally, even though the First Circuit in *Culhane*, 708 F.3d at 291-94, established a narrow category of prudential standing entitling Massachusetts mortgagors to challenge mortgage assignments as void, it ultimately rejected the plaintiff's challenge to MERS's authority to assign a mortgage under Massachusetts law and dismissed the case. The plaintiff argued that MERS did not legitimately hold the mortgage because it did not hold the note and thus had no beneficial interest to assign Aurora, the foreclosing entity. *Id.* at 291. The First Circuit dismissed plaintiff's challenge to MERS's authority to foreclose for several reasons: (1) "there is no reason to doubt the legitimacy of the common arrangement whereby MERS holds bare legal

16

title as mortgagee of record and the noteholder alone enjoys the beneficial interest of the loan."; (2) "[i]n Massachusetts, the note and the mortgage need not be held by the same entity."; (3) "[t]he mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage"; and (4) "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-note holder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law." *Id.* at 291-93.

Following the First Circuit's decision in *Culhane*, the Massachusetts federal courts have dismissed complaints in which plaintiffs challenge MERS's authority to foreclose with regularity. *See, e.g., Mills v. U.S. Bank Nat'l Ass'n*, 2013 WL 1389751 at *3; *Jepson v. HSBC Bank USA, N.A.*, 2013 WL 639184 at *4-*5. Significantly, in each of these decisions, the federal courts, post *Culhane* and citing to the First Circuit's decision, have decided that complaints challenging MERS's authority to foreclose cannot withstand a Rule 12 motion to dismiss under Massachusetts law. *Mills*, 2013 WL 1389751 at *3; *Jepson*, 2013 WL 639184 at *4-*5. Indeed, the Rhode Island Supreme Court has found that the First Circuit's conclusion in favor of MERS's authority to hold mortgages and foreclose them resides comfortably within Rhode Island law. *Bucci v. Lehman Bros.*, 2013 WL 1498655 *15. The *Culhane* decision presented the Rhode Island Supreme Court with additional legal grounds beyond application of Rhode Island law to reject Bucci's challenge to MERS's authority to foreclose.

Here, the Plaintiff challenges MERS's authority to assign her mortgage as nominee for Lime Financial services on the basis that MERS never held the note, and does not hold the notes. (Compl. ¶11, Doc. No. 1-1.) According to *Culhane*, as well as several decisions issued in this jurisdiction and in the Massachusetts federal courts, the Plaintiff has no legal basis to challenge

17

34355270 0915271

MERS's authority to foreclose and no basis to validly allege that the foreclosing entity must possess the note. *Culhane* instructs that this claim fails as a matter of law under Massachusetts law such that this Court is armed with a decision from another court in this circuit that instructs dismissal of this case.

In sum, the *Culhane* decision does not provide any basis for this Court to reject the Report and Recommendation issued in this case. There are no allegations in the Plaintiff's Complaint that demonstrate the narrow and limited challenge to assignments that the First Circuit determined provided standing to sue under Massachusetts law. In fact, a review of *Culhane*, and subsequent decisions interpreting its holding, demonstrates conclusively that the Plaintiff has no standing to sue in this case, and that the Court should adopt the Report and Recommendation.

As noted by the First Circuit in *Fryzel*, this Court must act on Magistrate Judge Martin's recommendation "no later than the order continuing or lifting the injunction" applied by the Court globally on the *In re Mortgage Foreclosure Cases* docket. 2013 WL 2896794 *5. Because the Plaintiff in this case asserts claims similar and/or identical to claims asserted by hundreds of other plaintiffs filing cases assigned to this Court's docket that challenge foreclosures based on facially defective mortgage assignments, should the Court adopt the Report and Recommendation on the grounds that the Plaintiff lacks standing to bring these claims, the decision would rebut any assertion by plaintiffs in other cases that they can meet their burden of proving a substantial likelihood of success on the merits of their claims required to continue this Court's injunction barring defendants from conducting foreclosures and evictions.

## VI. CONCLUSION

There is no basis in Rhode Island law for this Court to reject Magistrate Judge Martin's Report and Recommendation based upon *Culhane* or otherwise. Adopting *Culhane* in order to

18

reject the Report and Recommendation ignores and disregards Rhode Island state law, which this Court must apply in order to decide whether the Plaintiff in this case has stated a claim for which relief can be granted. Applying *Culhane* instead of Rhode Island state law repudiates the obligations of a federal court sitting in diversity under *Erie v. Tompkins* and its progeny, which require state substantive law to be applied. If this Court applies Rhode Island state law in accordance with its charge under diversity jurisdiction, there is no dispute that Plaintiff has failed to state a claim and that the Report and Recommendation must be adopted. Moreover, even if this Court deems it appropriate to consult *Culhane* in its review of this matter, Plaintiff has failed to state a claim or establish she has standing to challenge the mortgage assignments based on the narrow exception created by *Culhane* under Massachusetts law. The Report and Recommendation must be adopted.

Respectfully submitted,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CM REO TRUST, AND SAXON MORTGAGE SERVICES, INC.

By Their Attorneys,

*/s/ Maura K. McKelvey*

Maura K. McKelvey, No. 6770
Samuel S. Bodurtha, No. 7075
HINSHAW & CULBERTSON LLP
321 South Main Street, Suite 301
Providence, RI 02903
401-751-0842
401-751-0072 (facsimile)

Dated: June 27, 2013

## REQUEST FOR HEARING

In accordance with L.R. D.R.I. 7(e), the Defendants request further oral argument on the Plaintiff's objection to the Report and Recommendation and this Court's intention to rely on *Culhane* in order to deny the motion to dismiss on **July 10, 2013 at 2:00 pm** or as soon thereafter as they may be heard. The Defendants estimate that they will require 30 minutes of oral argument.

*/s/ Maura K. McKelvey*

## CERTIFICATE OF SERVICE

I, Maura K. McKelvey, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 27, 2013.

*/s/ Maura K. McKelvey*
Maura K. McKelvey