UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELOISA COSAJAY,

    Plaintiff,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ET AL.

    Defendants.

C. A. No. 10-442-M

## MEMORANDUM & ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This matter is before the Court on Plaintiff Eloisa Cosajay's objection to a Report and Recommendation (R&R) issued by Magistrate Judge Martin on June 23, 2011, in which he recommended that her mortgage foreclosure case be dismissed for lack of standing because she was not a party to the assignment documents that her lawsuit challenged. Since that R&R was issued, the First Circuit has ruled in two cases, *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 289-90 (1st Cir. 2013) and *Woods v. Wells Fargo Bank, N.A.*, No. 12-1942, 2013 WL 5543637, at * 3 (1st Cir. Oct. 9, 2013), that a homeowner's standing to sue is not foreclosed by virtue of their lack of privity to the assignment documents. Those decisions dictate that this Court REJECT the R&R recommending dismissal based on lack of privity. The Court DENIES Defendants' Motion to Dismiss (ECF No. 5) and finds that Ms. Cosajay has standing to bring this lawsuit against Defendants.

I.     FACTS

On April 24, 2007, Ms. Cosajay obtained a loan from Lime Financial Services, Ltd. ("Lime"), for $220,000 in exchange for a promissory note. (ECF No. 1-1 at ¶ 9.) The note was secured by a mortgage that Ms. Cosajay executed in favor of Lime, as lender, and MERS, as Lime's nominee, successor and assign, and as the mortgagee under the mortgage agreement. (*Id.*) The mortgage's security consisted of property owned by Ms. Cosajay located at 220 Sterling Avenue, Providence, Rhode Island (the "Property"). (*Id.* at ¶ 8.) Ms. Cosajay's promissory note and mortgage were the subject of three assignments. (*Id.* at ¶ 11.) On March 12, 2008, MERS, as nominee for Lime, assigned the mortgage to Deutsche Bank Trust Company Americas, as Trustee and Custodian for IXIS Real Estate Capital, Inc. ("Deutsche Bank") (the "First Assignment"). (*Id.*) On September 4, 2008, Deutsche Bank assigned the mortgage to Saxon Mortgage Services, Inc. (the "Second Assignment"). (*Id.*) On March 5, 2009, Saxon assigned the mortgage to CM REO Trust (the "Third Assignment"). (*Id.*) Saxon, on behalf of CM REO, initiated foreclosure proceedings in October 2010. (*Id.* at ¶ 10.)

Ms. Cosajay filed this action to enjoin the foreclosure proceedings by alleging that the assignments of her mortgage are invalid. (*Id.* at ¶¶ 8-15.) She challenges the validity of the assignments on multiple grounds. She alleges that the documents executing the assignments were "fraudulent and manufactured ...." (*Id.* ¶ 13.) In support of this allegation, Ms. Cosajay avers that the persons executing the assignments were not employees, officers, or properly authorized agents of the entities for whom they purported to act and that the signatures on the assignments are fraudulent and/or not authentic. (*Id.*) Ms. Cosajay also alleges that MERS, as Lime's nominee, did not have the authority to assign her mortgage on March 12, 2008, the date of the First Assignment. (*See id.* ¶ 11.) As support for this contention, Ms. Cosajay posits that:

"If this loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid." (*Id.*) Ms. Cosajay asserts that "[a]ny assignment which would have been made on or [after] March 12, 2008[,] was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company Americas as Trustee and Custodian for IXIS Real Estate Capital Inc." (*Id.*) Ms. Cosajay further asserts that the Deutsche Bank trust does not exist but that the last IXIS Trust, Natixis Real Estate Capital Trust 2007-HE2, closed on April 30, 2007, and that, therefore, no assignment to the Natixis trust was possible on March 12, 2008. (*Id.*) As a result, according to Ms. Cosajay, the First Assignment was to a non-existent entity and any subsequent assignments were also void. (*Id.*)

Ms. Cosajay seeks a declaration that the mortgage assignment was invalid, that Defendants did not hold her mortgage and promissory note, and that Defendants lacked standing to foreclose on the mortgage or enforce the note. Defendants moved to dismiss the complaint, alleging that Ms. Cosajay lacked standing to challenge any of the above. After review of the memorandum and hearing argument, Magistrate Judge Martin recommended that the case be dismissed on that ground, finding that Ms. Cosajay lacked standing because she was not a party to the assignments that she challenges in her suit. Ms. Cosajay appeals that R&R to this Court and Defendants object, contending that the Court should accept the R&R.[1] In considering this

---

[1] The Magistrate Judge issued R&Rs rejecting standing in two cases - Ms. Cosajay's case as well as in Mr. and Mrs. Fryzel's case. *See Fryzel v. Mort. Elec. Reg. Sys., Inc.* C.A. No. 10-352. Ms. Cosajay and the Fryzels appealed those R&Rs to this Court, who stayed all of the mortgage foreclosure cases on its docket and imposed a mediation program under the direction of a Special Master. Certain Defendants appealed to the First Circuit and in the context of its decision reviewing that interlocutory appeal of this Court's "stay in the nature of a preliminary injunction" and mediation program in *Fryzel*, the First Circuit directed this Court to act on the R&R. *Fryzel v. Mort. Elec. Reg. Sys., Inc.*, 719 F.3d 40, 46 (1st Cir. 2013). This Memorandum

3

appeal, the Court reviewed the record, heard argument, received additional briefing, heard supplemental arguments (*see* Misc. No. 11-88-M, ECF No. 2224 at 49-76), and had the benefit of recent precedent from the First Circuit Court of Appeals, post-dating the Magistrate Judge's R&R.

## II.  ANALYSIS

The Court must conduct a *de novo* review of a magistrate judge's decision on a dispositive motion. *See* Fed. R. Civ. Pro. 72(b). During this review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence' or recommit the matter to the magistrate judge with instructions." *Id.*

The question before the Court in this case is a singular one – does Ms. Cosajay have standing to bring her complaint against these Defendants? The Magistrate Judge answered this question in the negative, finding that because Ms. Cosajay was not a party to the assignment agreement, she "does not have standing to assert legal rights based on [those] documents." (ECF No. 21 at 25 (citing *Brough v. Foley*, 525 A.2d 919, 921-22 (R.I. 1987)).) Essentially, the Magistrate Judge found that Ms. Cosajay lacked privity to the assignment, where privity to a contract was deemed indispensable to a standing determination. The Court reviews this aspect of his decision in this appeal.

### A.  STANDING

A standing "inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal citations omitted.); *see Osediacz v. Cranston*, 414 F.3d 136, 139

---

and Order addresses Ms. Cosajay's appeal because the Fryzel case was ultimately dismissed for reasons unrelated to the First Circuit decision.

(1st Cir. 2005) ("[S]tanding to sue is an indispensable component of federal court jurisdiction."). "The constitutional core of standing requires that a plaintiff make a tripartite showing: she must demonstrate that she has suffered an injury in fact, that her injury is fairly traceable to the disputed conduct, and that the relief sought promises to redress the injury sustained." *Osediacz*, 414 F.3d at 139 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In addition, prudential standing "ordinarily require[s] a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party)[.]" *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006).

In the context of mortgage foreclosure cases, there are two recent cases that focus on the legality and effect of MERS and a homeowner's standing to challenge a foreclosure. In February 2013, as a matter of first impression, the First Circuit decided *Culhane v. Aurora Loan Services of Nebraska* and, even more recently and as a complimentary follow-up decision, *Woods v. Wells Fargo Bank, N.A.* Both of these cases considered the constitutional and prudential dimensions of standing in a mortgage foreclosure case, are binding precedent on this Court, and support its decision to reject the recommendation of dismissal based purely on lack of privity.

The plaintiff in *Culhane*, much like Ms. Cosajay, focused her lawsuit on the validity of the assignment of her mortgage. When the First Circuit considered the "tripartite" showing of constitutional standing in that fact pattern, it handily found that "the foreclosure of the plaintiff's house is unquestionably a concrete and particularized injury to her[,]" "there is a direct causal connection between the challenged action [the assignment] and the identified harm[,]" and "a determination that [defendant] lacked the authority to foreclose would set the stage for redressing plaintiff's claimed injury." *Culhane*, 708 F.3d at 289-90. The same can be said for Ms. Cosajay's case – Defendants initiated foreclosure proceedings on her home (ECF No. 1-1 at

¶¶ 12, F), there is the same connection between the assignment she challenges in her lawsuit and the foreclosure (*id.* at ¶¶ 11, 17), and if the Court determines that Defendants did not have the authority to foreclose, Ms. Cosajay's injuries can be redressed through the equitable relief and compensatory damages she seeks. (ECF No. 1-1 at ¶ Q.) Therefore, the Court finds that she has met the constitutional dimension of standing.

However, in the R&R currently before the Court, the Magistrate Judge focused mainly on the prudential aspect of standing, "which overlays its constitutional dimensions." *Culhane*, 708 F.3d at 290. In considering whether a plaintiff premises her claims on her own legal rights justifying her standing to sue, *Culhane* considered whether she had to be a party or a third party beneficiary of the assignment as the Magistrate Judge in Ms. Cosajay's case opined. The First Circuit rejected that concept, holding that "a nonparty mortgagor ... has standing to raise certain challenges to the assignment of her mortgage." *Id.* at 289. While noting that its holding was "narrow," the First Circuit decided that privity of contract is not required in order to have standing to bring a lawsuit on a mortgage assignment action. *Id.* at 291.

Just this month, the First Circuit had another opportunity to consider standing in *Woods v. Wells Fargo Bank, N.A.*, a mortgage foreclosure case where the district court below found that the plaintiff did not have standing based on a lack of privity. Discussing its previous holding in *Culhane*, the First Circuit rejected the district court's reasoning and reiterated that "standing may be appropriate even where a mortgagor is not party to, nor beneficiary of, the challenged assignments." *Id.*, No. 12-1942, 2013 WL 5543637, at * 3 (citing *Culhane*, 708 F.3d at 289).

Defendants rely on *Brough v. Foley* to argue that a party does not have standing to assert rights under a contract to which it is not a party. 525 A.2d at 922 ("The plaintiffs were, in substance, strangers to those transactions and were given no rights under the contract to

6

challenge the transactions.") The First Circuit in *Culhane* recognized that "a nonparty who does not benefit from a contract generally lacks standing to assert rights under that contract." *Culhane*, 708 F.3d at 290 (citing *Almond v. Capital Props., Inc.*, 212 F.3d 20, 24 & n. 4 (1st Cir. 2000)). Yet, ultimately, the First Circuit stepped away from the generality in mortgage foreclosure cases because of the "unusual position" in which a mortgagor finds him or herself. *Culhane*, 708 F.3d at 290. The basis for diverging from the general legal concept that a nonparty lacks standing to assert rights under a contract was twofold – under Massachusetts law, a "mortgagor has a legally cognizable right under state law to ensure that any attempted foreclosure on her home is conducted lawfully" and "where (as here) a mortgage contains a power of sale, Massachusetts law permits foreclosure without prior judicial authorization." *Id.*

Now, this narrow holding was made under Massachusetts law, not the Rhode Island statutory and common law that governs the Court's decision here.[2] While *Culhane* and *Woods* did not specifically address a plaintiff's standing under Rhode Island law,[3] the Court finds that Rhode Island law provides that same dual basis for deviating from the general contract rule.

---

[2] Because the Court sits in diversity on this case, Rhode Island substantive law applies. *See Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011). When asked at the hearing on this appeal to name a relevant difference between Massachusetts and Rhode Island mortgage foreclosure laws, Defendants were not able to identify any. (Misc No. 11-88-M, ECF No. 2224 at 54-55.)

[3] Defendants argued that the existence and applicability of the Rhode Island power of sale statute, the very type of statute the First Circuit interpreted in *Culhane* as providing a legal right to a lawfully conducted foreclosure, should not change the Court's analysis, arguing instead for the absolute applicability of Rhode Island common law, which stands for the basic principle that one must be a party to a contract in order to challenge any of its terms. *Brough*, 525 A.2d 919. Defendants conceded that the First Circuit relied on Massachusetts' statutory scheme in considering a plaintiff's standing, but suggested that the reason the First Circuit did not analyze Massachusetts Supreme Judicial Court case law was because "it doesn't exist[.]" (Misc. No. 11-88-M, ECF No. 2224 at 57.) The more likely situation is that the First Circuit recognized that these twenty-first century mortgage foreclosure cases are not round pegs that fit into the round holes of basic contract law. The First Circuit noted the "unusual position" a mortgagor finds herself in partially because of the statutory power of sale statute and went on to find, however narrowly, that certain mortgagors do have standing to bring their claims.

First, the First Circuit cited to Mass. Gen. Laws ch. 183, § 21, which is the "Statutory Power of Sale in Mortgage" section. That section is of the same vein[4] as Rhode Island Gen. Laws § 34-11-22, also called "Statutory power of sale in mortgage," which provides a Rhode Island mortgagor with the right to ensure that any foreclosure is done appropriately. *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1085 (R.I. 2013) (finding that § 34-11-22 "was enacted for the purpose of establishing a uniform power of sale provision that could be referred to with ease, if the parties so desired"). In line with the second basis the *Culhane* court lists, Rhode Island law also allows foreclosures to take place without prior judicial authorization where a power of sale clause exists in a mortgage. *Id.* Therefore, the Court finds that Rhode Island law provides that same protection to mortgagors in the same situations in which the First Circuit found the *Culhane* and *Woods* plaintiffs under Massachusetts law.[5]

The First Circuit in *Culhane* "further circumscribed" its holding, finding standing when a plaintiff's challenge was limited to only "invalid, ineffective, or void" assignments, such as situations where "the assignor had nothing to assign or had no authority to make an assignment to a particular assignee." *Culhane*, 708 F.3d at 291. Conversely, the First Circuit held that "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." *Id.* The First Circuit in *Woods* provided further examples of this "void" versus "voidable" distinction:

---

[4] Defendants conceded at oral argument that Rhode Island's power of sale statute was "similar" to that of Massachusetts. (Misc. No. 11-88-M, ECF No. 2224 at 55.)

[5] The Rhode Island Supreme Court's decision in *Bucci v. Lehman Brothers Bank*, did however analyze the First Circuit's *Culhane* decision holding that the MERS structure was appropriate under Massachusetts mortgage law and found that that holding "reside[d] comfortably within the law of our state as well." *Id.*, 68 A.3d 1069, 1088 (R.I. 2013). While not an exact fit, the Court is comfortable with the Rhode Island Supreme Court's acceptance of the *Culhane* decision vis-à-vis MERS, along with its own comparison of Massachusetts and Rhode Island power of sale statutes, to determine that the *Culhane* analysis and outcome would be the same under Rhode Island law.

> [C]laims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing. In contrast, standing exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands. In this latter case, the challenge is to the "foreclosing entity's status qua mortgagee."

*Woods*, No. 12-1942, 2013 WL 5543637, at *3 (internal citations omitted).

Now that the constitutional standing issue has been resolved and the prudential standing parameters have been laid out, the Court must consider those parameters in the light of the facts Ms. Cosajay has pled, and thus turns to the factual allegations in her complaint to determine whether her claims are based on a "void" assignment or on a "voidable" assignment.

Ms. Cosajay contends in her complaint that MERS as nominee for Lime could not have made the First Assignment to Deutsche Bank as Trustee on March 12, 2008 because MERS no longer held the mortgage at that time. (ECF No. 1-1 at ¶ 11.) Because Ms. Cosajay challenges her foreclosure on the ground that it was void due to an invalid assignment to a non-existent entity, and the First Circuit in *Culhane* concluded that homeowners have a "legally cognizable right" to protection against illegal foreclosures, the Court finds that she has demonstrated "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 317 (1st Cir. 2012) (quoting *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir. 2009)). Ms. Cosajay has standing to pursue her claims.[6]

This Court's decision finding standing is buttressed by Defendants' extreme and incongruous argument that would allow Ms. Cosajay no relief because she is not a party to the

---

[6] The Court will not parse Ms. Cosajay's complaint at this time to determine which claims relate to "void" as opposed to "voidable" conditions of the assignment. These arguments can be addressed at the summary judgment stage or trial.

9

assignment. The First Circuit rejected Defendants' argument, finding that a bar on standing based solely on whether plaintiff is a party to the assignment "paint[s] with too broad a brush." *Culhane*, 708 F.3d at 290. Those very broad brushstrokes were evident at oral argument where, when asked whether a plaintiff would have standing to challenge a foreclosure exacted by a "fraudulent holder of a fraudulent note," Defendants' counsel said that a plaintiff would not have standing. (Misc. No. 11-88-M, ECF No. 2224 at 51-52.) That position cannot be squared with the fact that the First Circuit recognized that a mortgagor has a "legally cognizable right" to ensure that a threatened foreclosure is legally conducted. *Culhane*, 708 F.3d at 290. Furthermore, when Defendants argued this absurd position again in *Woods*, the Circuit shed a brighter spotlight on the absurd effect of Defendants' position:

> *Culhane* reasoned that barring standing in all cases would unduly insulate assignments; mortgagors could not challenge the validity of assignments either as the defendant in a suit for judicial authorization or as the petitioner in a suit like the present one.

*Woods*, No. 12-1942, 2013 WL 5543637, at *3. The First Circuit has determined that, due to the particularities of mortgage foreclosure cases, requiring privity to an assignment "unduly insulate[s]" those assignments to the detriment of mortgagors asserting their legal rights. "There is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law." *Culhane*, 708 F.3d at 291.

Because the Magistrate Judge in his R&R held that a lack of privity alone barred Ms. Cosajay's standing to bring her suit and that conclusion is now in contravention to the First Circuit's holdings in both *Culhane* and *Woods*, which based its decision not on the privity or status of the parties, but on status of the challenged assignment and whether it was invalid or void versus voidable, the R&R cannot stand and is rejected in its entirety. The Court finds that Ms. Cosajay has standing to bring her lawsuit against these Defendants.

## III.   CONCLUSION

The Court REJECTS the Magistrate Judge's Report and Recommendation (ECF No. 21) in its entirety and DENIES Defendants' Motion to Dismiss (ECF No. 5) based on a lack of standing.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

November 5, 2013